UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TESSA E.  BERGMAN,                          :
           Plaintiff                          :
                               :       Civ. Action No. 06-0303 (GK)
V.                                          :
JOHN W. SNOW,                               :
Secretary, Department of the Treasury,      :
           Defendant                          :


## RULE 16.3 STATEMENT

Plaintiff and Defendant hereby submit the following joint Rule 16.3 Statement.

BRIEF STATEMENT OF THE CASE

Plaintiff's Statement of Fact.

This is a disability employment discrimination case under the Americans with Disabilities Act of 1990 (Pub. L. 101-136) (the "ADA") and the Federal and Vocational Rehabilitation Act of 1973, (Pub. L. 93-112), as amended (29 C.F.R 1614.203) (1992) (the "Rehabilitation Act").  Plaintiff is an experienced (20 years) income and international tax attorney.   Plaintiff claims she was unlawfully discriminated against when Defendant failed to accommodate her disability by promptly reassigning her to another job as required by the ADA and instead retaliated against her for filing an ADA claim.

At the time of the incident that gives rise to this complaint, Plaintiff was an employee of the U.S. Department of Treasury, working for the Internal Revenue Service, a bureau within the Department of Treasury in Washington, D.C.  It was common ground in the proceedings below that Plaintiff had a disability (major depressive disorder) that required a reasonable accommodation under the ADA and that the

required accommodation was reassignment of Plaintiff to a different job -- one that would fully utilize her legal abilities. Defendant admitted all of these key facts in the administrative proceedings below. It was also undisputed that, at the time Plaintiff formally requested a reasonable accommodation in writing through counsel and during the entire time that Defendant was seeking to reassign Plaintiff to a vacant position as required by the Rehabilitation Act and the ADA, there were vacant, funded positions at Plaintiff's then current grade of GS-14 in the IRS' Office of Chief Counsel ("OCC") in Washington, D.C. It is also undisputed that Plaintiff was eminently qualified for those positions, having left both the OCC's prestigious Legislation and Regulations Division as well as the International Division several years earlier, serving with distinction and high merit on projects involving very complex and sophisticated tax issues.

By letter of October 22, 1999 Plaintiff specifically requested a "reasonable accommodation" on the grounds that she was a "qualified individual with a disability" and specifically cited the sections of the Act in which those terms were defined. An independent physician hired by the IRS determined that Plaintiff was suffering from a major depressive episode and that she required as a reasonable accommodation reassignment to a job that required substantive legal work. While the purported search for reassignment was under way, Plaintiff claims she was harassed by her supervisors who were obstructing her transfer her to another job. One IRS employee testified that a senior IRS manager told him that he would not transfer Plaintiff because he did not want to transfer a "problem." Defendant ultimately relented and transferred Plaintiff, but only after a 4 and one-half month delay and then to a field office position 2 grades lower at a

GS-12, with limited promotion opportunities and significant resulting financial detriment to plaintiff.

This case is here because Defendant refused to reassign Plaintiff to any of the then vacant, funded positions in OCC at her GS-14 grade level. Defendant never gave any reason for its failure to reassign Plaintiff to an open position in the IRS' Office of Chief Counsel, other than to state that it was under no obligation to do so because the IRS' Office of Chief Counsel is not part of the IRS.

Because the parties were in agreement that Plaintiff had a disability that required a job transfer, and because there was no dispute that there were open positions in OCC for which Plaintiff was qualified, the case centered on the narrow issue of whether Defendant was required by law to assign Plaintiff to one of the vacant OCC positions. This case thus involved a single controlling question of law that was submitted to the administrative law judge on cross-motions for partial summary judgment. Pursuant to those motions, all parties stipulated that there were no material disputes of fact and that the controlling issue of whether there was unlawful discrimination in this case could be decided as a matter of law. The simple issue of law concerns the breadth of the scope of the search for a vacant, funded position that the Rehabilitation Act imposes upon an employer charged with finding a reassignment as a reasonable accommodation for an employee who is a "qualified individual with a disability" within the meaning of the Act. That issue is whether, in searching for alternative employment as a reasonable accommodation for an employee with a disability, a Federal agency may limit the scope of its search to a single sub-unit of a Federal agency (i.e. the Internal Revenue Service (IRS), which is a bureau within Defendant U.S. Department of Treasury) or whether it is

required by law to search for alternative employment on an agency-wide basis (the entire Treasury Department).1  In ruling that it was appropriate for the IRS to limit its search to vacant positions within the IRS, and not to the broader Department of Treasury, the administrative law judge ruled that a bill passed and signed into law by the President in 1992, which specifically requires the broader agency-wide search (i.e., the full Department of Treasury), didn't take effect until ten years later, when final administrative regulations were finally issued.

