UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TESSA E. BERGMAN,          : | |
|     Plaintiff                              : | |
| : | Civ. Action No. 06-0303 (GK) |
| V.                                              : | |
| JOHN W. SNOW,                     : | |
| Secretary, Department of the Treasury, : | |
|     Defendant                           : | |

PLAINITFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S REQUEST FOR INDEPENDENT MEDICAL EXAMINATION

Plaintiff Tessa Bergman ("Plaintiff") submits her Memorandum of Law in Opposition to Plaintiff's Request for an Independent Medical Examination ("IME") and states as follows:

Defendant requests an independent psychiatric examination of Plaintiff under Rule 35 of the Federal Rules of Civil Procedure. The Defendant's motion argues that a psychiatric examination is needed for the limited purpose of presenting expert testimony on the issue of damages. Specifically, Defendant argues that an IME is necessary so Defendant can present an expert witness to respond to Plaintiff's claims that she experienced mental anguish, pain, suffering and related permanent injuries as a result of Defendant's actions. Plaintiff did claim damages for emotional distress and submitted an expert report of Judith Nowak, M.D., stating that Plaintiff suffered damages for mental anguish, pain, suffering and related permanent injuries as a result of Defendant's actions. However, because damages for emotional distress are a minor part of plaintiff's claim and to avoid the embarrassment and humiliation of a psychiatric examination, Plaintiff offered to withdraw that aspect of Dr. Nowak's opinion and dismiss all claims for damages for mental anguish, pain, suffering and related permanent personal injuries. Defendant refused the offer. Exhibit 1. This refusal to withdraw the request for a psychiatric

exam suggests strongly that there are other reasons for requesting the IME that are not disclosed in Defendant's motion.

If the limited purpose for a psychiatric examination stated in Defendant's motion were the only reason for the requested examination, Defendant would have agreed to withdraw the request for a psychiatric exam when Plaintiff offered to withdraw her claim for damages for mental anguish.  Defendant apparently has other undisclosed reasons for a psychiatric examination, and Defendant should be required to state them clearly in a motion and permit Plaintiff a fair opportunity to respond to those arguments.

Defendant concedes that a party seeking a psychiatric examination under Rule 35 bears the burden of showing "good cause" for the IME.  See, Defendant's Memorandum of Law at 3, citing *Schlagenhauf v. Holder,* 379 U.S. 104, 118-119 (1964).  To meet the "good cause" requirement, Defendant must make "an affirmative showing . . . . that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each examination." *Id.*  Defendant has not met this burden.  The only condition for a psychiatric examination identified to support a showing of "good cause" in Defendant's motion – the argument that Plaintiff put her mental condition in issue by seeking damages for emotional distress – is not an issue in controversy because that claim of damages will be dismissed if this motion for a mental examination is denied.  Plaintiff will, if defendant is denied a psychiatric examination of plaintiff, stipulate to dismiss all claims for damages for emotional distress, mental anguish, pain, suffering and related permanent personal injuries.  In that case, Defendant cannot possibly show "good cause" for a psychiatric examination on the basis that Defendant needs that examination to respond to Plaintiff's claims for damages for emotional distress.

While Plaintiff can only guess at Defendant's motive for continuing with this motion after Plaintiff offered to dismiss the claims for damages for emotional distress, the recent procedural history of the case suggests one potential motive. With the date for identifying affirmative expert testimony of December 15, 2006, pending, Defendant, on December 14, 2006, requested an extension of time for identifying expert opinions. Defendant mistakenly filed a "consent motion" to extend the December 15, 2006, deadline for identifying expert witnesses and indicated in that motion that it needed an IME to submit the expert opinion required to be submitted to the Court no later than December 15. Defendant withdrew the motion on December 18 after Plaintiff advised the Court that Plaintiff did *not* consent to the motion.1 Immediately after Defendant withdrew its request for more time to identify experts, Defendant filed this request for a psychiatric IME. Given the timing of this request for an IME and the procedural history, including Defendant's statements to the Court that defendant required an IME to develop affirmative expert opinion that was to be disclosed by December 15, 2006, Plaintiff is concerned that this motion for a psychiatric examination is simply an end run around the Court's Scheduling Order. Defendant should be required to clearly state the reasons for a psychiatric examination so Plaintiff can have an opportunity to respond to the issue squarely.

In seeking additional time to identify an expert witness, counsel for Defendant advised Plaintiff that she wanted an IME to present an affirmative expert opinion (which was supposed to be disclosed no later than December 15, 2006) stating that Plaintiff never had a disability that required a reasonable accommodation. If this is the basis for the motion, there can be no "good cause" for a psychiatric examination for another important reason: Defendant long ago conceded that Plaintiff had a disability in 1999 that required a reasonable accommodation under the

---

1 Plaintiff advised defendant by e-mail on December 14 not to file the motion to extend expert deadlines as a consent

3

Americans with Disabilities Act of 1990 (Pub. L. 101-136) (the "ADA") and the Federal and Vocational Rehabilitation Act of 1973 (Pub. L. 93-112), as amended (29 C.F.R 1614.203) (1992) (the "Rehabilitation Act").    To explain, Plaintiff's primary claim in this case is that Defendant violated the Rehabilitation Act when it denied Plaintiff the reasonable accommodation of a job transfer for her disability (acute depression) by delaying the job transfer for several months and then placing Plaintiff in a position that was two grade levels below her former position.  There was no dispute in the proceedings below that Plaintiff had a disability -- acute depression -- that required a reasonable accommodation of a job transfer.  Indeed, Defendant *admitted* (through its Rule 30(b)(6) designated witness) that Plaintiff had a Rehabilitation Act disability when it admitted that it was "required to find a reasonable accommodation" for Plaintiff's disability by the Rehabilitation Act.  Exhibit 2.  Accordingly, if Defendant does now seeks an IME to litigate the issue of whether Plaintiff had a Rehabilitation Act disability that required a reasonable accommodation under the Rehabilitation Act, there is no "good cause" for the psychiatric examination, because the government previously conceded the issue.  Moreover, such an expert opinion would be an affirmative expert opinion that should have been identified by December 15, 2006, under the Court's Scheduling Order.

