## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| TESSA E. BERGMAN | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. <u>06-0303 (GK)</u> |
| v. | : | |
| | : | |
| HENRY M. PAULSON, JR. | : | |
| SECRETARY OF THE TREASURY | : | |
| | : | |
| Defendant. | : | |
| | : | |

### PLAINTIFF'S  MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Tessa Bergman, moves for Partial Summary Judgment against Defendant, Henry M. Paulson, Jr., Secretary of the Treasury, pursuant to Rule 56 of the Federal Rues of Civil Procedure.

Plaintiff moves for partial summary judgment on the grounds that Defendant unlawfully discriminated against her and otherwise denied her a reasonable accommodation under the Rehabilitation Act of 1973, as amended, by assigning her, as a reasonable accommodation, after several months delay, to a lower graded position when other positions at Plaintiff's then current grade level were available within Plaintiff's commuting area.

Plaintiff submits a Statement of Material Facts as to Which There Is No Genuine Issue, supporting affidavits and other documents, deposition testimony and a Memorandum of Law in

Support of Motion for Partial Summary Judgment, which are attached hereto and incorporated herein.

Respectfully submitted,

_____
John D. Quinn, Esq,
Stephen Sale, Esq.
Sale & Quinn, P.C.
910 16th Street, N.W., Suite 500
Washington, DC  20006
Tel:  (202) 833-4170
Fax: (202) 887-5137

Counsel for Plaintiff

Dated:  April 26, 2007

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TESSA E. BERGMAN | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06-0303 (GK) |
| v. | : | |
| | : | |
| JOHN W. SNOW | : | |
| | : | |
| Defendant. | : | |
| | : | |

### PLAINTIFF'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Tessa E. Bergman ("Plaintiff") submits her memorandum of law in support of her motion for partial summary judgment, and states as follows:

### STATEMENT OF FACTS

Plaintiff's complaint that Defendant Department of Treasury ("Defendant") discriminated against her under the Rehabilitation Act of 1973 (Pub. L. 93-112), as amended (29 C.F.R 1614.203) (1997) (the "Act") has two distinct and independent claims. The claim that is amenable to resolution on summary judgment is whether Defendant, in searching for a job reassignment as reasonable accommodation for Plaintiff's disability under the Act, violated the Act when it refused to assign Plaintiff to a vacant, funded position at Plaintiff's current grade level in the IRS Office of Chief

Counsel in Washington, D.C. ("OCC") but instead waited several months to assign

Plaintiff to a position at a lower grade level in an IRS field office in Virginia.[1]

In the administrative proceedings below, the parties filed cross motions for

summary judgment on the legal issue of whether Defendant was obligated to reassign

Plaintiff to one of the open OCC positions and in doing so both parties necessarily

certified that there were no disputed material facts related to this issue and that the case

could be resolved as a matter of law.  The specific legal issue involved is whether

Defendant could limit its search under the Act for a job reassignment to open positions

in the employing agency (the IRS) or whether Defendant was required to assign Plaintiff

to an open position based on an agency-wide search (the Department of Treasury) in

finding a reasonable accommodation under the Act  To even further narrow the issue,

both parties agreed below that a 1992 amendment to the Act requires a broader

agency-wide search (i.e., Treasury Department).  However, Defendant argued below,

and the ALJ found, that the 1992 amendments to the Act did not become law when

signed by the President in 1992, but only became law until ten years later, in 2002 when

the EEO actually published regulations implementing the law.  The ALJ's ruling on this

crucial issue of law is both illogical and inconsistent with unanimous court and EEO

decisions holding that the 1992 law became law in 1992 and was applicable to the fact

of this case, which occurred in 1999 and 2000.

In defending this case at the administrative level, Defendant repeatedly and

consistently presented testimony that, Defendant regarded an opinion by an

independent physician retained by Defendant that Plaintiff had a disability that required

---

[1] The claim that involves disputed facts is whether Defendant retaliated against Plaintiff for making a request for an accommodation under the Act.  This is a minor part of the claim and will involve just a few witnesses and little, if any, expert testimony.

a job transfer to be a conclusive and final decision that required Defendant to find a reasonable accommodation for Plaintiff.  Defendant presented two witnesses at the hearing who testified unequivocally to the foregoing and at least three other employees of Defendant testified that Defendant was obligated to find a reasonable accommodation for Plaintiff under the Act.  Thus, in issuing her opinion, the ALJ addressed the narrow legal issue and found that the parties have "no dispute that Complainant [Bergman] is a qualified individual with a disability entitled to an accommodation."  Exh. __, p. 5.

Thus, Defendants persuaded the ALJ that they took their obligations under the Act and were resolute in trying to reassign Plaintiff and once an independent physician made the conclusive determination that Plaintiff had a disability that required an accommodation.  Defendants presented multiple witnesses to testify below to the exhaustive search for an accommodation under the Act that resulted in a job in the Virginia field office of the IRS because it was determined that Defendant could not assign Plaintiff to one of the open, funded positions in OCC at Plaintiff's grade level because OCC was a separate agency from IRS.  Now, apparently recognizing that the legal underpinnings of the ALJ's decision are indefensible, Defendant indicates that it intends to make a 180-degree reversal from position that Defendant took in prevailing at the administrative level.  Defendant indicated that it intends to present evidence that Plaintiff never had a disability at all that required a reasonable accommodation under the Act and that Defendant's search to find a reasonable accommodation for Plaintiff was voluntary and not obligatory.   As set forth below, Defendant is bound by the testimony of its employees, and the employees cannot simply change their sworn

testimony to defeat a summary judgment motion. Further, Defendant prevailed below on the basis that Plaintiff was a qualified individual with a disability and is barred from changing its fundamental position now by principles of judicial estoppel recognized by this Court.

### Statement of Fact.

Defendant Department of Treasury employed Plaintiff as a GS-14 step-5 Management Program Analyst in the Office of Public Liaison and Small Business Affairs. Hearing Transcript ("HT") at 101,106; ROI at 113. It was not disputed below that Plaintiff suffers from a disability within the meaning of the Act and that Plaintiff's disability required Defendant to provide her with a reasonable accommodation. Plaintiff suffers from clinical depression. Her condition is effectively managed through medication and has no effect on higher cognitive or intellectual functioning and it does not impair her job performance at all. HT at 108,109. However, in October 1999 Plaintiff's otherwise benign depression became acute depression due in major part to work conditions that are explained in further detail below but which generally involved job harrasment by superiors and a lack of substantive work. Plaintiff's psychiatrist, Judith Nowak, M.D. determined that, because of Plaintiff's acute depression, Plaintiff was not capable of performing her job functions. Plaintiff was placed on extended leave. Dr. Nowak recommended that Plaintiff required a job transfer because she believed that the job circumstances in Plaintiff's office were a major contributor to Plaintiff's acute depression. October 22, 1999 Plaintiff requested a job reassignment to a position involving substantive work commensurate with her abilities. The Department of Treasury appointed an independent physician, Neil Presant, M.D. to perform a medical evaluation of Plaintiff to determine whether Plaintiff had a disability that required a reasonable accommodation. Dr. Presant consulted with Dr. Nowak and was offered

full access to Plaintiff's medical and psychiatric records.  On December 3, 1999 Dr. Presant

issued a finding that Plaintiff had a disability that required a work reassignment.  ROI at 280.

