56 F.L.R.A. 486, FLRA Rep. No. 958, 56 FLRA No. 76, 2000 WL 1009440 (F.L.R.A.)

F.L.R.A.

## *1 U.S. DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE
and
U.S. DEPARTMENT OF THE TREASURY OFFICE OF THE CHIEF COUNSEL INTERNAL REVENUE SERVICE
(Activities)
and
NATIONAL TREASURY EMPLOYEES UNION (Petitioner)

WA-RP-90061

July 21, 2000

### SUBJECT MATTER INDEX ENTRIES

**UNFAIR LABOR PRACTICE**
**APPROPRIATE UNIT**
**STATUTE**

**7116(a)**
**DIGEST NOTES**

The Regional Director (RD) dismissed in part the petition to consolidate seven separate bargaining units. The RD concluded that the proposed consolidation of the seven bargaining units was not appropriate. The Authority denied the application for review.
The Authority noted that under section 7112(d) of the Statute, two or more bargaining units represented by the same union may be consolidated if the Authority considers the larger unit to be appropriate. In order for a unit to be considered appropriate, all three criteria-community of interest, effective dealings, and efficiency of agency operations-must be met.
The Authority found that the RD did not fail to apply established law in addressing the commissioner's authority over the chief counsel. Additionally, the Authority found that the RD did not fail to apply established law with respect to effective dealings and efficiency of operations. In sum, the Authority concluded that there was no basis for granting review of the RD's determination that the proposed consolidated single unit would not promote effective dealings and the efficiency of agency operations.
Before the Authority: Donald S. Wasserman, Chairman and Dale Cabaniss, Member.

### DECISION AND ORDER ON REVIEW

### I. Statement of the Case

This case is before the Authority pursuant to section 2422.31 of the Authority's Regulations on Petitioner's application for review of the Regional Director's (RD's) decision dismissing in part its petition to consolidate seven separate bargaining units.[FN1] The RD concluded that the proposed consolidation of the seven bargaining units was not appropriate, as defined by section 7112(a) of the Federal Service Labor-Management Relations Statute (the Statute). The Activities (IRS and OCC) filed an opposition to the Petitioner's application.

For the following reasons, we deny the application for review of the RD's decision to dismiss the petition for a single consolidated bargaining unit.

### II. Background and the RD's Decision

A. Background

1. IRS

The Petitioner sought to consolidate seven bargaining units into one bargaining unit that would include all

the nonprofessional and professional employees of the IRS.[FN2] The Activities contended that the petitioned consolidated unit would not constitute an appropriate unit within the meaning of the Statute.

The IRS is a bureau of the U.S. Department of the Treasury, headed by a Commissioner who reports to the Secretary of the Treasury. The IRS' organizational structure includes a national office, four regional offices, ten service centers, 33 district offices, two computing centers and numerous additional posts of duty. The national office develops broad nationwide policies and programs for the administration of tax laws and regulations, and evaluates programs for the accomplishment of strategic objectives. The Regional offices oversee broad nationwide plans and policies, and coordinate, direct, and review operations of the district offices within their regions. The appeals function handles and attempts to settle taxpayer disputes over assessed deficiencies. The district offices conduct the examination, collection, criminal investigation, and customer assistance functions of the IRS within an established geographic area. Service centers serve as the data-processing arm of the IRS and process paper and electronic submissions, correct errors, and forward data to the computing centers for analysis and posting to taxpayer accounts. The two computing centers support IRS tax processing and information management.

*2 At the time of the hearing, approximately 100,000 competitive service employees were in the IRS bargaining units at issue. Most of the employees are located in service centers and perform work as data transcribers and customer service representatives. Other principal bargaining unit occupations include revenue agents, tax auditors, and revenue officers. The IRS also employs estate and gift tax attorneys, who examine estate and gift tax returns, but this was not one of the representative (or common) positions in the parties' stipulation to the hearing officer.

