UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TESSA E. BERGMAN, | : | |
| Plaintiff | : | |
| | : | Civ. Action No. 06-0303 (GK) |
| V. | : | |
| JOHN W. SNOW, | : | |
| Secretary, Department of the Treasury, | : | |
| Defendant | : | |

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant respectfully submits this memorandum in Opposition to Plaintiff's Motion for

Partial Summary Judgment.  Plaintiff requests partial summary judgment on the issue of

accommodation under the Rehabilitation Act.  Plaintiff's motion should be denied because she

has failed to establish that she is entitled to judgment as a matter of law.  Plaintiff has failed to

establish a prima facie case that she is "disabled" or a "qualified individual with a disability" as

defined by the Rehabilitation and Americans with Disabilities Acts, or that defendant

discriminated against her in respect to a reasonable accommodation.

**Summary Judgment**

Summary judgment may be granted when the pleadings and evidence demonstrate that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43

F.3d 1538, 1540 (D.C.Cir. 1995).  A genuine issue is one that could change the outcome of the

litigation.  *See Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 243 (1986).  While all evidence

and the inferences drawn therefrom must be considered in the light most favorable to the

nonmoving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986), a complaint should be dismissed if it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The defendant is the non-moving party in this motion.

## MATERIAL FACTS IN ISSUE

Attached hereto is defendant's statement of material facts as to which there is a genuine issue.

## JUDICIAL ESTOPPEL

Since 1976 is has been clear that federal employees have a right to a trial de novo in District Court on discrimination claims.  *Chandler v. Roudebush*,  425 U.S. 840 (1976).  In the new "*de novo*" civil action, the plaintiff bears the burden of proving each element of her claim, and

> Summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 . . .(1986).  An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"-that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8).

*Cleveland v. Policy Management Systems Corp*.,  526 U.S. 795, 805-806 (1999).

Plaintiff contends that at the administrative level the defendant "admitted"  that plaintiff is a qualified individual with a disability, and that due to judicial estoppel, in this proceeding, defendant is precluded from arguing that plaintiff has not met her burden on that issue.  PSJM at p. 23-25.  In addressing a slightly similar argument, the 7th Circuit stated:

> It is nonsensical to suggest that counsel for either party should be prevented from making an argument or presenting evidence as to the ultimate issue in a case. Therefore, assuming there is in fact some order of the district court denying

Hoffman's phantom motion to preclude Caterpillar from making any reference to Hoffman's inability to operate the high-speed scanner at set production levels, we now expressly find there was no error in such a denial.

*Hoffman v. Caterpillar, Inc*., 368 F.3d 709, 716 (7th Cir. 2004)  The Hoffman Court observed

that

> Hoffman's complaints are implicitly based upon an incorrect understanding of the elements of her disparate treatment claim . . . .. Hoffman seems to have concluded that the sole issue to be determined at trial was whether she could operate the machine-at any level of productivity. Not only does this ignore the required threshold showing of disability as defined under the ADA, . . ., it also ignores our statement in Hoffman I that "the ADA [does not] mandate that Caterpillar must tolerate a drop in productivity in order to allow Hoffman to run the high-speed scanner." . . . At trial Hoffman not only needed to prove that she was both "disabled" and able to operate the scanner, but also that she could meet Caterpillar's established productivity standards.

*Hoffman*, 368 F.3d at 716.  In this accommodation case plaintiff bears the burden of proving that

she is an individual with a disability as defined by the Rehabilitation Act and the ADA.  Judicial

estoppel does not preclude the defendant from arguing that plaintiff has not met her burden.

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion. . . ."

*New Hampshire v. Maine,* 532 U.S. 742, 750 (2001).

> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," . . .. Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. . . .Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," . . . Absent success  in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations,". . .and thus poses little threat to judicial integrity.  . . .A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

3

*Id.* 532 U.S. at 750-751. (citations omitted).    However, the doctrine is rarely applied to the government for public policy reasons.

> Finally, notwithstanding the balance of equities, New Hampshire points to this Court's recognition that "ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states," *Illinois ex rel. Gordon v. Campbell*, 329 U.S. 362, 369, . . . (1946). Of course, "broad interests of public policy may make it important to allow a change of positions that might seem inappropriate as a matter of merely private interests." 18 Wright § 4477, p. 784. But this is not a case where estoppel would compromise a governmental interest in enforcing the law. *Cf. Heckler v. Community Health Services of Crawford Cty., Inc.*, 467 U.S. 51, 60, . . .(1984) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.").

*Id.*, 532 U.S. at 755.  *See also Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority,*  239 F.R.D. 9, 24 (D.D.C.2006) ("Nor could the [plaintiffs] take advantage of judicial estoppel, which is generally unavailable as to government litigants").