This case will turn on the same narrow issue of law, which is amenable to resolution on summary judgment.  However, based on the answer submitted by Defendant, it appears that Defendant now intends to challenge the same basic facts it stipulated to as undisputed in filing a motion for summary judgment below.  Specifically, all parties agreed in the proceedings below that Plaintiff had a disability that required a job transfer as an ADA accommodation, but Defendant apparently intends now to defend this case on the basis that Plaintiff did *not* have an ADA disability at all.

If this case is tried on the merits, Plaintiff expects that the evidence will show that she had a disability that required a job transfer as an ADA accommodation under the Act and that Defendant failed to afford her a reasonable accommodation when it waited four and one-half months to transfer her to a field position that was 2 grades lower and, contrary to the OCC positions, in an area in which plaintiff had no experience or training, when a position in Washington, D.C. at her grade level of GS-14 was available.

---

1 Defendant claimed that the IRS Office of Chief Counsel is part of the Department of Treasury but not part of the IRS.

Along with her request for an accommodation, Plaintiff submitted a report of her physician who attested that Plaintiff was suffering from acute depression caused by the circumstances of her job. Plaintiff is an intelligent, accomplished and highly motivated tax attorney.  However, she was placed in a job where she was assigned clerical duties and given virtually no substantive work to perform.  She claims she was required to sit at her desk eight hours a day and do nothing.  Plaintiff's physician testified that these work conditions were the cause of Plaintiff's disability and that Plaintiff required a transfer to an intellectually challenging position that would utilize Plaintiff's legal training. An independent physician retained by the IRS agreed and found that Plaintiff had a qualifying disability that required a transfer to a legal job to accommodate that disability. Defendant thereafter claimed that it began a search for a legal job to accommodate Plaintiff's disability.   However, instead of placing Plaintiff in an available position at OCC for which she was eminently qualified, Defendant began harassing Plaintiff in a manner that significantly exacerbated her disability.  Plaintiff alleges that this job harassment was intended to drive her from her job altogether, and an IRS employee testified in the proceedings below that a high-level IRS executive informed him that he did not want to transfer Plaintiff to another job because he did not want to transfer "a problem." Accordingly, if this matter proceeds beyond summary judgment to the merits, Plaintiff expects to establish that Defendant's decision to deny Plaintiff a transfer to OCC was retaliatory in nature.

Defendant's Statement of Facts.

Plaintiff's complaint alleges violation of the Rehabilitation Act and retaliation. She alleges that she is a qualified individual with a disability and that following her request for a reasonable accommodation the defendant violated the Rehabilitation Act, inter alia, because it took over four and one half months to find her a new position, she was not reassigned to positions she wanted as details or on a permanent basis, and the agency was not sufficiently responsive and interactive with her during the search for an accommodation.

Plaintiff is an attorney. From 1984 to 1987 she was an attorney advisor in the Office of Chief Counsel of the Department of the Treasury. She left the Chief Counsel's Office to join a private law firm and later worked for a congressman as his tax counsel and legislative director. In 1995 she was hired by the IRS in the Office of Legislative Affairs as a legislative analysis officer. That position is not classified as an attorney position. According to plaintiff, the Office of Legislative Affairs underwent a reorganization and she expressed a desire to return to the Office of Chief Counsel. However, in about August 1998, she spoke with the Chief of Communications who suggested that in addition to the Office of Chief Counsel she also consider going to a new office, which was just being developed, the Office of Public Liaison and Small Business Affairs in IRS. The position in the new office sounded interesting to plaintiff, so she joined the Office of Public Liaison and Small Business Affairs in September 1998.

The position in the Office of Public Liaison and Small Business Affairs also was not classified as an attorney position. It was a Management and Program Analyst

position.   Plaintiff became disenchanted with the position feeling that it did not utilize

her significant tax and tax-related small business experience.

By letter dated October 11, 1999, plaintiff's health care provider reported that

plaintiff was unable to work due to a depressive condition, and that there  were no

accommodations that would result in her being able to work and suggested at least 30

days off for recovery.

By letter dated October 21, 1999, the doctor stated that she had had the

opportunity to understand [plaintiff's] situation in greater depth. " I believe she could

function at her job and return to work if an accommodation is made.  This

accommodation is a job restructuring so that the functions of her position in the Office of

Public Liaison & Small Business Affairs include the full time practice of law.  If this is not

possible in her present position, I would recommend a transfer to the Chief Counsel's

office where [plaintiff] worked previously . . . .The reason for this is that [plaintiff's] self

esteem is at a very low level in her current position.  Without this accommodation, her

health is likely to deteriorate, forcing her to be hospitalized and unable to work."

In the fall of 1999, plaintiff had applied for a position in the office of Chief Counsel

and was not selected.

By letter dated December 3, 1999, her health care provider advised that plaintiff

had to return to work for financial reasons and that although she was not fully

recuperated, she was sufficiently improved to return part-time at a recommended 6 hour

work day.

After an emotional outburst by plaintiff, the agency placed her on administrative

leave.