   In conclusion, an independent mental examination is a highly intrusive and embarrassing examination and is not ordinarily ordered simply because a party alleges mental anguish or emotional distress.    Whether to order an independent mental examination is committed to the discretion of the Court.  *Moore v. Calavar Corp.,* 142 F.R.D. 134, 135 (W.D. La. 1992). An IME is not warranted in this case, because Defendant's motion has not specified any "good cause" for the examination.  If Defendant argues in reply that it is entitled to a psychiatric examination to

---

motion but due to some miscommunication the motion was filed as a consent motin.

4

show that Plaintiff did not have a disability that required a reasonable accommodation under the Rehabilitation Act, that argument cannot support "good cause" for the psychiatric examination, because Defendant has already admitted on the record that it was obligated by the Rehabilitation Act to find a reasonable accommodation for Plaintiff's disability.  Moreover, any such opinion would be untimely, as it was not designated by December 15, 2006.

Accordingly, Plaintiff respectfully requests that this Court deny the request for an independent mental examination, and that such denial may be conditioned on Plaintiff stipulating to withdraw any claim for damages for emotional distress, mental anguish, pain and suffering and permanent personal injuries related thereto within 10 (ten) days of the date of the Court's order.

                                             Respectfully submitted,

                                             _____/s/_____
                                           John D. Quinn, Esquire
                                           D.C. Bar 267302
                                           SALE & QUINN, P.C.
                                           910 16th Street, N.W.
                                           Suite 500
                                           Washington, D.C. 20006

                                           Counsel for Plaintiff

January 3, 2007

# EXHIBIT 1

**From:** JDQCSQ@aol.com [mailto:JDQCSQ@aol.com]
**Sent:** Tuesday, January 02, 2007 2:31 PM
**To:** Fields, Rhonda (USADC)
**Subject:** IME

Rhonda:  Your motion requests an independent medical exam so Defendant can present an expert witness on the issue of plaintiff's claim that she suffered mental anguish, pain, suffering and related permanent injuries.  Plaintiff is willing to drop these damages claims if Defendant will withdraw the request for an IME.  I would appreciate it if you would give me your response ASAP as our response to your motion for an IME is due tomorrow.

John


| | |
|---|---|
| **Subject:** | **RE: IME** |
| **Date:** | 1/3/2007 11:38:48 AM Eastern Standard Time |
| **From:** | Rhonda.Fields@usdoj.gov |
| **To:** | JDQCSQ@aol.com |

My client is not inclined to withdraw the request for an IME

1

EQUAL OPPORTUNITY EMPLOYMENT COMMISSION

WASHINGTON, D.C.

- - - - - - - - - - - - - - - - - -x
                                    :
THERESA E. BEARMAN,                 :
                                    :
        Complainant,                :
                                    :  Case No.
    v.                              :
                                    :  00-1103
PAUL H. O'NEILL, Secretary,         :
U.S. Department of the              :
Treasury, et al.,                   :
                                    :
        Respondents.                :
                                    :
- - - - - - - - - - - - - - - - - -x

                          Washington, D.C.
                          Tuesday, March 19, 2002

    The deposition of BARRY P. FULCHER, called for examination by counsel for the Complainant in the above-entitled matter, pursuant to notice, in the offices of Claxton, Sale & Quinn, 910 16th Street, N.W., Suite 500, Washington, D.C., convened at 1:13 p.m., before Shawna Hum Browne, RPR, a Notary Public in and for the District of Columbia, when were present on behalf of the parties:

5

1   you don't understand any of my questions, please
2   ask me to clarify; I'll be happy to do so. And
3   also, you have to answer orally, not by shaking of
4   the head or a gesture, so the court reporter can
5   take it down.
6       A.   All right.
7       Q.   If you need to take a break, just let us
8   know. We can accommodate that.
9            MR. QUINN: Let me show you--have this
10  marked as Exhibit No. 1 if I could.
11                   (Fulcher Exhibit No. 1 was
12                   marked for identification.)
13           (Witness handed document.)
14           BY MR. QUINN:
15      Q.   You are here in response to this Notice
16  of Deposition. I know Exhibit No. 1 mentioned
17  February 22nd, but the date was actually continued
18  to today. Are you the individual who was appointed
19  to testify to the issues in this Notice of
20  Deposition by the respondent?
21      A.   Yes.
22      Q.   Some of these issues you're not going to

1  made by an independent medical analyst?
2      A.  I believe it was made by Dr. Presant, the
3  IRS--the person IRS contracted with for physician
4  services.
5      Q.  Okay.  Were you the one responsible for
6  assembling documents in response for the request
7  for production of documents in this case?
8      A.  I don't know who had responsibility for
9  that.  I provided the documentation that I had
10 available.
11     Q.  You were asked to provide your own
12 documents; is that right?
13     A.  Yes.
14     Q.  Okay.  You didn't have any input into the
15 overall process of producing documents?
16     A.  Only to the extent for the documents that
17 I had.
18     Q.  What did you do to satisfy yourself on
19 item No. 33 that you have collective knowledge of
20 the Department of Treasury concerning the efforts
21 to respond to complainant's discovery request?
22     A.  I'm sorry, would you rephrase that please