Defendant treated Dr. Presant's decision as conclusive and final and recognized that it imposed

an obligation on Defendant to reassign Plaintiff to another job.[2]  David Williams, the Director of

the Bureau that employed Plaintiff, testified that Dr. Presant's decision was "dispositive" and

that after the decision was made "we have to follow it, and we did."  265.  Mr. Williams also

testified that "When Dr. Presant, as the agency third party validator, said this is a reasonable

accommodation case, that is the end of the story."  266.  The official appointed as Defendant's

designee under Rule 30(b)(6) to testify to whether Plaintiff was a qualified individual with a

disability testified that after Dr. Presant made his determination, Defendant was "in fact required

to find a reasonable accommodation" for Plaintiff.

It is also undisputed that there were vacant funded positions at Plaintiff's grade level in

OCC at the time Plaintiff first made a request for an accommodation and those positions were

open during the entire period (December 1999 through March 2000) when Defendant was

searching for a reasonable accommodation for Plaintiff.  See vacancy announcement, Exh. ___.

Plaintiff notified her supervisors many times, in writing, about the vacant positions both before

and after Dr. Presant's determination.  ROI at 24, 217-222, 235-236, 263  Plaintiff repeatedly

requested reassignment to one of the open OCC positions.

Plaintiff is an experienced income tax attorney and met all of the qualifications for  the

open OCC positions.  Plaintiff is, and at all times relevant hereto was, a member in good

standing of the Bar of California.  She is a 1978 graduate of the University of North Carolina

Law School, has a Master's Degree in Taxation from Georgetown University School of Law

---

[2] Defendant determined that it would not be possible to restructure Plaintiff's job as an accommodation.

(1982).  Plaintiff also holds a Master of Science degree in Biotechnology from Johns Hopkins

University (1998).  HT at 111,112  Plaintiff attended University of Pennsylvania for three years

where she had near perfect grades as a biology major before graduating from University of

Arizona.[3]

Plaintiff has considerable experience in the vacant OCC positions, as she was formerly

employed by OCC.  From 1984 through 1988 Plaintiff was employed as an income tax attorney

by OCC, where she served with distinction. Plaintiff served at OCC's Washington, D.C.

headquarters in OCC's prestigious Legislation & Regulations Division from 1984 to 1986, and in

the then newly established International Division from mid-1986 through 1987, where she was

assigned complex projects.   While at OCC Plaintiff received a Certificate of Merit together with

a cash bonus for her work in the former Division.  ROI at 67;  HT at 92-93  After leaving OCC,

Plaintiff worked in the tax departments of two major Chicago law firms, after which she returned

to Washington, D.C. where she served as tax counsel to both Rep. William Jefferson, a member

of the House Ways and Means Committee, and to Senator John Breaux.  Plaintiff advised both

parties on various areas of income and international taxation.   Plaintiff is without question both

a talented individual and a highly competent and experienced tax attorney.

Defendant admitted repeatedly below that the only reason why Plaintiff was not

reassigned to one of the open OCC positions was that Defendant did not have to place Plaintiff in

OCC because OCC is under a "separate appointing authority" from the IRS.  In response to an

interrogatory asking Defendant to state "every reason why Plaintiff was not placed in an open

position in OCC, Defendant stated as follows:

> The complainant was not transferred to a position in the Office
> of Chief Counsel because the Office of Chief Counsel made a
> determination that it had no legal obligation to place the complainant,

[3] Plaintiff had to transfer for her senior year due to personal family matters.

> an IRS employee, in a position in the Office of Chief Counsel
> because the Office of Chief Counsel and the Internal Revenue
> Service are separate organizations with separate personnel
> authorities.  Thus, the inquiry dated January 4, 2000 by Barry
> Fulcher, was to whether the Office of Chief Counsel would be
> willing to accept the complainant for a vacancy was not acted
> upon by the Office of Chief Counsel.

Thus, although OCC hired approximately 60 attorneys during the relevant time period,

including four former OCC employees, Defendant would not consider placing Defendant

in an open position at Plaintiff's grade level as a reasonable accommodation under the

Act.  Defendant also appointed Susan Nizer under Rule 30(b)(6) to testify at deposition

as to all reasons why Defendant as not placed in an open position in OCC, and the only

reason given by Ms. Nizer was that Defendant did not have to place Plaintiff in an open

OCC position because OCC was not part of IRS.  Ms. Nizer offered similar testimony at

the administrative hearing.  Defendant notified Plaintiff in writing on February __, 2000

that the IRS could not place Plaintiff in an OCC position because OCC was under a

"separate appointing authority" and did not have to accept Plaintiff.  Defendant's Rule

30(b)(6) witness candidly conceded that

this entire matter would have ended in December 1999 by transferring Plaintiff to OCC but for

the fact that Defendant's search was limited to the Internal Revenue Service.[4]

On several occasions, Plaintiff informed Defendant that the then current EEOC

Enforcement Guidance manual indicating that Plaintiff's reassignment to one of those vacancies

was mandatory under the Rehabilitation Act and that the "same appointing authority" criteria had

not been the law since 1992.  Indeed, OCC obtained an opinion from the Department of Treasury

that the search for an reasonable accommodation was not to be limited to the IRS, but included

---

[4] As discussed below, Defendants contended below that the IRS Office of Chief Counsel is part of the Department of Treasury but is not part of the IRS.

the entire Department of Treasury, including OCC. Nevertheless, no action was taken to place

Plaintiff in an open OCC position. OCC nevertheless ignored the opinion of Department of

Treasury. Instead, OCC advised its "client" the IRS that IRS could not force OCC to take an IRS

employee as an accommodation under the Act.

So the Court will develop some understanding of how matters reached this point, Plaintiff

provides the following additional background. In August 1998, Plaintiff was approached by

David Williams, Chief of the Office of Communications and Liaison ("OCL"). Mr. Williams

asked Plaintiff if she would be interested in coming working for a new office in OCL that Mr.