The IRS' personnel policies, including its labor relations policies for all offices, are set by a Senior Leadership Team at the national office in Washington, D.C. The national office retains ultimate authority over labor relations and other personnel policies. The two collective bargaining agreements for IRS employees provide that first consideration for hiring and recruitment must be given to IRS bargaining unit employees. OCC employees are considered outside candidates for IRS vacancies. Detail and reassignment provisions operate on a seniority-based volunteer system. IRS employees do not share areas of consideration for promotion or reduction-in-force (RIF) with OCC employees. IRS employees also enjoy flexiplace and flexitime, or alternative work schedule formats, such as 5/4/9 or 4-10 hour days.

2. OCC

The Department of the Treasury, in addition to its various bureaus, also has an overall Legal Division. This Legal Division includes separate Offices of Chief Counsel, each of which services a different bureau within the Department. The Legal Division is headed by the General Counsel who reports to the Secretary. The OCC is headed by a Chief Counsel who reports to the General Counsel.

There are approximately 2,600 employees in OCC. The representative position is that of attorney. Other principal occupations include paralegal and support staff. About 1 percent of OCC employees are revenue agents. Most of the OCC employees work in the field. OCC attorneys in district counsel offices prepare and try Tax Court cases, provide advice and opinions about the assessment and collection of taxes, assist and advise IRS special agents in criminal investigations, and perform bankruptcy work.

OCC's personnel policies, including its labor relations policy, are centralized at the national office in Washington, D.C. These policies are established and implemented apart from any authority of the IRS Commissioner.[FN3] Negotiated agreements for OCC employees are bargained and administered entirely by the OCC's labor relations staff. All significant issues and changes are coordinated with the General Counsel.

The OCC staff attorneys serve under excepted service appointments. Qualifications for OCC attorneys, as excepted service positions, are not subject to competitive or negotiated procedures, and there are no contractual provisions constraining OCC managers from selecting candidates from any appropriate source. In making details and reassignments, OCC generally operates on the basis of subjective determinations that allow managers the flexibility to assign the person with the most specialized knowledge to a particular assignment, rather than following a seniority-based system. The General Counsel mandates time-in-grade requirements for OCC attorneys and must approve OCC performance awards of more than $5,000. OCC

employees have limits on flexiplace and flexitime provisions, for example, they may not work 4 10-hour day schedules.

3. Facts relevant to both IRS and OCC

\*3 The national and regional headquarters for both IRS and OCC are located in the same cities, as are most district offices. Generally, IRS appeals offices and OCC offices are co-located, as a result of IRS appeals having been organizationally a part of the OCC from 1982 to 1995. RD's Decision at 19. The OCC has no employees co-located with the IRS' service centers. At various locations, OCC and IRS employees share such resources as conference rooms, libraries, and copier and fax machines. There is interaction between OCC employees and certain IRS employees where an integration of work function exists, especially when preparing for Tax Court cases. OCC attorneys provide advice and representation to both the OCC and IRS in matters pending before the Equal Employment Opportunity Commission, the Merit Systems Protection Board, the Federal Labor Relations Authority, and in arbitration hearings.

Both OCC and IRS employees must observe the IRS Code of Conduct. The professional conduct of OCC attorneys may be reviewed by a sanctions officer, according to Executive Order No. 12778. However, OCC does not follow the IRS guide for penalties in handling disciplinary cases. OCC employees follow IRS' travel procedures. In budgetary terms, OCC falls under IRS as a line item in the IRS budget of the Treasury Bill. However, after a budget is approved, OCC determines how it will spend its funds.

4. Restructuring and Reform Act of 1998 (RRA 98)

Much of the disagreement in this case involves the parties' separate interpretations of the significance of provisions of RRA 98.[FN4] The parties' arguments extend to the provisions in law, rule, or regulation regarding chain of command authority for decision-making over personnel and labor relations policies. The Petitioner believes that 26 U.S.C. § 7803(b)(3) places the Chief Counsel of the OCC in a subordinate position to the authority of the IRS Commissioner. The Activities dispute the contention that section 7803(b)(3) has any effect on OCC's independent personnel authority, originally set forth in Treasury Order 107-04 and, after RRA 98 was passed, reissued in Treasury Order 107-07.[FN5] The Petitioner argues that Treasury Order 107-07 conflicts with the powers to administer and manage that were specifically granted to the IRS Commissioner in section 7803. Additionally, 31 U.S.C. § 301(f)(2) provides that the Chief Counsel for the IRS will be an Assistant General Counsel and that he shall carry out the duties and powers prescribed by the Secretary.