Judicial estoppel is not a preferred doctrine in this Circuit.  *United Mine Workers of America 1974 Pension v. Pittston Co.,*  984 F.2d 469, 477 fn 12 (D.C.Cir.1993) ("In *Konstantinidis [v. Chen*, 626 F.2d 933, 936-38 (D.C.Cir.1980)], we explained that judicial estoppel is designed to preserve the integrity of the judicial system and the sanctity of sworn statements.  *Id.* at 937.  However, far from endorsing judicial estoppel as the most appropriate means of effectuating that policy, we expressed a preference for the 'determination of cases on the basis of the true facts as they might be established ultimately.'" *Id.* at 938.");  *Smith v. District of Columbia,*  295 F.Supp.2d 53, 55 -56 (D.D.C.2003) (" this Circuit has specifically rejected the principle of judicial estoppel.");  *Southern Pacific Transp. Co. v. I.C.C.,*  69 F.3d 583, 591 fn 3 (D.C.Cir.1995) (" This court, however, has firmly disapproved of judicial estoppel

in prior cases."); *Smith v. Hope Village, Inc.,* 2007 WL 1086572, *25(D.D.C.2007) (Rejecting

judicial estoppel argument "Given the well-settled 'jurisprudential preference ... for adjudication

on the merits rather than on the basis of formalities. . . .'")(citing *Ciralsky v. CIA*, 355 F.3d 661,

674 (D.C.Cir.2004).

  In the instant matter, the defendant's position is not "clearly inconsistent."  The defendant

did not "succeed[] in persuading" the administrative judge that plaintiff was a qualified

individual with disability.   The government never sought to prove plaintiff was disabled, it

simply chose a litigation strategy that did not challenge plaintiff's assertions on this point.   There

is no "unfair detriment" to plaintiff because must simply be made to prove each element required

by the Act in this *de novo* proceeding..  Further, even if an inconsistent position had been taken

below,  the proper enforcement of the ADA and Rehabilitation Act, should not be compromised

by the acts of governmental agents below.

  **Litigation Below**

  In the case before the EEO Administrative Judge, the issue of whether plaintiff was

disabled or a qualified individual with a disability, as defined by the acts,  was not litigated.   On

May 6, 2002, plaintiff filed a motion for partial summary judgment with the EEOC

Administrative Law Judge.  Ex A.  In that motion plaintiff argued that defendant had an

obligation under the Rehabilitation Act to reassign plaintiff to an attorney position in the Office

of Chief Counsel.  Plaintiff argued that defendant did not meet its burden of proving that such a

reassignment would create an undue burden on the agency and urged that  29 C.F.R. §

1614.203(g), limiting reassignment to the same appointing authority, was not applicable.  Ex A,

Complainant's Memorandum of Points and Authorities at ¶6-8.

On May 30, 2002, the Agency responded with a "Response to Complainant's Motion for Partial Summary Judgment and Cross Motion for Summary Judgment." Ex. B  The first argument of the agency was "The Complainant's Argument that the Agency had a legal obligation to Reassign her to the Office of Chief Counsel Fails." *Id.* at p. 4.  The agency argued that 29 C.F.R. §1614.203 limited reassignment to the same appointing authority. *Id*. at 4-5. The agency also argued that it had reasonably accommodated plaintiff. *Id*. at 5-6.

The subsequently filed pleadings all pertained to whether plaintiff had been given a reasonable accommodation.  See Ex. C, Appellant's Brief in Support of Request for Reconsideration at p.1-5.

**Alternative Legal Theories**

The position of the agency in the litigation below was that it was not legally obligated to accommodate plaintiff by placing her in the Office of General Counsel.  The legal theory expounded by the agency was its reliance on the "same appointing authority" exception. However, there is another alternative legal theory to support the proposition that the agency is not obligated to so accommodate plaintiff.  That is that plaintiff is not a "disabled" individual and not a "qualified individual with a disability";  therefore, plaintiff is not entitled to any protection under the Act and was not entitled to reassignment to the General Counsel's Office.

Judicial estoppel does not preclude pleading in the alternative, as has been done in Defendant's Motion for Summary Judgment before this Court.  In *Smith v. District of Columbia*, 295 F.Supp.2d 53, 55 -56 (D.D.C.2003) the Court noted that although the District Of Columbia Circuit does not endorse the doctrine of judicial estoppel, the Supreme Court has ruled that arguing alternative theories of the case does not violate the doctrine.

As noted by Justice Breyer in *Cleveland [v. Policy Management Systems Corp,*. 526 U.S. 795, 805 . . .(1999)], plaintiffs are permitted, under Fed.R.Civ.P. 8(e)(2), to advance alternate theories of their cases:

[I]f an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system. Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so [to] permit parties to "set forth two or more statements of a claim or defense alternately or hypothetically," and to "state as many separate claims or defenses as a party has regardless of consistency."