7

In March 2000, plaintiff accepted transfer to the Virginia-West Virginia Division of the South East Region as an estate tax attorney advisor.  Since plaintiff was at the GS 14 level, and the attorney advisor position was a 12, the transfer agreement included a pay retention agreement.

Plaintiff appears to contend that she should have been transferred to a vacant position in the Chief Counsel's Office in November 1999, and that the 4 and 1/2 months between her request for accommodation and her transfer was unreasonable.

Defendant's position is that there was no discrimination or retaliation.  Plaintiff is not a qualified person with disabilities and had no right to any accommodation under the Act.  Additionally all actions of the agency were done for legitimate non-retaliatory reasons.

### THE PARTIES RULE 16 POSITIONS

1.)    Resolution By Dispositive Motion:

Plaintiff's Position:  Plaintiff believes the case can be resolved now by summary judgment or largely resolved by partial summary judgment now without further discovery.  In the event that summary judgment motions are to be filed after discovery, they should be filed before expert depositions.

Defendant's Position:  Defendant believes that the case may be resolved by dispositive motion following discovery.  Defendant requests that dispositive motions be required to be filed no later than 60 days following the close of discovery, that responses or oppositions be filed 30 days after filing of dispositive motions and that replies be filed 30 days thereafter.  Defendant requests that summary judgment motions be filed after expert discovery and deposition concerning plaintiff's alleged disability, because one of

the key issues in his matter is whether plaintiff is an individual with a disability under the ADA and Rehabilitation Acts.

2.)    <u>Amendment of Pleadings:</u>  Defendant does not anticipate amending its pleading.  Plaintiff may request leave to file an amended complaint as the complaint now filed was filed *pro se.*  Defendant requests that any amendment to the complaint be required to be filed within 30 days, so that discovery can be taken concerning any new claims or contentions of plaintiff.

3.)    <u>Assignment to a Magistrate Judge</u>:  Neither party consents to assignment of this matter to a Magistrate Judge for all purposes.

4.)    <u>Settlement Possibility</u>:  Defendant does not believe that settlement talks would be fruitful prior to discovery.

5.)    <u>ADR</u>:  Defendant does not believe that settlement talks would be fruitful prior to discovery.

6.)    <u>Resolution On Summary Judgment</u>: Plaintiff and Defendant both take the position that the case should be resolved on summary judgment.

7.)    <u>Disclosures</u>:  Plaintiff and Defendant believe that disclosures required by the Federal Rules of Civil Procedure and the Local Rules of this Court should be made.

8.)    <u>Extent Of Discovery</u>:

<u>Plaintiff's Position</u>:   Plaintiff requests that depositions already taken not be repeated and that the deposition testimony taken below be admissible.  Plaintiff agrees that witnesses not previously deposed may be deposed.

<u>Defendant's Position</u>: Defendant requests that the presumptive limits be applied, that is no more than 25 interrogatories and no more than ten depositions per party.  Defendant

believes that in this de novo proceeding it has a right to depose any relevant witness it chooses in its pursuit of discovery, and should not be limited as requested by plaintiff. Defendant requests 120 days for fact discovery.

9.)    <u>Expert Witnesses</u>:   The plaintiff requests that the plaintiff's expert report, if any, be required to be served no later than 45 days after the resolution of all summary judgment motions and that defendant's expert report in response be required 45 days thereafter.  The parties requests that expert discovery close 45 days thereafter, allowing for time for deposition of the expert witnesses.

The defendant requests that the plaintiff's expert report, if any, be required to be served no later than 45 days after the close of fact discovery and that defendant's expert report in response be required 45 days thereafter.  The parties requests that expert discovery close 45 days thereafter, allowing for time for deposition of the expert witnesses.

10.)    <u>Class Action Issues</u>:  Not relevant.

11.)    <u>Bifurcation Of Liability And Damages</u>: Defendant does not believe that bifurcation is necessary.

12.)    <u>Date for Pretrial Conference</u>:  The parties agree that a pretrial conference should be scheduled following the disposition of any dispositive motions.

13.)    <u>Trial Date</u>:  Defendant believes that a firm trial date should be set at the pre-trial conference.

14.)    <u>Other Matters</u>: None

Respectfully submitted,


_____
John D. Quinn, Esquire
D.C. Bar 267302
SALE & QUINN, P.C.
910 16th Street, N.W.
Suite 500
Washington, D.C. 20006

Counsel for Plaintiff



_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
RUDOLPH  CONTRERAS, D.C. Bar No.  434122
Assistant United States Attorney



_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970


Of Counsel:

DEANNE SOBCZAK
Attorney, Claims, Labor, and Personnel Law
General Legal Services
Internal Revenue Service
950 L=Enfant Plaza, SW 2d Floor
Washington, D.C.  20024
Tele: 202-283-7923
FAX: 202-283-7978

Counsel for Defendant

12