Williams described as dealing with issues of a high priority to himself and the Commissioner,

and Plaintiff accepted a position after receiving assurances that her position would involve

substantive issues of income tax law. Mr. Williams was not only a friend of Plaintiff, but he also

had considerable influence with the IRS Commissioner was one of the most senior executives in

the IRS  HT at 231,235, 245, 435

Plaintiff 's first line supervisor from September 1998 to July 1999 was Acting Director

Susanne Sottile, who reported directly to David Williams. Plaintiff had informed Ms. Sottile

from the beginning that she suffered from clinical depression, which was controlled by

medication.

By July 1999, what had started out as a small, informal staff of 9 at OPL grew to

one of close to 25. The problem, however, was that there was little or no substantive

work to do in the office.   EEO coordinator John Burns testified that the employees in

the office simply had no substantive work to do. The only substantive work project

Plaintiff had in 1999 was a small business CD-ROM project that she created herself and

was a high priority project in the office. That project was taken away from Plaintiff by a

newly hired supervisor, Mr. Fitzpatrick, who also apparently had little work to do.   ROI

128,131-142

OPL subsequently organized into branches and Barry Fulcher became a branch chief and

Plaintiff's first-line supervisor.  Mr. Fulcher reported directly to Mr. Fitzpatrick.  Mr. Fulcher

was both Plaintiff's office mate and supervisor and Plaintiff told Mr. Fulcher that she suffered

from clinical depression. HT at 126.

There was a dearth of substantive work available to be done in the office, and, in the case

of Plaintiff, that problem was exacerbated when her only substantive work was taken from her.

Plaintiff complained to Mr. Fitzpatrick and Ms. Sottile that she had little substantive or

meaningful work to do.  Despite these complaints, Plaintiff was given no work to do.  Instead of

giving Plaintiff substantive work, Ms. Sotile and Mr. Fitzpatrick began finding fault with

Plaintiff in an apparent effort to force her to find other employment. The work Plaintiff was

given was largely of a clerical or non-professional nature, such as putting together briefing books

for meetings, calling various scheduling secretaries of IRS officers to get the to attend meetings.

Plaintiff, however, was not asked to contribute to the substantive or technical parts of the

briefing books nor was she allowed to contribute her considerable income tax expertise, but

rather was required to get the information from individuals in the OCC. HT at 120, 124-125

After her complaints about having little substantive work to do, Plaintiff was subjected to

close monitoring by Mr. Fulcher, who was her office mate, and by other co-workers who were

asked to report to Ms. Sottile on Plaintiff's comings and goings. HT at 223.   A pattern began of

Mr. Fitzpatrick calling Plaintiff into his office where she was orally criticized and demeaned in

front of a co-worker, usually a clerical-level employee.  Clerical employees began treating her as

a subordinate and, generally, Plaintiff was singled out for high scrutiny and regularly criticized

without just cause.  HT at 130-131; ROI at 182-184  Plaintiff was often reprimanded by management in the presence of other employees.

After months of isolation from other employees, no substantive work and accumulated criticism from management, Plaintiff began to slip into acute depression.  Finally, on October 4, 1999, Plaintiff took an extended medical leave.

Up to this point in her work experience, Plaintiff had been taking mild medications for mild chronic depression and had not been in intensive therapy.  Plaintiff's therapist, Dr. Judith Nowak, who heretofore had only been monitoring Plaintiff's medication diagnosed Plaintiff as suffering from acute depression brought about be a hostile work environment.  Defendant retained Dr. Presant to evaluate Plaintiff's medical condition in October 1999.  Dr. Nowak opined that Plaintiff's request for medical leave should be granted, and that the likely cause of Plaintiff's deterioration was a lack of self-esteem resulting from having no substantive work to perform and from being assigned work that was far below her abilities.  ROI 59-6, HT at 37-43; 46-48   On October 22, 1999, through a letter from her attorney, Plaintiff submitted a written request for a reasonable accommodation under the Act.

John Burns was the Department of Treasury EEO Liaison Officer assigned to Plaintiff's case from its inception.  HT at 221  Mr. Burns (now retired) had worked for the Department of Treasury for 30 years, first as a full-time investigator for the EEO office and as an EEO Liaison for the last 17 years.  Mr. Burns was informed by Mr. Williams on several occasions that Mr. Williams did not want to find an accommodation for Plaintiff because he did not want to "move a problem."  Mr. Burns has stated that despite being counseled that he was violating the law, Mr. Williams repeatedly told Mr. Burns that he was not going to transfer Plaintiff anywhere.  HT at

225-228 Mr. Burns heard the same thing from Barry Fulcher and from Sue Sottile.  He

confronted Mr. Williams several times, one on one and repeatedly got the same answer.  Mr.

Williams stated that he was not moving "a problem" regardless of what the law said.  HT at 225-

228

Plaintiff returned to the office on a part-time basis on December 15th, 1999, after a more

than a 2-month absence because she was unable to pay her bills.  Intense efforts to force Ms.

Bergman to resign began immediately upon her return.  Although Plaintiff had been on approved

medical leave, she was informed by Mr. Fulcher that she had been listed as "AWOL.".  HT at

464-468; ROI 35.  A copy of the office time and leave policy was placed on her chair when she

returned to work that day. ROI at 177-179   Mr. Fulcher, who was also Plaintiff's office-mate,

monitored Plaintiff's internet and telephone use.  Plaintiff was given no work to do, but was

expected to sit at her desk for eight and scrupulously follow time and leave policy.  Continuing

into January 2000, Plaintiff found it impossible to continue part-time employment and her

condition further deteriorated.  Her every movement was being monitored.  HT at 223.  These

actions were designed to exacerbate Plaintiff's already fragile condition in the apparent

expectation that she would resign or take some action that would permit Defendant to terminate

her.  Plaintiff took another extended medical leave from early January through late February

2000

On March 7, 2000, Plaintiff received an offer of a reassignment to an attorney position in

the field.  The offer stated that since the position was two grades lower, she was not obligated to

take it, but that if she refused it, the IRS might consider its obligation to furnish her an

accommodation to be terminated.  The position was at a GS-12, 2 grades below her GS-14 and

the GS-14 vacancies still open in OCC.  The job involved neither income nor international tax in

11

which Plaintiff had years of expertise, but the estate and gift tax, in which field she had no

practice experience whatever.  Her salary was essentially frozen at a GS-14 step 6.  She would

no longer be eligible for step increases or for full cost of living adjustments.  Plaintiff has so far

lost approximately $60,000 in wages under this incongruously named "pay retention" agreement.