B. RD's Decision

According to the RD, in considering the appropriateness of the single consolidated unit, the parties devoted much attention to their interpretation of RRA 98 and to Treasury Order 107-07. At the same time, extensive testimony was obtained about the practical exercise of personnel and labor relations authority over OCC unit employees, as well as the similarity or dissimilarity of personnel policies and practices found in the IRS and in the OCC. The RD determined that it was "not necessary to interpret RRA [98], related sections of the Internal Revenue Code, or the legitimacy of Treasury Order 107-07." RD's Decision at 42.[FN6] The RD found that under Authority precedent "a determination must be based on testimony about what exists in reality versus documentation about what conditions should exist." Id.

\*4 In this regard, the RD found that the evidence indicates considerable integration of mission and of function between OCC attorneys and IRS employees, as well as some co-location of OCC and IRS bargaining unit employees. The RD found that OCC functions within an attorney-client type of relationship with IRS in support of its functions.

The RD also found that there were several factors militating against consolidation of the seven units into a single consolidated unit. According to the RD, except for travel authority and establishment of OCC budget, the IRS Commissioner exercises no personnel or labor relations authority over OCC bargaining unit employees. Instead, personnel and labor relations authority over OCC bargaining unit employees continues to reside with the OCC, including all decision-making authority over their selection, evaluation, reward, and discipline. There is a separate chain of command for decisions regarding RIF, promotions, and classification

authority. Unlike the IRS employees covered by selection and seniority-based negotiated criteria, within OCC hiring is not subject to negotiated procedures and detail policies are constrained. The RD noted a "lack of fungibility" between OCC and IRS bargaining units, further diminishing a community of interest between OCC and IRS bargaining unit employees. *Id.* at 44. The RD found that the two, entirely separate authorities present here would be inconsistent with consolidation and "would be an obstacle to the collective bargaining envisioned by the Statute." *Id.* at 45.

The RD concluded that the absence of a community of interest precluded granting the petition for the single consolidated bargaining unit. However, even if a community of interest had been found, the RD noted that she would decline consolidation of the seven bargaining units based on the other two appropriate unit criteria. In this regard, the RD stated that an absence of centralized personnel and labor relations authority and of broad operating policies at the national level argued against consolidation, because it would not promote the efficiency of agency operations and effectiveness of dealings. Further, according to the RD, it appeared that some new structures and/or procedures would be required to bridge the gap across separate personnel office. Accordingly, the RD decided that the petition to consolidate the seven bargaining units into a single consolidated unit should not be granted.

### III. Positions of the Parties

A. Petitioner

1. Whether the RD failed to apply established law by refusing to address the Commissioner's Authority over Counsel

The Petitioner contends that this case presents a genuine issue over whether the RD failed to follow the Authority's analytical approach in appropriate unit cases where the central question concerns the locus of ultimate authority over agency labor relations and personnel matters. According to the Petitioner, it filed this consolidation petition after enactment of RRA 98. The Petitioner argues that the RD refused to consider the impact of RRA 98 on the appropriate unit question, and without determining whether the IRS Commissioner possesses the ultimate legal authority over matters in the OCC. Instead, according to the Petitioner, the RD chose to focus on evidence of the exercise of personnel authority " 'in real terms since enactment of the RRA [98].' " Application for Review at 9 (quoting RD's Decision at 42).

The Petitioner asserts that under Authority precedent, questions of Agency officials' statutory authority over personnel and labor relations matters must be addressed in deciding appropriate unit questions. According to the Petitioner, the RD expressly declined to follow this approach. The Petitioner asserts that the RD refused to analyze applicable provisions of RRA 98, to determine whether the Commissioner has ultimate authority over labor relations, personnel, and working conditions of OCC employees. The Petitioner argues that the RD's conclusions cannot be reconciled with applicable RRA provisions.