* * *

Hence, following *Cleveland*, the Third Circuit held that judicial estoppel could not apply unless the party sought to be estopped had benefitted from one of the inconsistent statements:

> Guided by *Cleveland*, we hold that it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court or agency. Because the practice is specifically sanctioned by the Federal Rules, asserting inconsistent claims within a single action obviously does not constitute misconduct that threatens the court's integrity. In *Cleveland*, the Supreme Court drew a direct parallel between pleading inconsistently in a single case and doing so in subsequent ones, so long as the initial claim was never sustained. Moreover, the Court described the latter type of inconsistencies as "the sort normally tolerated by our legal system." Though the Court did not use the magic words-- "it is not bad faith to assert inconsistent claims in separate actions so long as the initial position was never accepted by a court or agency"-- *Cleveland* 's import is clear.

*Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 782 (3rd Cir.2001).

*Smith v. District of Columbia,* 295 F.Supp.2d 53, 55-56 (D.D.C.2003). Thus, defendant properly may argue alternative legal theories supporting its position that it had no obligation to accommodate plaintiff by giving her an attorney position.

**Defendant's position is not "clearly inconsistent" with its earlier position**

Defendant has not prevailed on contradictory arguments. *See Howard v. Gutierrez,* 474 F.Supp.2d 41, 52 -53 (D.D.C.2007):

7

There is simply nothing contradictory about Megginson's course of action. *See Zedner v. United States*, --- U.S. ----, ----, 126 S.Ct. 1976, 1987, 164 L.Ed.2d 749 (2006) ("[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' "); *New Hampshire v. Maine*, 532 U.S. 742, 750. . . (stating that, in order for judicial estoppel to apply, "a party's later position must be 'clearly inconsistent' with its earlier position.").

Plaintiff argues that the Administrative Law Judge's statement that "there is no dispute that Complainant is a qualified individual with a disability entitled to an accommodation," requires a finding of judicial estoppel. First, since there was no dispute, the idea that someone "prevailed" is oxymoronic. Moreover, plaintiff, and not the agency, bore the burden of proving that plaintiff was a qualified individual with a disability. Therefore the agency did not "win" anything from the finding. Second, judicial estoppel, "generally prevents a party from prevailing in one phase of a case **on an argument** and then relying **on a contradictory argument** to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). The agency did not argue that plaintiff was a qualified individual. For purposes of its response, the Agency simply did not dispute plaintiff's alleged status, because it was not required to do so, in order to prevail on the limited issues actually argued.

Plaintiff also argues defendant is somehow attempting to dispute sworn deposition testimony, and is contradicting positions of its agents. PSJM at p. 25. This is not correct. Plaintiff first mentions the testimony of Dr. Nowak and argues that the Agency did not dispute Dr. Nowak's testimony that plaintiff was a qualified individual with a disability. *Id*. at p. 24-25. However, the testimony offered does not reflect Dr. Nowak giving a legal opinion that plaintiff was a qualified individual with a disability. *Id.* at Ex. C. Dr. Nowak simply testified concerning

plaintiff's medical history of depression and major depression, and gave her opinion that plaintiff needed an accommodation. *Id*.

Similarly, plaintiff contends that the defendant impermissibly is attempting to dispute statements of its agents. *Id.* at p. 25.   Plaintiff first cites the letter of Dr. Presant dated December 3, 1999.  PSJM Ex A, Attachment 1.  As with Dr. Nowak's testimony, plaintiff attempts to leap from facts to legal conclusion.   Dr. Presant's letter states a medical opinion: "It is also very plausible that a major contributor to her depression is low self-esteem resulting from being in a position in which the required work product is not commensurate with her training and capabilities.  Thus, I would recommend from **a medical point of view** that she be accommodated with a position appropriate to her legal and educational background. . . ." *Id*. at Ex. A Attachment 1(emphasis added).  Dr. Presant's letter does not address whether plaintiff is "disabled" or a "qualified individual with a disability" as defined by the ADA and Rehabilitation Act.

Similarly, the testimony of Mr. Fulcher and Mr. Williams was that the agency acted to give plaintiff an accommodation based on Dr. Presant's letter.  Mr. Fulcher and Mr. Williams did not offer a legal opinion as to whether plaintiff met all the legal requirements of the acts. *Id.* at p. 25.  Thus defendant is not attempting to dispute sworn testimony of its agents.

**No "Unfair Detriment"**

Plaintiff has not shown "unfair detriment" to her from defendant's position.  Further, even if an inconsistent position had been taken below, the proper enforcement of the ADA and Rehabilitation Act, should not be compromised by the acts of governmental agents below.

Plaintiff's argument in this case is an example of why the doctrine of judicial estoppel

generally is not applied to governments. Plaintiff's argument is, *inter alia*, that since the agency officials acted to give her an accommodation, that the Court is required to estop the government from showing, in this *de novo* litigation, that plaintiff has failed to establish an essential element of her claim – that she is disabled as defined by the acts.