This loss affects her retirement benefits and has greatly precluded her from any opportunities for

promotion to a GS-15 Attorney-Adviser position, since those positions are almost always

available only to current OCC employees.  Moreover, Plaintiff had no say in the terms of the pay

agreement.  It was take it or leave it.  On March 16, 2000, Plaintiff accepted the reassignment

under duress.  ROI  223-224; 308-315.


ARGUMENT


**I.**    DEFENDANT'S IRS OFFICE OF CHIEF COUNSEL WAS OBLIGATED TO TAKE
PLAINTIFF AND ASSIGN HER TO ONE OF ITS VACANT ATTORNEY-ADVISER
POSITIONS IN DECEMBER 1999**.**

This motion for partial summary judgment involves a single uncomplicated

controlling question of law that was submitted to the Administrative Law Judge

Khare in the proceedings below on cross-motions for partial summary judgment.

The ALJ never decided the cross-motions for summary judgment and instead

held a full hearing and  dismissed the controlling legal issue in a cryptic footnote

with no substantive discussion.  The controlling issue of law was whether 1992

amendments to the Rehabilitation Act requiring a broad agency-wide search

became law in 1992 when signed by  President Clinton or whether the law did

not take effect until ten years later in 2002 when EEOC finally issued regulations

implementing the new law. The ALJ chose the later interpretation advocated by Defendant and ruled that the 1992 law did not become effective until 2002

As to the controlling legal question, both parties stipulated in filing their cross motions for summary judgment that there were no contested facts and that the matter could be decided as an issue of law. During the full time that Defendant was seeking to reassign Plaintiff to a vacant position as required by Act, there were vacant, funded positions in OCC in Washington, D.C. at Plaintiff's grade level  It is also undisputed that Plaintiff was eminently qualified for those positions, having left the OCC a few years earlier after working there for four years and serving with distinction and high merit.   Nevertheless, Defendant refused to reassign Plaintiff to any position in OCC, and never gave a reason for its failure to do so, other than to state that IRS could not transfer Plaintiff to OCC in the reasonable accommodation process under the Act because OCC was a "separate appointing authority" that simply did not have to take Plaintiff.

### A.  DISCRIMINATION DEFINED

The Americans with Disabilities Act of 1990 (hereinafter "ADA") and the Rehabilitation Act of 1973, as amended by the Rehabilitation Act Amendments of 1992 (the"Act"), define discrimination as follows:

> …not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an **undue hardship** on the operations of the business of such covered entity;…(emphasis added)
> 42 U.S.C. 12112(b)(5)(A), (B).

The law is clear that where, as here, an employee shows that a reasonable accommodation is possible and that she is qualified, the employer bears the burden of proving that providing that accommodation would impose an undue hardship on Defendant. *Hoskins v. Oakland county Sheriff's Dept.,* 227 F.3d 719, 728 (6th Cir. 2000). Defendant did not claim that transferring Plaintiff to OCC would cause any undue hardship. Rather, in response to interrogatories requesting every reason why Plaintiff was not reassigned to OCC, and in deposition through a Rule 30(b)(6) designee, Defendant consistently maintained that the only reason it did not transfer Plaintiff to OCC was that OCC did not have to accept Plaintiff because IRS and OCC are "different appointing authorities."

### A.  PLAINTIFF WAS A QUALIFIED INDIVIDUAL WITH A DISABILITY

The Administrative Law Judge found that "[t]here is no dispute that Complainant [Bergman] is a qualified individual with a disability entitled to an accommodation. "  Decision, p. 5.  Plaintiff submits expert testimony of Judith Nowak, M.D. explaining in detail that Plaintiff was a qualified individual with a disability who required reassignment to a position involving substantive work as a reasonable accommodation.  Defendant did not dispute that Dr. Nowak's opinions that Plaintiff was a qualified individual with a disability.  Instead, Defendant repeatedly submitted testimony on the administrative record below that Defendant made a determination that Plaintiff was a qualified individual with a disability, including the following:

> 1.  Defendant retained Neal L Presant for an independent medical opinion on whether Plaintiff was entitled to a reasonable accommodation.  Dr. Presant gave the opinion that "a major contributor

to [Plaintiff's] depression is low self-esteem resulting from
being in a position in which the required work product is not
commensurate with her training and capabilities." Dr. Presant
recommended that Plaintiff "be accommodated with a position appropriate
to her legal and educational background."

2.   The witness designated by defendant to testify pursuant to Rule 30(b)(6),
whether Plaintiff was a qualified individual with a disability, Barry Fulcher,
testified that upon receipt of Dr. Presant's report the IRS "made a
determination that [Defendant was], in fact, required to find a reasonable
accommodation"  for plaintiff on December 3, 1999.

3.David Williams is the Director of Communications and Liaison,
the bureau of the IRS that employed Plaintiff.  Mr. Williams supervises
600 employees and described himself as "one of the most senior
executives" employed by the IRS.  Mr. Williams had a supervisory
role in Ms. Bergman's request for an accommodation.  248.  Mr. Williams
testified that Dr. Presant's determination was "dispositive."  264.
He stated that after a physician hired by Defendant to evaluate a
request for a reasonable accommodation made such a determination
 "we have to follow it, and we did."  265  Mr. Williams further testified
 that "[w]hen Dr. Presant, as the agency third party validator, said this
 is a reasonable accommodation case, that is the end of the story."  266.

2.   Susan Sotille

3.   Kathy King.

4.   John Burns.

Defendants have indicated that they do not regard their prior positions on

Plaintiff's disability as binding in this proceeding and now intend to defend this

case on the basis that Plaintiff did *not* have a qualified disability and, accordingly,

that Defendant was under no obligation to find a reasonable accommodation for

Plaintiff.

This Court has held that judicial estoppel generally prevents a party who

prevails in the administrative level of a case based on one contention or

argument from relying on a contradictory position or argument in a subsequent

Court proceeding. *Howard v. Gutierrez,* 2007 U.S. Dist. LEXIS 8249, No. 05-1968 (JDB). In order for judicial estoppel to apply "a party's later position must be clearly inconsistent with its earlier position." *Id. Citing, New Hampshire v. Maine,* 52 U.S. 742, 750, 121 S.Ct. 1808 (2001). There could be no clearer case for judicial estoppel. Defendant repeatedly and consistently asserted in the administrative proceedings below that Dr. Presant's determination was a conclusive and binding determination that required Defendant to find a reasonable accommodation for Plaintiff under the Act. Indeed, Defendant's defense to the claim that it did not act promptly in finding a reasonable accommodation for Plaintiff centered around the assertion that Defendant acted promptly to find a reasonable accommodation as soon as Dr. Presant's opinion was issued on December 3, 1999. There were notes admitted into evidence in this case suggesting that Mr. Williams was attempting to change Dr. Presant's opinion and that those efforts continued into mid-January 2000 which caused a significant delay in finding an accommodation for Plaintiff. Mr. Williams denied that he had attempted to change Dr. Presant's opinion and asserted unequivocally that Dr. Presant's decision was final and required Defendant to find a suitable job transfer as a reasonable accommodation. That argument prevailed. The ALJ ruled that Defendant did not unreasonably delay in placing Plaintiff in a new position (p 5) and, specifically that that Mr. Williams' misgivings about Dr. Presant's opinion did not delay the search for a reasonable accommodation. (p. 8) After asserting consistently that Dr. Presant's opinion required Defendant to find a reasonable accommodation for Plaintiff under the