The Petitioner contends that under applicable provisions of RRA 98, the IRS Commissioner has ultimate authority over personnel, labor relations and working conditions matters involving OCC employees. According to the Petitioner, the new section 7803(b)(3) mandates that the Chief Counsel report directly to the Commissioner, with two exceptions. To the Petitioner, this is significant because it demonstrates that the Chief Counsel no longer is independent but, rather, comes under the control of the IRS Commissioner. The Petitioner asserts that the Secretary and the Treasury General Counsel no longer have authority over the Chief Counsel with respect to organizational, management, or personnel matters.

The Petitioner also contends that Treasury Order 107-07 cannot be reconciled with RRA 98. The Petitioner asserts that the order was issued immediately after the Petitioner filed its petition to consolidate the OCC units and the other IRS bargaining units. Petitioner suggests "that Counsel engineered the issuance of the order for the convenient purpose of assisting their litigating position in this case." Application for Review at 21. Accordingly, the Petitioner argues that the Authority owes no deference to the Activities' interpretation of the RRA.

2. Whether the RD failed to apply established law regarding section 7112(a) and (d)

The Petitioner states that the RD correctly summarized the traditional statutory base for consolidation of

bargaining units and the community of interest factors in consolidation cases. The Petitioner, however, argues that the RD declined to follow the established precedent resulting in legal conclusions that are at odds with the law cited and ultimately resulting in an incorrect conclusion regarding the appropriateness of the single consolidated unit.

The Petitioner contends that the RD legally erred by according primacy to her finding of de facto separate personnel and labor relations authority in OCC. According to the Petitioner, a differing chain of command will not by itself render an otherwise appropriate unit inappropriate. The Petitioner argues that the RD placed complete emphasis on the importance of separate personnel and labor relations authority without due consideration of other relevant factors. The Petitioner claims that this analysis is inconsistent with the totality of the circumstances that the RD is required to consider.

*6 The Petitioner asserts that the RD found that the evidence indicated considerable integration of IRS and OCC mission as well as similar geographic distribution of employees. The Petitioner also asserts that the RD identified significant similarity of employee occupations in the IRS and OCC units. Therefore, the Petitioner contends that the RD should have considered these likenesses and found the petitioned for single consolidated unit appropriate, rather than relying on the separate chains of command and separation of personnel and labor relations authority to find the unit not appropriate.

3. Whether the RD failed to apply established law with respect to effective dealings and efficiency of operations

The Petitioner contends that the RD's decision failed to apply established law regarding effective dealings and efficiency of operations resulting in an improper conclusion regarding the appropriateness of the consolidated unit. The Petitioner maintains that the RD's consideration of separate chains of command and the absence of a centralized authority, as more determinative than a speculative possibility that consolidation of bargaining units would eliminate duplicative negotiations, is an inappropriate application of Authority precedent.

B. Activities

1. Whether the RD failed to apply established law by refusing to address the Commissioner's Authority over Counsel

The Activities assert that there is no basis for the Petitioner's claim that established precedent required the RD to address RRA 98. The Activities contend that the Authority has consistently looked at where and how activities have exercised their personnel and labor relations authority rather than confining themselves exclusively to a statute. The Activities also contend that, in making representation case decisions, the Authority considers the totality of the circumstances on a case by case basis.

The Activities argue that Congress clearly understood how to place Treasury and IRS officials in identified organizations. According to the Activities, the RRA 98 did not move the OCC into the IRS; it placed the Chief Counsel where he had been since 1934, in the Treasury Department. The Activities point to the fact that RRA 98 did not repeal 31 U.S.C. § 301(f)(2), which designates the Chief Counsel for the IRS as an Assistant General Counsel of the Treasury Department. The Activities assert that the Petitioner's reliance on section 7803(b)(3) is misplaced because nowhere in that section or its legislative history is personnel or labor relations authority mentioned.

2. Whether the RD failed to apply established law regarding section 7112(a) and (d)

The Activities assert that the RD did not fail to apply established law when she determined that the proposed consolidated unit was not appropriate under section 7112 of the Statute. The Activities argue that the RD did consider the totality of the circumstances when she concluded that the proposed consolidated unit did not share a community of interest.