Here, the record demonstrates that conscientious government employees were acting in good faith in responding as quickly as possible to plaintiff's evolving issues. See defendant's SJM at pp 4-8, 27-31. They received a letter from Dr. Presant on December 3, 1999, stating that in his medical opinion plaintiff should be accommodated by giving her a legal position. The Chief of the Divisions, Mr. Williams, had reviewed the letters concerning accommodation, and had significant questions concerning Dr. Presant's opinion. PSJM at Ex C:Williams Tr. at p. 264-266. He "asked for an outside opinion." *Id*. at p. 264; EEO Tr. Ex. at Bates #24-25 (Fulcher notes for 1/6: "Dave was unhappy with Dr. Presant's granting of reasonable accommodation since he may not have had sufficient input from a psychologist or psychiatrist. . . .Dave also said he wanted the letter to address the inconsistencies in Terri's doctor[']s letters since in one she said Terri could not work but in the later one (once Terri said she was experiencing financial problems) that she could work"). Despite Mr. Williams' concerns, the search for an accommodation was not interrupted. *Id.* at Bates # 26 (Fulcher notes for 1/18: "I called Paula and updated her and she said that Dave Williams is still waiting on letter from Julie asking that an independent evaluation be done on Terri. I said the RA [reasonable accommodation] issue could be worked independent of that and we should not delay it while we await the independent evaluation.") and see EEOTr:Fulcher at p. 428-438. The letter requesting an independent evaluation which Mr. Williams had asked for, was still in draft form on February 10, 2000. IF at

10

p. 290–292.  However, Mr. Fulcher had received a positive response from the IRS Virginia Office and on February 7 had made a tentative offer for an attorney position for plaintiff. Defendant's SJM at p. 30.  Mr. Fulcher gave plaintiff a formal offer on March 7, 2000, and plaintiff accepted the attorney position on March 16, 2000.  IF at p. 288-289.

It turns out that Mr. Williams' concerns were well placed.  Labor Relations had asked Dr. Presant to expedite his opinion.  On December 2, 1999,  Labor Relations responded to Dr. Presant's November 15, 1999 request for additional information concerning plaintiff.  In keeping with the promise to plaintiff to expedite the matter, Labor Relations told Dr. Presant "Due to the urgency of this case and some extenuating circumstances, I am requesting that you expedite this request and provide your recommendations on the subject case by close of business on Friday, December 3, 1999, or no later than Tuesday, December 7, 1999."  12/2/99 McIver lrt.

Dr. Presant responded the next day, December 3, with his recommendation.  IF at p. 280. Dr. Presant had obtained no independent evaluation of plaintiff's condition.  Dr. Presant is a consultant with the Department of Health and Human Services.  Presant Dec. at ¶ 1.  He does not specialize in psychiatry or psychology.  *Id*. at ¶2.  Prior to issuing his December 3, 1999 opinion letter, he "did not examine Ms. Bearman and was not given underlying medical or psychiatric information concerning Ms. Bearman such as medical charts or notes."   The information available to him were "Dr. Nowak's letters dated October 11 and October 21, 1999, and a letter, with attachments, from Ms. Bearman's attorneys dated October 22, 1999.  [He] also had approximately two telephone conversations with Dr. Nowak.  [He] accepted Dr. Nowak's letters at face value.  [He] did no independent assessment of Ms. Bearman's condition."  *Id*. at ¶4-6.

Since plaintiff in fact does not meet the requirements of the disability and rehabilitation

acts, it is against public policy that the government be estopped from its defense by the acts of its

well-intentioned agents.  Under plaintiff's theory,  even though not a "disabled" individual under

either act,  the Court should treat her as a disabled person and a) place her into a position without

competition, over other people who also are not disabled,  b) make the public pay her damages to

which she is not entitled, and c) make the public pay her attorney fees.  Plaintiff's complaint

would also have the Court make a finding that she was disabled and that the accommodation

requested was reasonable.  Therefore, although not disabled, plaintiff would in the future be able

to use the opinion to dictate to the agency additional "accommodations" whenever plaintiff should

make a determination that her self-esteem requires a change in assignment or other action.

Such an estoppel would be contrary to the intent of the Rehabilitation Act and the ADA:

Finally, we note that our interpretation of the language of the statute is supported
by policy considerations. The ADA serves the important function of ensuring that
people with disabilities are given the same opportunities and are able to enjoy the
same benefits as other Americans. The ADA mandates reasonable accommodation
of people with disabilities in order to put them on an even playing field with the
non-disabled; it does not authorize a preference for disabled people generally. *See
U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 . . .(2002). The interpretation advanced
by Felix and the EEOC would transform the ADA from an act that prohibits
discrimination into an act that requires treating people with disabilities better than
others who are not disabled but have the same impairment for which
accommodation is sought. We think that the ADA deliberately speaks in terms of
eliminating discrimination and thus do not interpret it so broadly as to require the
accommodation of impairments that do not limit major life activities whenever the
person with an impairment happens to also have a disability.