Act and in prevailing on this issue below, Defendant is judicially estopped from reversing itself now and arguing that Plaintiff did not have a disability and that Defendant was not obligated to obtain a reasonable accommodation for Plaintiff. Moreover, even assuming, arguendo, that Defendant were not judicially estopped, Defendant would be precluded from contradicting the sworn deposition and hearing testimony of multiple witnesses, quote above, who consistently stated that Defendant was a qualified individual with a disability who required a reasonable accommodation.

### 2.  DEFENDANT FAILED TO PROVIDE PLAINTIFF WITH A REASONABLE ACCOMMODATION

Plaintiff is a highly experienced tax attorney who possesses an L.L.M. in taxation and who has practiced in the field of income and international taxation for over 20 years.  Moreover, Plaintiff is also a former Attorney-Adviser in the Office of Chief Counsel of the Internal Revenue Service, in which position she acquitted herself with distinction and received a Certificate of Merit together with a cash bonus for her work on a high-profile regulations project. (ROI at 215,216 ) There is no dispute that there were several open attorney-advisor positions in the IRS Office of Chief Counsel at Plaintiff's grade level between December 1999 and March 2000 or that Plaintiff was eminently qualified for those positions. Plaintiff repeatedly requested reassignment to a position of Attorney-Adviser in the Office of Chief Counsel and advised her supervisor and others involved in the reasonable accommodation search that positions were open in Office of Chief Counsel.  From November 1999 to January 2000 alone, there were three vacant,

GS-905-14 Attorney-Adviser positions in the Office of Counsel (ROI at 24, 29-31, 217-222), for which Plaintiff was fully qualified, and of which Defendant was repeatedly made aware by Plaintiff. When asked to state every reason why Plaintiff was not placed in one of the vacant OCC positions identified by Plaintiff, Defendant never once asserted that Defendant was not qualified. Rather, Defendant repeatedly stated through interrogatory answers, deposition testimony of a Rule 30(b)(6) designee and in hearing testimony that the only reason Plaintiff was not placed in one of the open OCC positions was that Defendant did not have to place an IRS employee in OCC because OCC and IRS had different appointing authorities.

### a. Defendant's argument that it had no legal obligation to reassign Plaintiff to a vacant position in the Office of Chief Counsel is an incorrect statement of the law.

Because Plaintiff was determined to be a qualified individual with a disability who required a reasonable accommodation of a job transfer, Defendant was obligated to promptly transfer her to a vacant, funded position at her grade level in the Washington, D.C. area. Defendant failed to reassign Plaintiff to any of those positions. When asked to state every reason why Plaintiff was not reassigned to OCC, the only explanation given by Defendant was that Defendant did not have to reassign her to OCC because IRS and OCC are separate appointing authorities. Indeed, Defendant candidly acknowledged that Defendant would have been transferred to OCC in December 1999 but for the controversy over whether OCC could be required to take her under the Act. Instead, of reassigning Plaintiff to OCC in early December 1999 when Defendant

was advised OCC positions at Plaintiff's grade level were open, Plaintiff was, on

March 7, 2002, offered a position as an Estate Tax Attorney with the Examination

Division of the IRS at a position two grades lower (GS-905-12) than her then

current GS-905-14 position.  She was told unequivocally that this was the

reasonable accommodation Defendant had obtained and if she did not accept it

Defendant would not find another accommodation.

Defendant violated the Act by waiting over three additional months before placing

Plaintiff in a position two pay grades below her then current GS pay level when vacant,

funded positions at Plaintiff's grade level existed in OCC.  After Defendant made its

determination that Plaintiff had a disability that required a reasonable accommodation,

Defendant had an obligation to either restructure her job or assign Plaintiff to an open

position at her grade level in the Washington, D.C. area.  Defendant testified that a job

restructuring was not possible, so the only alternative was to reassign plaintiff to a

comparable position within her qualifications.  In these circumstances, the employer *must*

reassign the employee to a vacant position.  *Smith v. Midland Brake, Inc.,* 180 F.3d 1154,

1165 (10th Cir. 1999).  While an employee cannot force an employer to provide a specific

accommodation if another reasonable accommodation is available, an employer fails to

provide a reasonable accommodation if he appoints an employee to a lower graded

position when an accommodation is available at the employee's current pay level.  *Id.*

*Citing. Hankins v. The Gap, Inc.,* 84 F.3d 797, 800 (6th Cir. 1996).  Specifically, a job

reassignment is not constitute a reasonable accommodation under the Act where an

employer appoints an employee to a position with lower pay, benefits and other

advantages of a former position when other positions are available that do not involve

lower pay and benefits. *Norville v. Staten Island Univ. Hosp.* 196 F.3d 89, 99 (2nd Cir. 1999).   Thus, the accommodation provided to Plaintiff at a lower rate of pay was not a reasonable accommodation.

Defendant also defended this case on the basis that, although Defendant could not have reassigned Plaintiff to one of the open positions in the Office of  Chief Counsel, Plaintiff could have applied for one of these positions on her own.   However, the Act requires that an employee be *reassigned* to a vacant position.  This Circuit has held that he word "'reassign' must mean more than allowing an employee to apply for a job on the same basis as everyone else." *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1304 (D.C. Cir. 1998).  An employer must actually place an employee who requires an accommodation in a vacant position. *Id.*

The case is thus distilled to Defendant's sole defense in this case, that it was not required to place Plaintiff in a vacant position in the IRS Office of Chief Counsel because OCC  is not part of the IRS but is a "separate appointing authority" within the Department of Treasury.   That defense was supported by the following testimony offered by Defendant:

1. Susan Nizer, was appointed by Defendant to testify on behalf of Defendant under Rule 30(b)(6) to testify to the question of "every reason why complainant was not placed in each open [Chief Counsel] position." The only answer given by Ms. Nizer to this question was that that Defendant did not have to appoint Plaintiff to an open position in Chief Counsel because IRS and IRS Office of Chief Counsel were "separate appointing authorities."