*7 The Activities contend that the RD did not, as the Petitioner suggests, rely solely on the differing chains of command and personnel and labor relations policies to find that a community of interest did not exist. The Activities assert that the RD also found that differing working conditions existed for IRS and OCC employees

and that there was a lack of fungibility between the OCC and IRS bargaining units. The Activities further assert that the RD found other differences in tours of duty and flexiplace, differences regarding performance awards, and differences regarding reductions in force. The Activities argue that the RD was correct to find that the IRS and OCC bargaining units were sufficiently dissimilar and to conclude that a community of interest did not exist.

3. Whether the RD failed to apply established law with respect to effective dealings and efficiency of operations

The Activities argue that the RD did not fail to apply established precedent when she found the proposed consolidated bargaining unit would not promote effective dealings or efficiency of operations. According to the Activities, the Petitioner failed to advance any argument describing how the RD failed to apply established precedent or showed any improper factors which she considered in reaching her conclusion. The Activities assert that the RD was correct in finding that OCC and IRS had separate personnel and labor relations functions and that IRS did not control or manage OCC personnel and labor relations programs. The Activities also assert that the RD was correct in finding that a new structure or procedure would be required to bridge the gap between the separate OCC and IRS personnel offices.

## IV. Analysis and Conclusions

Under section 7112(d) of the Statute, two or more bargaining units represented by the same union may be consolidated "if the authority considers the larger unit to be appropriate." See U.S. Department of the Air Force, Air Force Materiel Command, Wright-Patterson Air Force Base, Ohio, 55 FLRA 359, 361 (1999) ( AFMC). The reference in section 7112(d) to the consolidation of ""appropriate" units incorporates the appropriate unit criteria established in section 7112(a).[FN7] The Authority has identified a number of factors that indicate whether these statutory criteria are met, see generally, United States Department of the Navy, Fleet and Industrial Supply Center, Norfolk, Virginia, 52 FLRA 950, 960-61 (1997) ( FISC), and has consistently applied these factors on a case-by-case basis. See U.S. Department of Justice and American Federation of Government Employees, AFL-CIO, 17 FLRA 58 (1985); Army and Air Force Exchange Service, Dallas, Texas and American Federation of Government Employees, AFL-CIO, 5 FLRA 657, 660-61 (1981) ( AAFES).

In order for a unit to be considered appropriate, all three criteria-community of interest, effective dealings, and efficiency of agency operations-must be met. The Statute does not require that the proposed unit be the only appropriate unit or the most appropriate unit. American Federation of Government Employees, Local 2004 and Letterkenny Army Depot and Defense Logistics Agency, Defense Distribution Region East, 47 FLRA 969, 972-73 (1993).

A. The RD Did Not Fail to Apply Established Law In Addressing the Commissioner's Authority over the Chief Counsel

*8 The Petitioner argues that the RD did not accurately address the IRS Commissioner's authority over the OCC. In this regard, the Petitioner maintains that under Authority precedent, the RD was required to address the statutory authority of the Chief Counsel after enactment of RRA 98. The Petitioner relies on U.S. Department of Defense, National Guard Bureau, 55 FLRA 657 (1999) ( National Guard Bureau II), petition for review filed, No. 1:99CV02562 (D.D.C. Sept. 27, 1999); and Department of Defense, National Guard Bureau, 13 FLRA 232 (1983) ( National Guard Bureau I).

In the cases relied on by the Petitioner, the Authority considered statutory provisions pertaining to the dual Federal and state nature of employment of National Guard technicians. The statutory provisions were of particular relevance in determining, and finding, that state adjutant generals have a role in labor relations governing technicians. See National Guard Bureau II, 55 FLRA at 660-62. However, those provisions were not examined in isolation, as the Petitioner's argument suggests. Instead, the provisions were found to support the agency's claim that the consolidated unit was not appropriate.