Adopting this principle would effectively eviscerate the statutory definition of a
disability as an impairment of a major life activity-a significant threshold for
seeking redress under the ADA. An ADA plaintiff who is not otherwise impaired
in a major life activity but suffers debilitating anxiety or stress from a particular job
could get to a jury merely by alleging that the job causes insomnia, difficulty
breathing, or some other set of disabling symptoms that can be characterized as a
syndrome. We decline to adopt such an expansive reading of the ADA that
frustrates its plain statutory meaning. *See Sutton v. United Air Lines, Inc.*, 527 U.S.

12

471, 492 . . .(1999) (inability to perform "a single, particular job" is not a substantial limitation upon working (quoting 29 C.F.R. § 1630.2(j)(3)(I))).

*Felix v. New York City Transit Authority*,  324 F.3d 102, 107 (2nd Cir. 2003).

Since  plaintiff is not "disabled," she has no right to the remedies she requests; thus there is no detriment to her.  On the issue of transfer to the Office of General Counsel, plaintiff has attempted  to use the Rehabilitation Act not as a shield against discrimination, but as a sword to get her the job of her preference.   To allow a person who is not disabled to do so, because government employees, going beyond what the Act requires, acted in good faith based on Dr. Presant's acceptance of Dr. Nowak's recommendation at face value, has nothing to do with preservation of  the integrity of the judicial system and the sanctity of sworn statements.  Our Circuit has "expressed a preference for the 'determination of cases on the basis of the true facts as they might be established ultimately.'" *Smith United Mine Workers of America 1974 Pension v. Pittston Co.,*  984 F.2d 469, 477 fn 12 (D.C.Cir.1993) (*citing  Konstantinidis [v. Chen*, 626 F.2d 933, 936-38 (D.C.Cir.1980)].   This case should be determined on the facts.

## NO RIGHT TO ASSIGNMENT TO GENERAL COUNSEL'S OFFICE

Even if plaintiff had been a qualified individual with a disability, the plaintiff had no right in December 1999-March 2000 to reassignment to a vacant attorney position in the Chief Counsel's Office.

At the times pertinent to this case, 29 C.F.R. § 1614.203 (g) provided :

When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate

that the reassignment would impose an undue hardship on the operation of the program. In the absence of a position at the same grade or level, an offer of reassignment to a vacant position at the highest available grade or level below the employee's current grade or level shall be required.

29 C.F.R. §1614.203 (g).   This C.F.R. was not amended until May 21, 2002. See 29 C.F.R. § 1614.203 (b).

Plaintiff contends that the 1992 amendment of the Rehabilitation Act, which incorporated the provisions of the Americans with  Disabilities Act ("ADA"),  changed the requirement that "an agency shall offer to reassign the individual to a funded vacant position **located in the same commuting area and serviced by the same appointing authority**."  Plaintiff claims that the limitation noted in bold above was deleted by the amendment.  PSJM at p. 18-23.  However, plaintiff has cited to no District Court or Circuit cases in support of her argument.

The plaintiff cites three District Court cases for the unremarkable proposition that the 1992 amendment became effective in 1992.  *Id.* at p. 20-22.  However,  none of those cases directly addressed the issue in question.  *Kemer v. Johnson,*  900 F.Supp. 677, 679-680 (S.D.N.Y.1995) involved rejection of a job application.   The validity of the reassignment limitations of the CFR was not an issue.  The pro se plaintiff had sued under the ADA.  The defendant  moved to dismiss on the "basis of the ADA's explicit exclusion of the federal government from coverage, and the fact that the Defendant is an agency of the federal government. *Id.*, 900 F.Supp. at 681.   The court construed the pro se complaint liberally and found that the plaintiff had alleged a violation of the Rehabilitation Act, which does apply to federal government employees, and noted that the requirements of the ADA had been incorporated into the Rehabilitation Act by the 1992 amendment.  *Id*.

14

The plaintiff in *Robinson v. Runyon,* 987 F.Supp. 620, 621 (N.D.Ohio 1997) was a mail carrier who sought to be reassigned to a clerk position. The issue in dispute was whether there were any vacant clerk positions. *Id*., 987 F.Supp at 622. There was no claim that the positions were not in the same appointing authority. The language from *Robinson* upon which plaintiff relies comes from the following paragraph:

> Before 1992, employers were not required to reassign employees to suitable positions under the Rehabilitation Act. However, Congress amended the Act to provide that the standards of the Americans with Disabilities Act (ADA), under which reassignment was an option, applied in the Rehabilitation Act context. See 29 U.S.C. 794(d). Under 29 C.F.R. § 1614.203(g), employers shall offer to reassign nonprobationary employees if those employees become unable to perform the essential functions of their jobs, unless such reassignment would cause the employer undue hardship. *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir.1996). The reassignment should be to an available position at the same level **and in the same commuting area as the prior position**. *Id.*