2. Defendant served two sets of interrogatories asking specifically for every reason why Plaintiff was not appointed to one of the vacant attorney-advisor positions in Office of Chief Counsel at her current grade level, the following answers were given:

> The complainant was not transferred to a position in the Office of Chief Counsel because the Office of Chief Counsel made a determination that it had no legal obligation to place the complainant, an IRS employee, in a position in the Office of Chief Counsel because the Office of Chief Counsel and the Internal Revenue Service are separate organizations with separate personnel authorities. Thus, the inquiry dated January 4, 2000 by Barry Fulcher, was to whether the Office of Chief Counsel would be willing to accept the complainant for a vacancy was not acted upon by the Office of Chief Counsel.

Thus, Defendant repeatedly and consistently took the position in this case that the *only reason* it did not transfer Plaintiff to the Office of Chief Counsel was that Defendant did not have to transfer her to Chief Counsel. No other reason was ever given and Defendants repeatedly asserted that the obligation to find a reasonable accommodation for Plaintiff was confined to job vacancies within the IRS and that Chief Counsel, although part of Treasury, was separate from the IRS. The position is flawed for several reasons.

    1. <u>1992 Amendments to the Act Required Eliminated the Separate Appointing Authority Distinction</u>

Prior to 1992, the Act was the principal law governing the rights of disabled employees of Federal agencies. In 1992, however, Congress decided to extend the broader protections of the Americans with Disabilities Act of 1990 (*Pub. L. 101-136)* (ADA) to employees of Federal agencies as well as to employees of the private sector through enactment of the 1992 Amendments. 29 U.S.C. 791(g) (1994). The ADA standard, applicable after 1992, does not limit the scope of a reasonable accommodation search to the "same appointing authority."

2    The 1992 Amendments Law Was Applicable in 1992.

Defendant does not dispute that the 1992 amendments to the Act eliminate the "separate appointing authority" distinction and require a broad agency-wide search (Treasury Department) instead of just a search for positions in the appointing authority (IRS).  Rather, Defendant argues that the 1992 amendments to the Act did not become effective until June 2002 when regulations formally implementing the new laws became effective.  This position was adopted by the ALJ in finding that the 1992 amendments to the Act did not become effective until 2002 when EEOC published regulations.  This ruling is illogical, because it holds, in effect, that EEOC may effectively veto the actions of the Executive and Legislative branches of government by simply delaying implementation of new regulations.  Taken to its logical conclusion, the ALJ's ruling is that the 1992 amendments passed by Congress and signed into law by the President in 1992 could never become law if EEOC simply blocked the law be refusing to publish new regulations.

Courts and the EEOC have addressed the issue and have reached the logical conclusion that the 1992 amendments became law in 1992 when signed by the President.

While formal regulations were not issued until 2002, the EEOC issued guidelines (long before June 2002) stating that the Rehabilitation Act regulation that Defendant argues is applicable is not applicable:

> "…The Rehabilitation Act regulations governing reassignment of federal employees with disabilities, which were promulgated several months prior to the enactment of the Rehabilitation Act Amendment, differ in several respects from the ADA's requirements. See, 29 C.F.R.

22

1614.203(g) (1997). **For non-discrimination purposes, federal agencies must follow the ADA standards."** [emphasis added] *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Number 915.001, March 1,1999, (Enforcement Guidelines)* footnote 71.

The 1999 *Enforcement Guidance,* at Question 27 further states:

"Is an employer's obligation to offer reassignment to a vacant position **limited to those vacancies within an employee's office, branch, agency department, facility, personnel system** (if the employer has more than a single personnel system) **or geographical area?** (emphasis added)

No.  This is true even if the employer has a policy prohibiting transfers from one office, branch, agency, department, facility, personnel system, or geographical area to another.  The ADA contains no language limiting the obligation to reassign only to positions within an office, branch, agency, etc.  Rather the extent to which an employer must search for a vacant position will be an issue of undue hardship….

At least two U.S. District Courts have recognized that the 1992 amendments to the Rehabilitation Act  became law in 1992 when the President signed the new law.  In Robinson v. Runyon, 987 F. Supp. 620, 622 (N.D. Ohio 1997) (citing 29 U.S.C. 794(d)), this court stated, "Before 1992, employers were not required to reassign employees to suitable positions under the Rehabilitation Act. However, Congress amended the Act to provide that the standards of the Americans with Disabilities Act (ADA), under which reassignment was an option, applied in the Rehabilitation Act context." The same conclusion is reached in *Nightwander v. Henderson,* 172 F. Supp.2d. 951, 963 n. 10 (W.D. Ohio 2001).

EEOC cases also hold that the 1992 regulations became law in 1992 not in 2002 when EEOC issued regulations implementing the law.  *Flowers v. Henderson, 1999 WL 767730 (EEOC), fn. 5,* squarely rejected respondent's

argument that the pre-1992 "same appointing authority" language applied

after the law was signed in 1992, as follows:

> Pursuant to 29 C.F.R. 1614.203(g), the agency's reassignment obligation is limited to any "funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level."  In this regard, the agency is advised, however, that under the Americans with Disabilities Act (ADA), and in accordance with the Commission's March 1, 1999, policy guidance on reasonable accommodation, the employer's obligation to offer reassignment to a vacant position **is not so limited**.[emphasis added]  The Commission's guidance on reasonable accommodation, which clearly sets forth the ADA requirements made applicable to Rehabilitation Act cases pursuant to the October 29, 1992 amendments to the Rehabilitation Act, observes that the ADA contains no language limiting the obligation to reassign only to positions within a particular office, branch, etc., but advises that "rather, the extent to which an employer must search for a vacant position will be an issue of undue hardship…….

The ADA standard thus governs the scope of the search for a reasonable

Accommodation.   The "separate appointing authority" or a "separate commuting area"

limitations in an agency's obligation to find a reasonable accommodation have been

replaced and "undue hardship" is the sole limiting condition.  At no time has Defendant

ever asserted that to transfer Plaintiff to the Office of Chief Counsel would impose an

undue hardship on the Department of Treasury. Instead, Defendant has consistently

asserted that the only reason it did not reassign Plaintiff to OCC was that OCC was a

"separate appointing authority" from IRS.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| TESSA E. BERGMAN | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. <u>06-0303 (GK)</u> |
| v. | : | |
| | : | |
| HENRY M. PAULSON, JR. | : | |
| SECRETARY OF THE TREASURY | : | |
| | : | |
| Defendant. | : | |
| | : | |

**STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE**

Plaintiff Tessa E. Bergman, by the undersigned counsel, submits her Statement of Material Facts as to Which There is No Genuine Issue in support of her Motion for Summary Judgment, as follows:

1.        From September 1998 through March 27, 2000, Plaintiff was an employee of Defendant Department of Treasury, working as a Management Program Analyst in the Office of Public Liaison and Small Business Affairs of the Internal Revenue Service. <u>Source</u>:  Affidavit of T. Bergman, Exhibit ("Exh.") A, ¶ 1.