In making appropriate unit determinations, the Authority examines existing personnel and labor relations policies and practices and chains of authority. See, e.g., Naval Submarine Base, New London Naval Submarine School, et al. and National Association of Government Employees, Local R1-100, SEIU, AFL-CIO,

46 FLRA 1354 (1993); *AAFES*, 5 FLRA 657. In most, if not all, cases there are statutory or regulatory delegations of authority with respect to an agency's dealings on personnel and labor relations matters. Therefore, any assessment regarding the appropriateness of a petitioned-for consolidated unit necessarily encompasses an examination of such delegations, even where the examination is not expressly articulated. In this case, while the RD did not address what she termed the parties' dispute over "the legality" of RRA 98 and Treasury Order 107-07, the RD clearly assessed the impact of those authorities in evaluating the appropriate unit criteria. On this basis, therefore, we find that the Petitioner has not established that the RD failed to apply established law.[FN8]

In addition, we find that to the extent the Petitioner claims that Treasury Order 107-07 cannot be reconciled with RRA 98, such a claim is not properly before us in this proceeding. It is well established that challenges to the validity of agency regulations are appropriately made in other forums.[FN9] *See, e.g., National Treasury Employees Union v. Devine*, 577 F.Supp. 738 (D.D.C.1983), aff'd, 733 F.2d 114 (D.C.Cir.1984) (union challenge of OPM regulations is a matter for the district court).

B. The RD Did Not Fail to Apply Established Law with Respect to Effective Dealings and Efficiency of Operations

In determining whether consolidation would promote effective dealings and efficient agency operations, the Authority examines a number of factors, including: whether personnel and labor relations authority is centralized; whether consolidation will reduce bargaining unit fragmentation, thereby, "'promoting a more effective, comprehensive bargaining unit structure to effectuate the purposes of the Statute" (*AAFES*, 5 FLRA at 661-62); and whether the unit would adequately reflect the agency's organization structure or would require creating a new agency structure. *National Guard Bureau I*, 13 FLRA at 237; *Department of Agriculture Farmers Home Administration and National Federation of Federal Employees, Independent*, 20 FLRA 216, 221 (1985). As a general matter the Authority also considers the past collective bargaining experience of the parties in making "effective dealings" determinations. *FISC*, 52 FLRA at 961.

*9 In applying these factors, the RD made the following determinations. First, the RD found that there was an absence of centralized personnel and labor relations authority and of broad operating policies at the national level. Second, the RD found that while the proposed consolidation of all seven units would reduce unit fragmentation, such a result would also be achieved by consolidating the five IRS units and consolidating the two OCC units. Third, the RD found that new structures and/or procedures would likely be required "to bridge the gap across separate personnel offices." RD's Decision at 46. Finally, the RD determined that "[t]he possibility that consolidation would eliminate duplicative negotiations is not demonstrable and in any event would not ... overcome this lack of centralized authority." *Id.*

None of the Petitioner's arguments persuades us that the RD erred as a matter of law. First, the Petitioner correctly notes the Authority's holding that "a separate chain of command will not, per se render a unit inappropriate." Application for Review at 31 (citing *U.S. Department of the Navy, Commander, Naval Base, Norfolk, Virginia*, 56 FLRA 328 (2000) (Chairman Wasserman, concurring in part and dissenting in part) (*Department of the Navy*)). The RD did not base her determination solely on distinctions in the chain of command. Instead, here, as in *Department of the Navy*, a determination with respect to the appropriateness of the unit was based on all the relevant factors.

Next, the Petitioner claims that it has engaged in joint negotiations with IRS and OCC, that record evidence of duplicative negotiations was not speculative, and that even if OCC were considered a separate employer, the evidence demonstrated that joint bargaining with IRS was feasible. Even assuming that joint bargaining has occurred, and may likely occur again on particular matters or specific occasions, the Petitioner has not demonstrated that such bargaining would promote effective dealings, given the significant differences in actual bargaining history. Furthermore, the existence of joint bargaining is not sufficient to outweigh the other factors that militate against finding the unit appropriate.

Finally, the Petitioner claims that the RD's decision is inconsistent with Authority precedent, citing *AFMC* and *FISC*. In *AFMC*, the Authority found that the regional director failed to apply established law with respect to whether the petitioned-for consolidated unit would promote effective dealings and efficiency of the agency's operations. As relevant here, the regional director found that those criteria had not been satisfied

because there was no showing that consolidation would improve labor-management relationships and because the proposed consolidated unit did not include a particular bargaining unit. In both instances, the Authority determined that the decision was incorrect because the Statute does not require that collective bargaining relationships be improved or that consolidation eliminate unit fragmentation. In this case, the RD made no such findings.