*Robinson v. Runyon*, 987 F.Supp. at 622. The case cited in *Robinson, Shiring v. Runyon,* similarly did not have any issues concerning application of "the same appointing authority" clause of the CFR. In *Shiring* the defendant, the Postal Service, argued that they had no obligation to reassign plaintiff because he could not carry out his essential functions as a mail carrier. *Shiring*, 90 F.3d at 831-832 . The court noted that before 1992, "[Employers] [were] not required to find another job for an employee who is not qualified for the job he or she is doing." *Id*. 90 F.3d at 831. After the 1992 amendment, the Rehabilitation Act was amended to incorporate the standards of the ADA. *Id.* at 831-832. The Court then stated :

> Pursuant to this amendment, the Code of Federal Regulations was amended effective October 31, 1992 to provide that employers shall offer to reassign nonprobationary employees if those employees become unable to perform the essential functions of their jobs. The reassignment should be to an already funded, vacant position **within the same commuting area**, and at the same grade or level. **29 C.F.R. § 1614.203(g).**

15

*Shiring*, 90 F.3d 827, 832 (emphasis added). Both *Robinson* and *Shiring* specifically quote the

**within the same commuting area** clause of the CFR. Thus, both cases are **contrary** to plaintiff's

argument that "After [October 29, 1992] the 'separate appointing authority' or 'separate

commuting area' limitations in an agency's obligation to find a reasonable accommodation have

been replaced . . ." PSJM at p. 22.

The third case cited by plaintiff was *Nighswander v. Henderson*, 172 F.Supp.2d 951, 963

n. 10 (N.D.Ohio 2001). However, note 10 only cites to *Robinson v. Runyon*, *supra,* and thus adds

nothing to advance plaintiff's argument.

The only cases which defendant has identified which address the specific issue of the

"separate commuting area" clause of the CFR, either explicitly or implicitly, have similarly

rejected plaintiff's position. *See Mitchell v. Crowell*, 975 F.Supp. 1440, 1442 fn 2

(N.D.Ala.1997) ("With respect to plaintiff's argument that the October 29, 1992 amendments to

the Rehabilitation Act incorporate the broader standards of the ADA, and thus, supersede any

limitations imposed upon plaintiff's transfer rights under 29 C.F.R. § 1614.203, the court is of the

opinion that defendants' reassignment obligations are defined by 29 C.F.R. § 1614.203(g)."); 

*Jacobs v. Henderson,* 2001 WL 34866606, *17 (M.D.Ala.2001), motion for reconsideration

denied by *Jacobs v. Potter.* 2005 WL 3690546, *1 (M.D.Ala.2005) (involving 1997-1998

activities and both describing appropriate standard as offer to reassign "a nonprobationary

employee . . . to a funded vacant position located in the same commuting area and serviced by the

same appointing authority . . . unless the agency can demonstrate that the reassignment would

impose an undue hardship on the operation of its program."); *Craig v. Potter,* 2003 WL

21349469, *7 (N.D.Ind.2003)( citing 29 C.F.R. § 1614.203(g) (1998) as the appropriate standard

16

for reasonable accommodation discrimination allegations of June 26, 1999, *id.* at *3 ); *Bennett v. Henderson,* 15 F.Supp.2d 1097, 1108 (D.Kan.,1998) (same for 1994-1995 allegations) *affirmed* 172 F.3d 62 (Table) (10th Cir. 1999).   In each of these cases, the "undue hardship" test was applied to the reassignment requirement as the requirement is defined in  29 C.F.R. § 1614.203(g).

Finally, plaintiff relies on 1999 Enforcement Guidelines issued by the EEOC which state that "The ADA contains no language limiting the obligation to reassign only to positions within an office, branch, agency, etc.  Rather the extent to which an employer must search for a vacant position will be an issue of undue hardship . . . . " PSJM at p. 22. (quoting Guideline).   The Supreme Court has

> held that the EEOC's interpretive guidelines do not receive *Chevron* deference. *See EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 257. . .(1991). Such interpretations are " 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 . . .(1944), but only to the extent that those interpretations have the 'power to persuade.' " *Christensen v. Harris County*, 529 U.S. 576, 587 . . .(2000).

*National R.R. Passenger Corp. v. Morgan*,  536 U.S. 101, 111 (2002).  However, no deference is warranted when, as in this case,  the regulation is not ambiguous:

> Seeking to overcome the regulation's obvious meaning, the United States asserts that the agency's opinion letter interpreting the regulation should be given deference under our decision in *Auer v. Robbins*, 519 U.S. 452. . . (1997). In *Auer*, we held that an agency's interpretation of its own regulation is entitled to deference. *Id.*, at 461, 117 S.Ct. 905. *See also Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 . . .(1945). But *Aue*r deference is warranted only when the language of the regulation is ambiguous. The regulation in this case, however, is not ambiguous-it is plainly permissive. To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation. Because the regulation is not ambiguous on the issue of compelled compensatory time, *Auer* deference is unwarranted.