2.        Through March 27, 2000, Plaintiff was employed at GS 14, Step 6, on the government pay scale. <u>Source</u>:  Exh. A, ¶ 2.

3.        On or about October 22, 1999, Plaintiff, through her attorney, submitted a written request for a reasonable accommodation under the Rehabilitation Act of 1973, as amended (the "Act"). <u>Source</u>:  Exh. A, ¶ 7.

4.      Defendant retained Neil Presant, M.D., to advise Defendant whether Plaintiff had a disability that required a reasonable accommodation under the Act.  <u>Source</u>:  Deposition of Barry Fulcher, Exh. B, pp. 11-12, 123-24; Exh. C, Hearing Transcript ("HT") (Burns), p. 222.

5.      Dr. Presant had access to all of Plaintiff's medical records in the possession, custody and control of Plaintiff's Psychiatrist, Judith Nowak, M.D.  <u>Source</u>:  Affidavit of Judith Nowak, M.D., Exh. E, ¶ 5.

6.      In performing his functions as consultant to the Defendant in this matter, Dr. Presant consulted with Plaintiff's Psychiatrist, Judith Nowak, M.D.  <u>Source</u>:  Exh. E, ¶ 4.

7.      On or about December 3, 1999, Dr. Presant issued a written determination that Plaintiff had a disability, acute depression, that required a reasonable accommodation under the Act.  <u>Source</u>:  Exh. A, ¶ 10, Attachment 1; Exh. C, HT (Sottile), pp. 488-89.

8.      As a reasonable accommodation under the Act, Dr. Presant recommended that Plaintiff's job be restructured to include substantive legal work or that Plaintiff be reassigned to an employment position that involved substantive legal work.  <u>Source</u>:  Exh. A, ¶ 10, Attachment 1.

9.      It was not feasible to restructure Plaintiff's current position to include substantive legal work.  <u>Source</u>:  Exh. A, Attachment 5; Exh. C, HT (Sottile), p. 549.

10.     On or about December 3, 1999, Defendant, through employees of the Internal Revenue Service, made a determination that the reasonable accommodation it was required to find for Plaintiff under the Act was reassignment to an employment position involving substantive legal work.  <u>Source</u>:  Exh. A, ¶ 10, Attachment 1; Exh. B, pp. 11-12, 72-75, 123-24; Exh. C, HT (Williams), p. 253; (Fulcher), pp. 352-54, 435-36, 449-50; (Sottile), pp. 488-89.

11.     At all times between October 22, 1999, and March 27, 2000, Plaintiff was a qualified individual with a disability within the meaning of the Act.  <u>Source</u>:  Exh. A, ¶¶ 9-10,

Attachment 1; Exh. B, pp. 11-12, 72-75, 123-24; Exh. C, HT (Williams), pp. 245, 265-66, 269-70; (Fulcher), pp. 352-54, 427-28, 449-50; (Sottile), pp. 488-89; (Nowak), pp. 30-32, 36-43, 46-48; Exh. D, p. 5.

12.     Based on Dr. Presant's opinion, on or about December 3, 1999, Defendant, through employees of the Internal Revenue Service, made a determination that Plaintiff had a disability that required Defendant to find a reasonable accommodation for Plaintiff under the Act.  Source:  Exh. A, ¶ 11, Attachment 1; Exh. B, pp. 11-12, 72-75, 123-24; Exh. C, HT (Burns), pp. 221, 226; (Williams), p. 245; (Fulcher), pp. 352-54, 435-36, 449-50.

13.     Defendant's determination, based on the opinion of Dr. Presant, was a conclusive and final determination by Defendant that Plaintiff was a qualified individual with a disability who required a reasonable accommodation under the Act.  Source:  Exh. B, pp. 11-12, 56, 72-75, 109, 123-24; Exh. C, HT (Burns), pp. 225-28; (Williams), pp. 245, 265-66, 269-70, 272, 274-75; (Fulcher), pp. 427, 428; (Sottile), p. 527.

14.     Defendant offered repeated testimony in the administrative proceedings that the determination based on the opinion of Dr. Presant was a conclusive and final determination by Defendant that Plaintiff was a qualified individual with a disability who required a reasonable accommodation under the Act.  Source:  Exh. B, pp. 11-12, 56, 72-75, 109, 123-24; Exh. C, HT (Burns), pp. 225-28; (Williams), pp. 245, 265-66, 269-70, 272, 274-75; (Fulcher), pp. 427, 428; (Sottile), p. 527.

15.     On or about December 3, 1999, Barry Fulcher, an employee of Defendant, was assigned the lead responsibility to search for a reasonable accommodation under the Act for Plaintiff.  Source:  Exh. B, pp. 11, 38, 57, 73; Exh. C, HT (Sottile), pp. 529-30.

16.     Beginning in early December 1999 and continuing until March 27, 2000, Defendant was aware that there were open attorney positions in the IRS Office of Chief Counsel

in Washington, D.C., at Plaintiff's grade level. <u>Source</u>: Exh. A, ¶ 12, Attachment 2; Exh. B, pp. 28, 38, 57; Exh. F, Supplemental Responses, No. 6.

17.        On several occasions between December 3, 1999, and March 27, 2000, Plaintiff requested reassignment to an open attorney position in the IRS Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level.  <u>Source</u>: Exh. A, ¶¶ 12, 13, Attachment 3; Exh. B, pp. 28, 38, 57.

18.        At all times between December 3, 1999, and March 27, 2000, there were open attorney positions in the IRS Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level. <u>Source</u>:  Exh. A, ¶¶ 12, 13, Attachment 2; Exh. D, Deposition of Susan Nizer, pp. 13-15; Exh. F, Supplemental Interrogatory Responses of Defendant, No. 6.

19.        At all times between December 3, 1999, and March 27, 2000, there were no attorney positions open in the Internal Revenue Service at Plaintiff's grade level in the Washington, D.C., metropolitan area.  <u>Source</u>: Exh. C, HT (Sottile), pp. 529-30; (King), p. 298.

20.        At all times between December 3, 1999, and early February 2000, there were no attorney positions open in the Internal Revenue Service in the Washington, D.C., metropolitan area.  <u>Source</u>: Exh. C, HT (Sottile), pp. 529-30.