*10 In FISC, the Authority remanded the case to the regional director to make further findings on, among other things, factual issues pertaining to effective dealings and efficiency of agency operations. As to the former, the regional director was directed to make findings that would show whether the establishment of working conditions and personnel policies was split between several individuals or organizational components. As to the latter, factual findings were needed in order to ascertain whether a single entity exercised authority to set labor relations for all unit employees. In this case, the RD made sufficient findings on the relevant factors. Consequently, we find that the RD's decision is not inconsistent with Authority precedent.

In sum, we find that there is no basis for granting review of the RD's determination that the proposed consolidated single unit would not promote effective dealings and the efficiency of agency operations.[FN10]

## V. Order

The Application for Review of the RD's Decision and Order is denied.

FN1. In addition to the request to consolidate the seven bargaining units, the petition sought, in the alternative, to separately consolidate five Internal Revenue Service (IRS) bargaining units and two Office of Chief Counsel (OCC) bargaining units. The Activities did not oppose the alternative consolidations. The RD found those consolidation petitions would establish appropriate consolidated bargaining units and granted that portion of the petition. This conclusion is not challenged and will not be addressed further; the Petitioner is only challenging the RD's decision not to consolidate all seven bargaining units.

FN2. The Petitioner contended that the OCC was a part of the IRS and, therefore, did not list it separately. The IRS and OCC sought to be treated as separate activities, and the RD approved that request.

FN3. Certain personnel services are performed for OCC by IRS pursuant to a servicing agreement, and OCC relies on IRS equal employment opportunity counselors at field locations.

FN4. 26 U.S.C. § 7803(b)(3), part of RRA 98, provides:
Persons to whom Chief Counsel reports-The Chief Counsel shall report directly to the Commissioner of Internal Revenue, except that-

(A) the Chief Counsel shall report to both the Commissioner and the General Counsel for the Department of the Treasury with respect to-

(i) legal advice or interpretation of the tax law not relating solely to tax policy;
(ii) tax litigation; and

(B) the Chief Counsel shall report to the General Counsel with respect to legal advice or interpretation of the tax law relating solely to tax policy.

If there is any disagreement between the Commissioner and the General Counsel with respect to any matter jointly referred to them under subparagraph (A), such matter shall be submitted to the Secretary or Deputy Secretary for resolution.

FN5. Treasury Order 107-07 states, in relevant part:
1. Personnel authority over personnel employed by the Office of the Chief Counsel, Internal Revenue Service, is hereby delegated to the General Counsel.... The authority hereby delegated

includes, but is not limited to, taking any action pertaining to the appointment, classification, promotion, demotion, reassignment, transfer, or separation of such employees.
2. The authority delegated by the Order may be redelegated by the General Counsel. Any such redelegation shall be in writing....
RD's Decision at 27 n. 34.

FN6. The RD did, however, take administrative notice of the legislative conference report, H.R.Conf.Rep. No. 105-599, 105th Cong., 2nd Sess. 4 (1998), quoted in the Petitioner's post-hearing brief. RD's Decision at 28 n. 38.

FN7. Section 7112(a) of the Statute provides:
The Authority shall determine the appropriateness of any unit. The Authority shall determine in each case whether, in order to ensure employees the fullest freedom in exercising the rights guaranteed under this chapter, the appropriate unit should be established on an agency, plant, installation functional, or other basis and shall determine any unit to be an appropriate unit only if the determination will ensure a clear and identifiable community of interest among the employees in the unit and will promote effective dealings with, and efficiency of the operations of the agency involved.

FN8. We recognize, of course, that delegations may change in response to a variety of factors. Our decision should not be read so as to preclude the possibility, that, with the passage of time, lines of authority may change pursuant to RRA 98.

FN9. For purposes of this decision, we assume that Treasury Order 107-07 constitutes an Agency regulation.

FN10. Because all three criteria must be met, and in view of our finding that the proposed consolidated single unit would not promote effective dealings and efficiency of Agency operations, we do not address whether the employees share a community of interest.

56 F.L.R.A. 486, FLRA Rep. No. 958, 56 FLRA No. 76, 2000 WL 1009440 (F.L.R.A.)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.