*Christensen v. Harris County*,  529 U.S. 576, 588 (2000).  In this instance, the CFR  is in no

17

manner ambiguous.  It states: "an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, . . . unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of the program."   The EEOC Guidelines relied upon by plaintiff do not attempt to "interpret" the CFR; they attempt to **change** the CFR.   Plaintiff's argument is contrary to *Christensen* because it would "permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." *Id.*

The EEOC did not create new regulations until 2002.   Therefore, under the regulation in effect in 1999-2000, the defendant was not required to transfer plaintiff to a position outside of the appointing authority of the IRS.

### Defendant Did Not Violate the Act by Placing Plaintiff in a GS-12 Position with Pay Retention

If plaintiff had fallen within the protections of the Rehabilitation Act, she properly was offered a position at the GS-12 level with pay retention.  The Rehabilitation Act required  that

> In the absence of a position at the same grade or level, an offer of reassignment to a vacant position at the highest available grade or level below the employee's current grade or level shall be required.

29 C.F.R. §1614.203 (g).

Plaintiff has conceded that between December 3, 1999 and March 27, 2000, in the Washington, D.C. area,  there were no attorney positions open in the IRS at plaintiff's grade level and that there were no attorney positions open in the IRS.  Plaintiff's Statement of Material Facts not in Dispute at ¶11-12.  Therefore, plaintiff properly was offered the one GS 12 attorney position which Mr. Fulcher found was available.

18

**The Accommodation Requested Would Impose an Undue Hardship**

The ADA defines the term "discriminate" to include

not making reasonable accommodations **to the known physical or mental limitations** of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity

42 U.S.C. § 12112(b)(5)(A).

Doctor Nowak's letter of October 21, 1999 stated the reason for her recommendation --

that plaintiff's job be restructured to the full-time practice of law or alternatively a transfer to the

Chief Counsel's office – as follows:

The reason for this is that Ms. Bearman's **self esteem** is at a very low level in her current position.

IF at p. 61.   In discussing the self esteem issue, Dr. Nowak testified that she recommended that

plaintiff be transferred:

Because she is an intellectually active person.  Her work is a very important source of self-esteem.  Doing meaningful and good work, I mean in and of itself, that matters to her.  That work being meaningful to the people for whom she does it, getting some kind of positive feedback for it, is an enormously important part of what maintains her sense of self esteem.
She found the environment she was in to be demeaning and it created a catastrophic injury to her self esteem.

EEOTr:Nowak at p. 57.  Dr. Nowak  also testified

I became convinced that this was work-related and that it was connected to the fact that she is a quite intelligent, intellectually proud and intellectually smart person who found herself in a position in which a main project she had had been taken away from her and that she was doing incredibly boring and dull work.

*Id*. at p. 37.

However, Dr. Nowak admitted that plaintiff's lack of self-esteem is separate from

plaintiff's impairment of depression:

> Q.  People without depression can have an issue of self esteem if something happens to them?
> A.  Sure.
> Q.  Okay. So the loss of self-esteem –
> A.  Oh. in and of itself –
> Q.  is that in and of itself having to do with her mental issues, her depression?
> A.  No.
> Q.  It's separate from that?
> A.  It's separate from that.
> Q.  Okay.
> A.  A wound to the self regard might be seen as, again, triggering this biological cascade that leads to a major depression, but no, I don't think it's like inherent to the problem.

Nowak 2007 Depo. at p. 54-55.

Making an accommodation on the basis of plaintiff's self esteem would impose an impractical obligation on defendant and would impose an undue hardship not only on defendant's operation, but also the operations of any employer.  If defendant had to accommodate to plaintiff's "self esteem," it would, among other things, have an obligation to insure that she not be given what to her was "boring or dull;" the defendant would have to insure that the assignments plaintiff got were "meaningful to her;" the defendant would have to insure that the assignments rose to plaintiff's "intellectual" requirements; the defendant would have to insure that plaintiff's supervisors gave her "positive feedback."  This would impose an enormous and unwarranted burden on defendant, and would place the Court in the position of dictating what particular work assignments are required.  The requested accommodation is unreasonable as a matter of law.  *See Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 581 (3rd Cir.1998)

> Based on the foregoing, we conclude that Gaul has failed to satisfy his burden for three reasons. First, Gaul's proposed accommodation would impose a wholly impractical obligation on AT & T or any employer. Indeed, AT & T could never

achieve more than temporary compliance because compliance would depend entirely on Gaul's stress level at any given moment. This, in turn, would depend on an infinite number of variables, few of which AT & T controls. Moreover, the term "prolonged and inordinate stress" is not only subject to constant change, it is also subject to tremendous abuse. The only certainty for AT & T would be its obligation to transfer Gaul to another department whenever he becomes "stressed out" by a coworker or supervisor. It is difficult to imagine a more amorphous "standard" to impose on an employer.