21.        At all times between December 3, 1999, and March 27, 2000, the open attorney positions in OCC were the only attorney positions at Plaintiff's grade level open in the Department of Treasury in the Washington, D.C., metropolitan area that Defendant identified in its search to find a reasonable accommodation for Plaintiff.  <u>Source</u>:  Exh. C, HT (Sottile), pp. 529-30.

22.        Plaintiff was at all times fully qualified for an open attorney position in the IRS Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level.  <u>Source</u>:  Exh. A, ¶ 14; Exh. B, pp. 39, 63; Exh. F, Response to Second Interrogatories, No. 5.

23.        At all relevant times in 1999 and 2000, Plaintiff was a highly experienced income tax attorney.  Source:  Exh. A, ¶ 14.

24.        Plaintiff was awarded a J.D. degree from the University of North Carolina School of Law in 1978.  Source:  Exh. A, ¶ 14.

25.        Plaintiff was awarded an LLM degree in taxation from Georgetown University School of Law in 1982.  Source:  Exh. A, ¶ 14.

26.        In 1999 and 2000, Plaintiff was a member in good standing of the State Bar of California. Source:  Exh. A, ¶ 14.

27.        Plaintiff was employed by the IRS Office of Chief Counsel as an attorney from 1984 through 1988.  Source:  Exh. A, ¶ 15.

28.        Plaintiff was awarded a Certificate of Merit and received a cash bonus for her work in the IRS Office of Chief Counsel.  Source: Exh. A, ¶ 15.

29.        After she left the IRS Office of Chief Counsel in 1988, Plaintiff was employed as a tax attorney with Mayer, Brown & Platt and Sonnenschein, Nath & Rosenthal in Chicago, Illinois. Source:  Exh. A, ¶ 15.

30.        From 1993 to 1995, Plaintiff was employed as tax counsel to Rep. William Jefferson, a member of the House Ways and Means Committee.  Source:  Exh. A, ¶ 15.

31.        From September 1995 to February 1996, Plaintiff was employed as tax counsel to Senator John Breaux, a member of the Senate Finance Committee.  Source:  Exh. A, ¶ 15.

32.        Beginning December 3, 1999, and continuing through March 27, 2000, Defendant did not reassign Plaintiff to one of the open attorney positions in the IRS Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level.  Source: Exh. A, ¶ 16, Attachment 3; Exh. B, p. 30; Exh. F, Second Interrogatory Responses, No. 5.

33.        Reassignment of Plaintiff between December 3, 1999, and March 27, 2000, to one of the open attorney positions in the IRS Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level would not have imposed an undue burden on Defendant.  Source:  Exh. B, pp. 39, 63; Exh. F, Second Interrogatory Responses, No. 5; Exh. G, pp. 16-18.

34.        The only reason Defendant did not reassign Plaintiff to an open attorney position in the IRS Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level was because Defendant determined that the IRS Office of Chief Counsel was not obligated to accept Plaintiff, because the IRS Office of Chief Counsel was a separate appointing authority from the Internal Revenue Service which employed Plaintiff.   Source:  Exh. A, ¶ 17, Attachment 3; Exh. B, pp. 56, 113-14; Exh. C, HT (Fulcher), pp. 356-58, 448-51, 458-59; (Sottile), pp. 530-32; Exh. F, Second Interrogatory Responses, No. 5; Supplemental Interrogatory Responses, No. 6.

35.        Defendant had been advised by Plaintiff and by its own staff that Defendant was obligated to reassign Plaintiff to an open position in OCC as a reasonable accommodation under the Act.  Exh. A, Attachment 3; Exh. B, pp. 72-75; Exh. C, HT (Fulcher), pp. 356-58, 448-51; (King), p. 303.

36.        But for Defendant's determination that it was not obligated to place Plaintiff in one of the open OCC positions, Plaintiff would have been reassigned to an attorney position at her grade level in OCC in December 1999.  Source:  Exh. C, HT (Fulcher), pp. 458-59.

37.        On or about March 7, 2000, Plaintiff was offered a position as an estate tax attorney in the Virginia field office of the IRS as a reasonable accommodation under the Act. Source:  Exh. A, ¶ 18, Attachment 4.

38.        The position was a GS 12, Step 00, position on the government pay schedule. Source:  Exh. A, ¶ 18, Attachment 4.

39.          Plaintiff was informed at that time that if she did not accept the estate tax attorney position Defendant would make no further effort to reassign her to another job.  <u>Source</u>:  Exh. A, ¶ 19, Attachment 4.

40.          Plaintiff accepted the transfer to the Virginia field office as an estate tax attorney, GS 12, Step 00, in early March 2000.  <u>Source</u>:  Exh. A, ¶ 19.

41.          While Plaintiff was offered a pay retention agreement, her pay was thereafter frozen at her current pay level of GS 14, Step 6.  <u>Source</u>:  Exh. A, ¶ 19.

42.          Between March 2000 and March 15, 2007, Plaintiff has lost wages of $68,328 as a result of the lower wages paid to her due to Defendant's actions and due to the terms of the pay retention agreement.  <u>Source</u>:  Exh. A, ¶ 8, Attachment 6.

                                    Respectfully submitted,


                                    _____
                                    John D. Quinn, Esq,
                                    Stephen Sale, Esq.
                                    Sale & Quinn, P.C.
                                    910 16th Street, N.W.,  Suite 500
                                    Washington, DC  20006
                                    Tel:  (202) 833-4170
                                    Fax: (202) 887-5137

                                    Counsel for Plaintiff

April 26, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| TESSA E. BERGMAN | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. <u>06-0303 (GK)</u> |
| v. | : | |
| | : | |
| HENRY M. PAULSON, JR. | : | |
| SECRETARY OF THE TREASURY | : | |
| | : | |
| Defendant. | : | |
| | : | |

ORDER

In consideration of the motion for partial summary judgment of Plaintiff Tessa Bergman, and the response thereto of Defendant, it is this ____ day of _____, 2007:

ORDERED, that the motion for partial summary judgment is granted.

Judgment shall be entered in favor of Plaintiff Tessa Bergman and against Defendant, Henry M. Paulson, Jr., Secretary of the Treasury as follows:

1. For compensatory damages in the amount of $68,328;

2. For reasonable attorney's fees and costs of Plaintiff in this case and in the administrative proceedings below, in an amount to be determined based a submission by Plaintiff under Rule 54;

3. That Defendant shall, within fifteen days hereof place Plaintiff in a position in the Office of Chief Counsel, in Washington, D.C. as an income tax attorney and that Plaintiff's initial grade and salary be established at GS 14, Step 8; and

4. That all negative references be removed from Plaintiff's personnel files for incidents occurring on or after December 3, 1999.

_____
Gladys Kessler
United States District Judge