Second, Gaul's proposed accommodation would also impose extraordinary administrative burdens on AT & T. In order to reduce Gaul's exposure to coworkers who cause him prolonged and inordinate stress, AT & T supervisors would have to consider, among other things, Gaul's stress level whenever assigning projects to workers or teams, changing work locations, or planning social events. Such considerations would require far too much oversight and are simply not required under law.

Third, by asking to be transferred away from individuals who cause him prolonged and inordinate stress, Gaul is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, "[n]othing in the ADA allows this shift in responsibility." *Weiler*, 101 F.3d at 526. "Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons." *Wernick v. Federal Reserve Bank of N.Y.*, 91 F.3d 379, 384 (2d Cir.1996).

In sum, Gaul does not meet his burden under *Shiring* because his proposed accommodation was unreasonable as a matter of law. Therefore, Gaul is not a "qualified individual" under the ADA.

*Id.; see Thompson v. Rice,* 422 F.Supp.2d 158, 177 (D.D.C.2006)(*"*Moreover, because a request to alleviate stress and anxiety caused by an employee's working conditions is generally unreasonable, the Court would dismiss the 2001 reasonable accommodation claim on this ground alone. *See Gaul v. Lucent Technologies*, 134 F.3d 576, 581 (3d Cir.1998); *Newby v. Whitman*, 340 F.Supp.2d 637, 657-58 (M.D.N.C.2004)".)

Therefore, the requested accommodation would cause an undue burden on defendant.

Plaintiff Bergman is not a "qualified individual with a disability" under the ADA, and defendant was not required to accommodate her as requested.

### Plaintiff Is Not Entitled to Summary Judgment

For the reasons set forth above and in defendant's motion for summary judgment, plaintiff has failed to meet her burden of showing that she was "disabled" or a "qualified individual with a disability, and she has failed to establish that defendant discriminated against her under the Rehabilitation Act and the ADA.

### The Defendant has not Damaged Plaintiff

Plaintiff has characterized herself as a highly qualified tax attorney who also became a member of the Patent Bar in about 1997.  She also has a Master's Degree in Biotechnology.  PSJM Ex A at ¶ 14.  Prior to October 1999, she unsuccessfully had applied for jobs in the patent field. Bergman 2007 Depo at p. 56.  She also had submitted two applications to the Chief Counsel's Office for a position.  *Id.*  One position was only open to current Chief Counsel employees, and plaintiff's application also was not considered for another position.  *Id.*

Plaintiff became frustrated at not getting job offers and was unhappy in her then current position.  See Nowak  notes at entry dated 10/7/99.   Plaintiff therefore decided to try to get the job she wanted -- with Chief Counsel --  in a non-competitive manner.

> She feels she needs a change in work-- that her being bored with no challenging work, triggers self esteem issues and depression -- she wants to try to get a transfer on the basis of a medical accommodation: I will support this if a valid legal argument can be made.

Nowak progress note dated 10/11/99; Nowak 2007 depo at p. 52.

Plaintiff requested that her job be restructured to the full time practice of law[1] or reassignment to the Chief Counsel's Office.  Under the CFR in effect at that time, plaintiff had no right to a reassignment to the Chief Counsel's Office.  There were no attorney positions open in the IRS in the metropolitan area at plaintiff's grade level. PMatFacts at ¶19-20.  Plaintiff's supervisor looked for and found a vacant attorney position outside her commuting area and offered it to her.  Since the position was at a lower grade, plaintiff was offered pay retention.  Plaintiff accepted the job.  Plaintiff got all that the law required be given if plaintiff had been a qualified individual with a disability and if her request had been reasonable.  However, plaintiff had no right to any of the protections of the Rehabilitation Act, and she had no right to a reassignment to the Office of Chief Counsel.  Indeed, she had no right to a reassignment to an attorney job within IRS.

Plaintiff through her attorney and doctor told the IRS  that her self-esteem required  that she be put into an attorney job.  The IRS offered her the first vacant attorney job they were able to identify within the IRS and plaintiff accepted.

The ancient wisdom says, be careful what you ask for . . . .

---

[1]  Plaintiff admits that it was not feasible to restructure her position.  Plaintiff's Statement of Material Facts at ¶ 11.

Conclusion

Plaintiff has not met her burden of showing that she was discriminated against under the provisions of the Rehabilitation Act.  Plaintiff's Partial Motion for Summary Judgment should be denied, and defendant's Motion for Summary Judgment should be granted.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970