**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| TESSA E. BERGMAN | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. <u>06-0303 (GK)</u> |
| v. | : | |
| | : | |
| HENRY M. PAULSON, JR. | : | |
| SECRETARY OF THE TREASURY | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN REPLY TO DEFENDANT'S MEMORANDUM
OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Tessa E. Bergman ("Plaintiff") submits her Memorandum of Points and Authorities in Reply to defendant Henry M. Paulson, Jr., Secretary of the Treasury ("Defendant"), Memorandum of Points and Authorities in Opposition to Defendant's Motion for Partial Summary Judgment ("Defendant's Opposition"), and states as follows:

<u>Preliminary Argument</u>.

Plaintiff alleged in her Statement of Material Facts as to Which There is No Genuine Issue ("Plaintiff's SOMF"), with supporting record citations, sufficient facts to entitle Plaintiff to partial summary judgment. Defendant's Opposition asserts that Plaintiff is not a "disabled individual" and not a qualified individual with a disability. Defendant had the obligation, in response, to come forward and identify specific disputes with specific record references in opposition to Plaintiff's SOMF. *Robertson v. American Airlines, Inc.,* 239 F. Supp.2d 5, 9 (D.D.C. 2002). With few exceptions, Defendant did not identify specific contested facts and, in

response to Plaintiff's central allegation in SOMF ¶ 11 that Plaintiff was a qualified individual

with a disability under the Act, Defendant incorporates by reference 20 pages of argument mixed

with fact in Defendant's Memorandum of Points and Authorities in Support of Defendant's

Motion for Summary Judgment ("Defendant's Memorandum") and three pages of Defendant's

Opposition.  Defendant's other responses to Plaintiff's SOMF are similar.[1]   While Plaintiff does

not wish to be hyper-technical, the wholesale incorporation of all facts included in 20 pages of

another brief is inappropriate.  As the court observed in *Robertson*:

> The Rule 56.1 procedure 'isolates the facts that the parties assert are material,
> distinguishes disputed from undisputed facts, and identifies the pertinent parts of
> the record.'  Thanks to Rule 56.1, the district court is not 'obligated to sift through
> hundreds of pages of depositions, affidavits, and interrogatories in order to make
> [an] analysis and determination of what may, or may not, be a genuine issue of
> material disputed fact.' Instead, the rule 'places the burden on the parties and their
> counsel, who are most familiar with the litigation and the record, to crystallize for
> the district court the material facts and relevant portions of the record.'
>
> Although the rule's directive to movants varies slightly from the rule's directive
> to non-movants, both the movant and the non-movant bear the obligation of
> clarifying relevant issues for the district court.  LCvR 56.1.  As our court of
> appeals has stated, the purposes of the rule 'clearly are not served when one party,
> particularly the moving party, fails in his statement to specify the material facts
> upon which he relies.'
>
> Because the rule helps the district court maintain docket control and decide
> motions for summary judgment efficiently, the D.C. Circuit has repeatedly upheld
> district court rulings that hold parties to strict compliance with this rule.

*Id,* pp. 7-9 (citations omitted).  Defendant has provided no specific universe of fact it relies on in

Defendant's Opposition as to certain important issues, and then incorporates the wholesale

Defendant's Memorandum, which also contains no specification of fact as required by Local

Rule 56.1.  As a result, as to several issues, including the central issue of whether Plaintiff was a

---

[1] Defendant responded to Plaintiff's SOMF ¶ 7, 8, 11, with a reference to Defendant's
Memorandum pp. 13-33;  responded to Plaintiff's SOMF 11 with a reference to pp. 17-20; and
responded to Plaintiff's SOMF ¶¶13, 14 with references to pp. 2-8.

qualified individual with a disability, Defendant has submitted no contested material facts. Defendant has simply incorporated large volumes of record citations from Defendant's Memorandum into Defendant's Opposition without ever providing a clear statement of which facts are contested with references to record citations.   This effectively denies Plaintiff the opportunity afforded by Rule 56.1 to respond to a specific universe of alleged contested facts relating to each ground asserted in opposition to partial summary judgment.

Plaintiff respectfully requests that Defendant's motion for summary judgment be denied for failure to comply with the Local Rules of this Court.  If the Court denies this request, Plaintiff has no option but to incorporate pages 14 through 23 of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and all evidence cited therein.

    I.    <u>Plaintiff Was a Qualified Individual With a Disability Entitled to a Reasonable Accommodation Under the Act</u>.

On December 3, 1999, Dr. Presant, determined that Plaintiff had a disability, acute depression, that required an accommodation under the Act.  Exh. C, HT (Sottile), pp. 488-89; Exh. A, ¶ 10, Attachment 1.     The accommodation requested by Plaintiff and recommended by Dr. Presant was quite modest--that Plaintiff be assigned substantive work commensurate with her intellect and abilities or that she be assigned to a position where she would have substantive work to do.  Thus, Dr. Presant recommended that Plaintiff's position be restructured to include legal work or that she be transferred to a position that involved legal work.  David Williams, the Chief of the office that employed Plaintiff, testified that Dr. Presant's decision was "dispositive" and that, once the decision was made, "we have to follow it, and we did."  Exh. C, HT (Williams), p. 265.  Mr. Williams also testified that, "When Dr. Presant, as the agency third party validator, said this is a reasonable accommodation case, that is the end of the story."  Exh. C, HT

(Williams), p. 266.  The official appointed as Defendant's designee under Rule 30(b)(6) to testify as to whether Plaintiff was a qualified individual with a disability, Barry Fulcher, testified that Dr. Presant's December 3rd opinion was the "final say-so," Exh. C, HT (Fulcher), at 427, and that, after Dr. Presant made his determination, Defendant was "in fact required to find a reasonable accommodation" for Plaintiff under the Act.   Exh. B, pp. 11-12; 123-24.  Fulcher himself stated no less than <u>six</u> times in his deposition that, based on Dr. Presant's determination, Defendant was obligated to find a new job involving legal work for Plaintiff in response to her request for a reasonable accommodation under the Act.  Exh. B, pp. 11-12, 56, 72, 73, 74, 75, 123-124.    Fulcher stated repeatedly that he advised IRS officials and the Associate Chief Counsel that it was a requirement to take Ms. Bergman if there was a vacancy available and that OCC "must place her in any open position they have." Exh. B, pp. 72.   The letter advising the Associate Chief Counsel that they "must place her in any open position they have" was actually reviewed by the GLS branch of OCC before it was sent to the Associate Chief Counsel.  Exh. B, p. 75.

Plaintiff argued in her motion for summary judgment that Defendant must be judicially estopped by the position it has taken, and prevailed on in former litigation, that Plaintiff was a qualified individual with a disability.  This Circuit does recognize that where, as here, a party prevailed at the administrative level by asserting a position, it may be judicially estopped from asserting a contrary position in subsequent proceedings.  *Smith v. District of Columbia,* 295 F. Supp. 2d 53, 56 (DDC 2003).  Plaintiff acknowledges that judicial estoppel is sparingly applied against the government, except in the most extreme circumstances involving misconduct. *International Union v. Clark,* 2006 U.S. Dist. LEXIS 64449 at 42.  While the change in position

Defendant takes in this case clearly is "extreme," Plaintiff does not allege misconduct by the government.

This Circuit does, however, recognize that a party may not contradict its own sworn testimony at deposition and at trial, as follows:

> Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony. See, e.g., *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Farrell v. Automobile Club of Michigan*, 870 F.2d 1129, 1131-32 (6th Cir. 1989); *Adelman-Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517, 520-21 (7th Cir. 1988); *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir. 1988) (citing cases); *Van T. Junkins and Associates v. United States Industries*, 736 F.2d 656, 657 (11th Cir. 1984); *Radobenko v. Automated Equipment* [**29] *Corp.*, 520 F.2d 540, 544 (9th Cir. 1975); *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Kizas v. Webster*, 492 F. Supp. 1135, 1147 n.42 (D.D.C. 1980), *rev'd. on other grounds*, 227 U.S. App. D.C. 327, 707 F.2d 524 (D.C. Cir. 1983). "The objectives of summary judgment would be seriously impaired if the district court were not free to disregard [the later testimony]." *Martin*, 851 F.2d at 706. Some courts have extended the doctrine to cover even a non-party witness brought forward to advance the party's case, see, e.g., *Adelman-Tremblay*, 859 F.2d at 521, but where as here the affiant is the sole shareholder and president of the plaintiff corporation, we need not reach that extension. The upshot is that the prior sworn statement will receive controlling weight unless the shifting party can offer persuasive reasons for believing the supposed correction. E.g., *Farrell*, 870 F.2d at 1131-32.

*Pyramid Securities Limited, Appellant v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991); see also, *Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw, Inc.*, 452 F. Supp. 2d 1, 14 (DDC 2006). In this case, Defendant offered the testimony of a senior IRS official who testified repeatedly that Dr. Presant's decision was "dispositive," obligatory and "the end of the story." Exh. C, HT (Williams), p. 265- 266. Defendant's Rule 30(b)(6) designee stated Defendant's official position when he testified that Dr. Presant's December 3rd opinion was the "final say-so" and multiple other times that Defendant was required to find a reasonable accommodation for Plaintiff under the Act. Exh. C, HT (Fulcher); Exh. B, pp. 11-12; 123-124.

1.    There Are No Contested Facts In Opposition to Summary Judgment.

a.  <u>Statement of Facts</u>.

Plaintiff's expert, Dr. Nowak, testified that Plaintiff is disabled from performing jobs that involve non-substantive work, such as clerical work.  Plaintiff submitted an opinion of Dr. Nowak pursuant to Rule 26(a)(2) that Plaintiff's major depressive episode "was caused by work place circumstances, including the lack of any substantive work."  Exh. __, p. 1.  She offered the opinion that Ms. Bergman required a job that involved  "substantive work commensurate with her intellectual abilities."  Exh. __, p. 2.  At the administrative hearing in this case, Dr. Nowak testified that Plaintiff was fully capable of working, but that her disability required that she be placed in a position involving substantive work commensurate with her intellect and abilities.  Exh. C, HT (Nowak), pp. 36-43; 46-48.  In her 2007 deposition, Dr. Nowak described Plaintiff as someone who has the type of depression that makes her "very vulnerable to develop . . . moderate major depression."  Exh. C, HT (Nowak), p. 49.  She described Plaintiff's job as follows:  "she was expected to do really clerical level work," and this is the very type of work that is likely to cause Plaintiff's benign, chronic depression to become acute depression.  Exh. C, HT (Nowak), p. 66.

Dr. Nowak indicates that Plaintiff has suffered with depression all of her life and is always at risk of her generally benign depression becoming acute depression.  Ms. Bergman, like many people with chronic depression, is highly intelligent and motivated by personal intellectual accomplishment.   Any employment position that involves only duties that are clerical and secretarial in nature will ultimately cause her to become acutely depressed.   In the long run, these work conditions are simply incompatible with Ms. Bergman's depressive disability, ongoing depression.  The fact that her position as Management Program Analyst required her to

perform only clerical tasks in the long term to the exclusion of substantive work, led directly and proximately to her becoming disabled with acute depression in 1999.

Plaintiff is disabled at all times from engaging in any job that involves primarily clerical duties, because regular clerical and secretarial work will, in the long term, cause her to experience acute depression. This is borne out by the fact that, although Ms. Bergman was still suffering from acute depression in March 2000, she was fully capable of performing as a tax attorney when she was transferred to a position in the IRS field office as a tax attorney. Thus, although her depression remained, it did not interfere at all with her performing duties as a tax lawyer.

While Defendant has suggested that Plaintiff was able to work in October 1999, the evidence is quite the opposite. Dr. Nowak actually testified that as of October 11, 1999 Plaintiff "was falling apart in front of me." [cite] Further, while Defendant suggests that Plaintiff was not disabled on October 22, 1999, when she filed a request for a reasonable accommodation under the Act, Dr. Nowak states as follows:

> *She was not able to work during that period of time*, and she did need some support from friends and family. They either invited her to dinner or cooked for her, or helped her to do various things around the house.

Nowak depo, p. 71 (emphasis added).

Notwithstanding Defendant's unsupported arguments to the contrary, the only evidence was that Plaintiff was unable to work when she requested the reasonable accommodation under the Act on October 22, 1999.[2] Defendant's own expert, Dr. Allen, examined Plaintiff, reviewed all of her medical records and testified unequivocally as follows:

---

[2] As explained by Dr. Nowak, when she indicated that Plaintiff could not work in October 1999, she meant that Plaintiff could not work in her Program Analyst position without the reasonable accommodation of a job restructuring.

By Mr. Quinn:  You do not question Dr. Nowak's opinions that Ms. Bergman was unable to work because of her depression in the October December [1999] time frame?

By Dr. Allen:  That is correct.

Allen depo, p. 9.

While Defendant's memorandum of points and authorities suggests that Dr. Nowak only offered summary opinions that Plaintiff was disabled from work, in fact Dr. Nowak offered specific and detailed testimony about Plaintiff's impairments.  Dr. Nowak testified repeatedly that Plaintiff's cognitive abilities were impaired by her depression.  Dr. Nowak described Ms. Bergman's cognitive impairment as if she had "cotton wool in her brain . . .  it's like thinking through molasses."  Dr. Nowak described the effect of Ms. Bergman's cognitive impairment as follows:

[I]t is very difficult [for her] to plan work organization and then to be able to follow through with the work organization. It's difficult to – we call it executive functioning, plan tasks, think through and actually act.  It's actually subtle, high integrative, cognitive dysfunction.

Nowak depo, pp. 90-91.

Three experts, including two for the defense, agreed that Plaintiff was disabled from work in October 1999 and thereafter as a result of acute depression.  However, Plaintiff's depression is chronic and ongoing.  While it may be benign if managed properly, Plaintiff's disability disables her *at all times* from performing job duties that are primarily clerical in nature. Plaintiff is disabled at all times from performing those job duties because she will inevitably become sick if she performs primarily clerical duties over the long term.  The only evidence in this case is that Plaintiff is unable to perform the broad category of jobs involving primarily clerical work.

Finally, Defendant tries to trivialize Dr. Nowak's opinions by arguing that Plaintiff is asking for an accommodation to bolster her self-esteem or to escape the "boredom" of her current position. Dr. Nowak's office notes do mention that Plaintiff's having a job primarily involving clerical duties "triggered self-esteem issues and depression." Nowak depo, p. 52. However, a reference to self-esteem is not unusual in psychiatric records. Dr. Nowak made it very clear in her deposition testimony that she did not regard Plaintiff as disabled because she suffered a loss of self-esteem, and her observation that Plaintiff had suffered a loss of "self-esteem" had nothing to do with Plaintiff's depression. Nowak depo, p. 55. Thus, when Dr. Nowak gave the unequivocal opinion that Plaintiff was disabled from performing a job that involved primarily clerical duties, the opinion was that Plaintiff was disabled due to depression, not because of damaged "self-esteem" as Defendant suggests. Dr. Nowak also made it clear in her deposition that when she referred to Plaintiff as being depressed from having "boring" work to do, the word "boring" was merely a description of clerical work. Thus, Dr. Nowak explained clearly that when she said Plaintiff had "boring" work to do, she used that term to mean "clerical" work that "was not commensurate with her job description." Tr. 68.

      b.    <u>Plaintiff Is A Qualified Individual With A Disability.</u>

A plaintiff presents a *prima facie* case of discrimination under the ADA by demonstrating: (1) that she is a *disabled* person within the meaning of the ADA; (2) that with respect to such disability, she is a *qualified individual with a disability* under the ADA; and (3) that she has suffered an adverse employment action as a result of discrimination. *Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 580 (3rd Cir. 1998).

      *2.*    <u>Plaintiff Is an Individual With an ADA Disability.</u>

Defendant' argues that Plaintiff is not an individual with a disability but does not support that argument with reference to any specific material facts. The Act defines an individual with a disability as a person with "a physical or mental impairment, which substantially limits one or more of such person's major life activities." 29 U.S.C. 705(20)(b). A major life activity includes functions such as caring for one self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and *working*. *Stein v. Ashcroft,* 284 F.3d 721, 724 (7th Cir. 2002) (emphasis added). This is supported by the following:

(1)     The testimony and opinions of Drs. Nowak, Presant and Allen which establish that Plaintiff did have a disability that precluded her from performing her Program Analyst job without a reasonable accommodation.

(2)     The testimony of Drs. Nowak, Presant and Allen that plaintiff was precluded from performing the major life function of working and the testimony of Dr. Nowak that Plaintiff was substantially impaired from performing other routine functions such as cooking and cleaning.

(3)     The testimony of Dr. Nowak that Plaintiff suffered from a substantial impairment of her executive and organizational cognitive abilities, which Dr. Nowak describes as similar to thinking through molasses. the "ability to perform cognitive functions on the level of an average person" constitutes a major life activity. *Battle v. UPS***,** 438 F.3d 856 , 862 (8th cir 2006)**,** quoting *Brown v. Lester E. Cox Med. Ctrs.*, 286 F.3d 1040, 1045 (8th Cir. 2002). thinking and concentrating qualify as "major life activities" under the ADA. *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999). Specifically, having depression that substantially limits a person's "ability to think and concentrate" as compared to the average person in the general population is a disability that limits a major life function. *Battle,* 438 F.3d at 862.

Defendant also argues that Plaintiff only presented evidence that she is disabled from her particular job and that she is not disabled from a broad category of jobs.  [cite]  Stated otherwise, defendant argues that Plaintiff is simply dissatisfied with her job, is seeking a more professional position and is trying to escape the stress of her job.  The only evidence, however, is that Plaintiff is disabled from a range of jobs, not just her particular job.

Dr. Nowak, testified that Plaintiff is disabled from performing jobs that involve non-substantive work, such as clerical work.  Dr. Nowak testified that Plaintiff was fully capable of working, but that her disability required that she be placed in a position involving substantive work commensurate with her intellect and abilities.  Exh. C, HT (Nowak), pp. 36-43; 46-48.

Dr. Nowak described Plaintiff as someone who has the type of depression that makes her "very vulnerable to develop . . . moderate major depression."  Exh. C, HT (Nowak), p. 49.  She testified that even when her depression is in a mild, chronic phase, Plaintiff will suffer an acute relapse if she is working in the long term at primarily clerical tasks.  Exh. C, HT (Nowak), p. 66.

Dr. Nowak analogized Plaintiff's condition to a worker with a benign lower back problem.  That worker might need to have a job that involved a combination of sitting and standing, but would be disabled from working at a job that required continuous standing or heavy lifting.  If the individual performed such a job in the long run, he would likely injure his back and become disabled.  So, too, is Plaintiff disabled from performing a job that involves purely clerical work because, in the long term, such work will inevitably lead to an acute depression.

3. <u>Plaintiff Is A Qualified Individual With A Disability Under the Act</u>.

A two-part test is used to determine whether a person is a "qualified individual with a disability" under the Act.  29 C.F.R. 1630 App. at 353-54.  First, a court must consider whether "the individual satisfies the prerequisites of the position, such as possessing the appropriate

educational background, employment experience and skills." *Id*. at 353.  Defendant concedes this point.[3]  Second, the court must consider "whether or not the individual can perform the essential functions of the position *held* or *desired*, *with* or *without* an accommodation."  *Id*. at 353-54.  Defendant apparently concedes this issue in its SOMF by including the following quotation from Dr. Nowak:

> I believe she [Plaintiff] could function at her [then current] job and return to work if an accommodation is made.  The accommodation is a job restructuring so that the functions of her position . . . . include the full time practice of law.. . .  If this is not possible in her current position, I would recommend a transfer to the Chief Counsel's office where [Plaintiff] worked for over three years and received a certificate of merit.

Defendant's SOMF in Support of Summary Judgment, ¶ 2.  Thus, Defendant's undisputed facts are:  (1) that Plaintiff could perform the *position held* (Program Analyst) *with* an accommodation if the job were restructured to include substantive legal work; and (2) that Plaintiff could perform the *position desired* at OCC *without* any accommodation.  Defendant's own statement of material facts not in dispute makes a *prima facie* case that Plaintiff meets the statutory test of a qualified individual with a disability.

In addition to the foregoing concession in Defendant's SOMF, and in addition to the redundant testimony at the administrative level, the only expert testimony in this case also shows that Plaintiff was a qualified individual with a disability.  Dr. Nowak offered the opinion, to a reasonable degree of medical certainty, that Plaintiff was fully capable of performing the job she then held if it were restructured to include substantive legal work and that she could perform another position if she were reassigned to a position where she would have substantive work to

---

[3] Defendant concedes that Plaintiff has the necessary education and skills and was otherwise qualified for the OCC positions that were open and vacant during the relevant time period. (Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment, Statement of Genuine Issues, ¶ __)

do consistent with her experience and abilities.  Exh. C, HT (Nowak), pp. 40-41.   Dr. Presant, also retained by Defendant, issued an opinion in December 1999 that  Plaintiff had a disability that required a work reassignment to a position involving full-time legal work.  Exh. C, HT (Fulcher), pp. 352-54; (Sottile), pp. 488-89; Exh. B, pp. 11-12, 123-24; Exh. A, Attachment 1. In rendering this opinion, Dr. Presant was provided unrestricted access to Plaintiff's medical records and agreed with Dr. Nowak's opinions.[4]

The only medical evidence in this case, including Defendant's own statement of material facts as to which there is no genuine issue, establish that Plaintiff is a qualified individual with a disability under the Act.

4.    <u>Plaintiff Suffered Adverse Employment Action</u>.

It is conceded in this case, that Plaintiff was fully qualified for the open positions at OCC in Washington, D.C., at Plaintiff's grade level and that she was instead appointed to a position two grades lower in an IRS field office.[5]  Defendant did not claim that transferring Plaintiff to OCC would cause any undue hardship and in fact admitted in response to interrogatories requesting every reason why Plaintiff was not reassigned to OCC, Defendant stated that the "only" reason it did not transfer Plaintiff to OCC was that Defendant did not have to transfer an IRS employee to OCC  because OCC and IRS were "different appointing authorities."  Plaintiff's SOMF ¶ 34, admitted, Exh. F.  Thus, this issue turns on whether the "undue hardship" standard set forth in 29 C.F.R. 1630.2(o) or the "same appointing authority" criteria of 29 C.F.R.

---

[4] Exh. E, Nowak Aff., ¶¶ 4-5.  While defendant submits an affidavit of Dr. Presant stating that he relied on two letters written by Dr. Nowak and two telephone conversations with her, Defendant does not deny that Dr. Presant was offered access to Plaintiff's medical records or that he agreed with Dr. Nowak's opinions.

[5] Plaintiff's SOMF ¶ 17, admitted; Plaintiff's SOMF ¶ 18, admitted;  Plaintiff's SOMF ¶ 22, admitted; Plaintiff's SOMF ¶ 32, admitted; Plaintiff's SOMF ¶ 37, admitted; Plaintiff's SOMF ¶ 38, admitted.

1614.203(g) applies to define Defendant's obligation to reassign Plaintiff in the reasonable accommodation process.

     5.   <u>1992 Amendments to the Act Eliminated the Separate Appointing Authority Distinction</u>.

Under the pre-1992 Act, a federal agency was only required to appoint an employee to a position in the "same appointing authority" when searching for a reasonable accommodation under the Act.  Congress amended the Act to extend the broader protections of the Americans with Disabilities Act of 1990 (hereinafter "ADA") (Pub. L. 101-136*)* to employees of federal agencies through enactment of the 1992 Amendments.   The 1992 amendment to the Rehabilitation Act provides:

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.

 In amending the Act in 1992, Congress directed that  the *standards applied* under 42 U.S.C. 12111 (the ADA standards) *shall be the standards applied* to all reasonable accommodation claims by federal employees under the Act.  At the time, and at all times thereafter, the "standards applied under . . .  42 U.S.C. 12111" were and are the regulations promulgated under 42 U.S.C. 12111 set forth in 29 C.F.R. 1630.2.  Those regulations limit the scope of the search for a reasonable accommodation only to the extent that the government agency can establish that a job transfer involves "undue hardship."  29 C.F.R. 1630.2(o).

Plaintiff contends that the standards applied under 42 U.S.C. 12111 can only mean the regulations promulgated under 42 U.S.C. 12111 and published in 29 C.F.R. 1630.2(o) applied in October 1992 when the Act was amended and in 1999 at the time Plaintiff's claims arose.  If

there is any question whether the statutory language of the 1992 amendment stating that the "standards applied under 42 U.S.C. 12111 shall apply" means "apply now," it is very clear from the legislative history of the 1992 Act when Congress specifically stated its intent that the law was effective immediately.  The legislative history to the 1992 amendment Act specifically states that the law is to be "effective on enactment" (*i.e.*, on October 29, 1992).  See, 29 U.S.C. 791(g), History and Notes; 29 U.S.C. 701, History and Notes, setting forth the effective date of the 1992 amendments.  Also see,  *Kemer v. Johnson,* 900 F. Supp. 677, 681, n.6 (S.D.N.Y. 1995), stating that the effective date of the 1992 amendments to the Rehabilitation Act was October 29, 1992, and that all actions arising after that date are subject to the 1992 amendments.

Defendant argues that the language of the 1992 amendments to the Act stating that the "*standards applied* under 42 U.S.C. 12111 (the ADA standards) *shall be the standards applied"* under the Rehabilitation Act means that nothing changed and that the Rehabilitation Act standards continued to apply to reasonable accommodation cases for the next 10 years.  Defendant's argument here is that the 1992 amendments to the Act did not become effective until June 2002--10 years after the Act was amended--because the EEOC did not publish regulations implementing the 1992 Act until 2002.  This argument is not only illogical, but it is also contrary to the clear statutory language and legislative history of the 1992 amendments to the Act.

Defendant's arguments are particularly strained in the context of this statutory amendment, because EEOC made it clear that the ADA Regulations set forth in 29 C.F.R. 1630(o) applied to Rehabilitation Act cases after the 1992 amendments were signed into law.  To explain the history further, EEOC first published Rehabilitation Act Regulations in April 1992, just a few months before the entire Act was amended in October 1992.  See, 57 FR 12646, Apr. 10, 1992.  The April 1992 regulations contain the language that Defendant relies on for its

15

argument that the search for a reasonable accommodation is limited to jobs available at "the same appointing authority" (29 C.F.T. 1614.203(g)) while the ADA regulations in 29 C.F.R. 1630.2(o) do not contain the "same appointing authority" limitation and only limit the search for a reasonable accommodation where an employer can establish "undue hardship."  Rather than amend their newly published Rehabilitation Act regulations to conform with the ADA regulations, EEOC merely issued guidelines directing that the ADA regulations should be utilized and, specifically, that the "same appointing authority" limitation should no longer be utilized to determine the scope of a reasonable accommodation search.  Thus, instead of withdrawing its regulations, EEO, after some delay, issued a guidance memorandum as to why the regulations at 29 C.F.R. 1614.203(g) were no longer applicable and instructing the public to instead apply the ADA standards of 29 C.F.R. 1630.2(o), as follows:

> … The Rehabilitation Act regulations governing reassignment of federal employees with disabilities, which were promulgated several months prior to the enactment of the Rehabilitation Act Amendment, differ in several respects from the ADA's requirements. <u>See</u>, 29 C.F.R. 1614.203(g) (1997). **For non-discrimination purposes, federal agencies must follow the ADA standards.** [emphasis added]
> <u>Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act</u>, *Number 915.001, March 1, 1999 (Enforcement Guidelines)* footnote 71.

The 1999 *Enforcement Guidance,* at Question 27, further states:

> Is an employer's obligation to offer reassignment to a vacant position **limited to those vacancies within an employee's office, branch, agency, department, facility, personnel system** (if the employer has more than a single personnel system) **or geographical area?** (emphasis added)

> No.  This is true even if the employer has a policy prohibiting transfers from one office, branch, agency, department, facility, personnel system, or geographical area to another.  The ADA contains no language limiting the obligation to reassign only to positions within an office, branch, agency, etc.  Rather the extent to which an employer must search for a vacant position will be an issue of undue hardship….

EEOC cases also make it clear that after the 1992 amendments became law (*i.e.*, in October 1992), the ADA regulations governed the scope of a search for a reasonable accommodation under the Rehabilitation Act.  Thus, in *Flowers v. Henderson,* 1999 WL 767730 (EEOC), n.5, Defendant's argument that the pre-1992 "same appointing authority" language applied after the law was signed in 1992, was squarely rejected, as follows:

> Pursuant to 29 C.F.R. 1614.203(g), the agency's reassignment obligation is limited to any 'funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level.'  In this regard, the agency is advised, however, that under the Americans with Disabilities Act (ADA), and in accordance with the Commission's March 1, 1999, policy guidance on reasonable accommodation, the employer's obligation to offer reassignment to a vacant position **is not so limited** [emphasis added].  The Commission's guidance on reasonable accommodation, which clearly sets forth the ADA requirements made applicable to Rehabilitation Act cases pursuant to the October 29, 1992 amendments to the Rehabilitation Act, observes that the ADA contains no language limiting the obligation to reassign only to positions within a particular office, branch, etc., but advises that 'rather, the extent to which an employer must search for a vacant position will be an issue of undue hardship….'

The Rehabilitation Act regulations were not amended until 2002, 10 years after the Rehabilitation Act was amended in October 1992.   When the EEOC finally proposed the regulations in 2000, it stated in a Notice of Proposed Rulemaking that the ADA standards concerning "undue hardship" had been effective since 1992, as follows:

> For the federal employer, the most notable change resulting from the 1992 Amendments is that reassignment is now treated as a reasonable accommodation pursuant to express language in the ADA. 42 U.S.C. 12111(9)(B). An employer's duty to provide reassignment *is limited only by 'undue hardship.'*

65 FR 11019 March 1, 2000  (emphasis supplied).   All EEOC did when it finally amended the Rehabilitation Act regulations was to restate the statutory language of the 1992 amendments and add one sentence stating the obvious--that the standards applied under 42 U.S.C. 12111 are the standards under 29 C.F.R. 1630:

The standards used to determine whether section 501 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 791), has been violated in a complaint alleging nonaffirmative action employment discrimination under this part shall be the standards applied under Titles I and V (sections 501 through 504 and 510) of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. 12101, 12111, 12201), as such sections relate to employment. *These standards are set forth in the Commission's ADA regulations at 29 CFR part 1630.*

67 FR 35732, 35735, May 21, 2002. Thus, even though the EEOC published Guidelines stating in the statutory language of the 1992 amendment that "*standards applied* under 42 U.S.C. 12111 (the ADA standards) *shall be the standards applied"* under the Act means that the regulations under 29 C.F.R. 1630.2 shall apply to the Rehabilitation Act, and even though the language of the 1992 amendments to the Act and its legislative history are clear that the 1992 amendments incorporate the standards of 29 C.F.R. 1630.2 "effective on enactment,"   Defendant argues that the 1992 law did not become effective until 10 years later in 2002 when the EEOC finally withdrew the regulations it previously indicated were inapplicable and simply referenced the ADA regulations as the applicable standard under the Act.

The EEOC's interpretation of its own regulations must be given persuasive weight.  As an administrative interpretation of the Act by the agency responsible for enforcing the Act, the EEOC Guidelines, "while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort to guidance." *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S. Ct. 2399, 2404, 91 L. Ed. 2d 49 (1986) (quoting *General Elec. Co. v. Gilbert,* 429 U.S. 125, 141-42, 97 S. Ct. 401, 410-11, 50 L. Ed. 2d 343 (1976), and *Griggs v. Duke Power Co.,* 401 U.S. 424, 433-34, 91 S. Ct. 849, 855, 28 L. Ed. 2d 158 (1971)) (citation omitted).

The law in this Circuit is that the ADA "undue hardship" standard applies to claims against under the Rehabilitation Act arising after 1992.  Thus, in *Taylor v. Rice,* 451 F.3d 898,

908 (D.C. Cir. 2006), the D.C. Circuit applied the "undue hardship" standards of the ADA as set forth in 29 C.F.R. 1630(o) in a federal employee case governed by the Rehabilitation Act, stating as follows:

> The Disabilities Act does not provide a comprehensive definition of 'reasonable accommodation,' but it gives examples of what the term 'may include.' 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(2); *see id.* § 1630.2(o)(1) (defining 'reasonable accommodation').
>
> \* \* \* \*
>
> An accommodation may be unreasonable "if it either imposes 'undue financial and administrative burdens' . . . or requires 'a fundamental alteration in the nature of [the employer's] program.'"
>
> \* \* \* \*
>
> An accommodation - even a reasonable one - imposes undue hardship on an employer if it 'requir[es] significant difficulty or expense, when considered in light' of several statutory factors. 42 U.S.C. § 12111(10)(A); *see* 29 C.F.R. § 1630.2(p)(1). \* \* \* \* An employer invoking the undue hardship defense must use these factors to 'show special (typically case-specific) circumstances that demonstrate  undue hardship in the particular circumstances.'

451 F.3d at 908 (citation omitted).  In another case that originated in this court before 2002, this court held that ". . . Its basic tenet [under the Rehabilitation Act] is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where *undue hardship* would result."  *Bramwell v. Blakey,* 2006 U.S. Dist. LEXIS 32728 at p. 17 (D.D.C. 2006) (emphasis added).   The Court further observed that for disability purposes, The Rehabilitation Act  and  the  ADA  are  effectively  one  and  the  same  thing.     *Id.*  at  note  5.

Other courts also regard the Rehabilitation Act and the ADA as one and the same for disability discrimination purposes and simply apply the ADA in place of the Rehabilitation Act in a federal employee reasonable accommodation case.  In *Office of the Architect v. Office of Compliance,* 361 F.3d 633 (Fed. Cir. 2004*)*, the court observed with respect to a claim arising before 2002 that the 1992 amendment of the Rehabilitation Act requires application of 42 U.S.C.

§ 12111 in a federal employment case, and stated that, "The plaintiff at all times retains the burden of proving that she has been the victim of illegal discrimination; the burden of production shifts to the employer to show that it is unable to accommodate the plaintiff without 'undue hardship.'" *Id.* 361 F.3d a*t* 639, note 2.

Other courts concur.  In *Mengine v. Runyon*, 114 F.3d 415, 420 (3rd Cir.1997),  the court recognized that, after the 1992 amendments to the Act, the standards for reasonable accommodation under the Rehabilitation Act are defined by the ADA standards.  As amended, the Rehabilitation Act includes the duty to reassign an employee subject only to the ADA standards of whether the reassignment would cause the employer "undue hardship." *Id.* at 418. The Sixth Circuit applies the ADA standards in post-1992 (and pre-2002)  Rehabilitation Act cases to require a federal "employer to demonstrate that the employee cannot reasonably be accommodated because the accommodation would impose an undue hardship" on the employer. *Gaines v. Runyon*, 107 F.3d 1171, 1776 (6th Cir. 1997).  While Defendant argues without explanation that *Nighswander v. Henderson,* 172 F. Supp.2d 951 (N.D. Ohio 2000) holds otherwise (See Opposition Memorandum, p. 16), the case clearly states that the Act "requires federal employers to provide reasonable accommodation to employees with disabilities unless the accommodation would be an undue hardship." *Id.* at 956.

The foregoing cases reflect the fact that the 1992 amendments directing that the "*standards applied* under 42 U.S.C. 12111 (29 C.F.R. 1630) *shall be the standards applied*" in Rehabilitation Act cases are self-implementing and "effective on enactment."   The unusual circumstances where the EEOC issued Guidelines indicating its regulations were not to be applied, without formally revoking them, has caused some confusion in the courts and among counsel.  Thus, in a Rehabilitation Act case cited prominently by Defendant, one court ruled that

reassignment is "mandatory, unless the reassignment would cause the agency undue hardship" but, at the same time, the case referred to the former Rehabilitation Act regulations at 29 C.F.R. 1614.203 as its source.  *Shiring v. Runyon*, 90 F.3d 827, 832 (3rd Cir. 1996).   The language of the *Shiring* case was picked up in other cases, leading to confusion.[6]  Thus, Defendant relies on cases which state that ADA standards apply to Rehabilitation Act cases which apply the "undue hardship" standard of the ADA as stated in 29 C.F.R. 1630(o), but mistakenly cite 29 C.F.R. 1614.203 as the source.  See, *e.g., Craig v. Potter,* 2003 WL 21349469, at 7 (N.D. Inc. 2003) where the court found that a federal employer must accommodate the "known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an *undue hardship* on the operation of business" properly citing 42 U.S.C. § 12112 as the applicable law but mistakenly referring to 29 C.F.R. § 1614.203 as the applicable regulation.  Even Defendant does not argue that the old Rehabilitation Act regulations apply under the ADA.  The same obvious error occurs in *Bennett v. Henderson,* 15 F. Supp.2d 1097, 1108 (D. Kan. 1998).  Thus, Defendant obviously seizes on the erroneous statements resulting from the confusion caused by EEOC's implementation of the 1992 amendment to argue that the self-implementing law that was "effective on enactment" did not become law for 10 years.  These internally inconsistent cases do not support either Plaintiff or Defendant.  The cases are simply mistaken.

---

[6] The reference in *Shiring v. Runyon*, 90 F.3d 827, 832 (3rd Cir. 1996) to 29 C.F.R. 1614.203 reflects apparent confusion, because the court does apply both the ADA "undue hardship" standard and the Rehabilitation Act standards.  The court in *Robinson v. Runyon*, 987 F. Supp. 620, 622 (N.D. Ohio 1997), quoted *Shiring* for the same confusing and contradictory statement that the "undue hardship"  standard applies under the old Rehabilitation Act Regulations. The 3rd Circuit's subsequent decision in *Mengine v. Runyon*, 114 F.3d 415, 420 (3rd Cir.1997), apparently recognized the mistake and applied the "undue hardship" standard of 29 C.F.R. 1630.2(o) and did not include the erroneous reference to 29 C.F.R. 1614.203 as the source.

In *Mitchell v. Crowell,* 975 F. Supp. 1440, 1444 (N.D. Ala. 1997), an Alabama District Court ruled that it would not reconsider a plaintiff's earlier denied argument that the "broader standards of the ADA . . . supercede any limitations imposed upon a plaintiff's right to transfer under 29 C.F.R. 1616.203(g)." Since the case refers to a previous ruling of the court that the court declined to reconsider the ruling is clearly *dicta*. The opinion also includes no statement of the arguments made by counsel in Alabama, and there is no specification of the case authority applied by the Alabama court. In all likelihood, the Alabama court relied on the confusing and contradictory cases cited by Defendant, and the other Alabama case cited by Defendant indicates that the courts have made that mistake. Thus, *Jacobs v. Henderson*, 2001 U.S. Dist. LEXIS 26032 , 55-56 (M.D. Ala. 2001), cites the "undue hardship" standard of the ADA regulations (29 C.F.R. 1630.2); erroneously gives the former Rehabilitation Act regulations at 29 C.F.R. 1614.203 as the source of the "undue hardship" standard; and cites as authority the case that caused the confusion, *Shiring v. Runyon*, 90 F.3d 827, 832 (3rd Cir. 1996).

The 1992 amendments to the Act clearly state that ADA regulations "*shall be the standards applied*" in Rehabilitation act cases. This law is self-implementing on its face and "effective on enactment." The EEOC has always maintained that the ADA regulations of 29 C.F.R. 1630.2(o) must be applied to post-1992 Rehabilitation Act cases, and this Circuit has so applied the law correctly in the cases cited above. Defendant is merely relying on confusion created by the unfortunate decision of the EEOC to revoke the regulations at 29 C.F.R. 1614.203 through Guidelines and by not publishing the actual regulations until 10 years later.

6. <u>Defendant Violated the Act By Refusing to Assign Plaintiff to OCC.</u>

The ADA and the Rehabilitation Act of 1973, as amended by the Rehabilitation Act Amendments of 1992 (the "Act"), define discrimination as follows:

>…not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an **undue hardship** on the operations of the business of such covered entity; … (emphasis added)
>42 U.S.C. 12112(b)(5)(A)(B).

The law is clear that where, as here, an employee shows that a reasonable accommodation is possible and that she is qualified, the employer bears the burden of proving that providing that accommodation would impose an undue hardship on Defendant. *Hoskins v. Oakland County Sheriff's Dept.,* 227 F.3d 719, 728 (6th Cir. 2000). An employer *must* reassign the employee to a vacant position. *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1165 (10th Cir. 1999). While an employee cannot force an employer to provide a specific accommodation if another reasonable accommodation is available, an employer fails to provide a reasonable accommodation if he appoints an employee to a lower graded position when an accommodation is available at the employee's current pay level. *Id. Citing, Hankins v. The Gap, Inc.,* 84 F.3d 797, 800 (6th Cir. 1996). Specifically, a job reassignment does not constitute a reasonable accommodation under the Act where an employer appoints an employee to a position with lower pay and benefits and less advantages than a former position when other positions are available that do not involve lower pay and benefits. *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 99 (2nd Cir. 1999).

While Defendant now states that transferring Plaintiff to OCC would cause undue hardship, Defendant admits on summary judgment that the only reason Plaintiff was not transferred to OCC was because the "same appointing authority" language of 29 C.F.R. 1614.203 did not require Defendant to transfer Plaintiff to OCC. Plaintiff's SOMF ¶ 34, admitted. Defendant made the same admission in response to interrogatories requesting every reason why Plaintiff was not reassigned to OCC, Defendant stated that the "only" reason it did not transfer

Plaintiff to OCC was that Defendant did not have to transfer an IRS employee to OCC because OCC and IRS were "different appointing authorities."  Exh. F.  Defendant's Rule 30(b)(6) designees repeatedly stated the same exclusive reason for not transferring Plaintiff to OCC. Defendant thus violated the Act by not assigning Plaintiff to a vacant, funded position in OCC but by instead assigning her to a lower graded position in an IRS field office after months of delay.

7.  <u>Plaintiff Was Damaged.</u>

Plaintiff submitted detailed damages calculations showing lost wages of over $68,000. This evidence is not challenged in any way by Defendant and must be accepted as true for purposes of summary judgment.

<u>Conclusion.</u>

Plaintiff respectfully requests that the Court grant Plaintiff's motion for partial summary judgment.

Respectfully submitted,

_____
John D. Quinn, Esq,
Stephen Sale, Esq.
Sale & Quinn, P.C.
910 16th Street, N.W.,  Suite 500
Washington, DC  20006
Tel:  (202) 833-4170
Fax: (202) 887-5137

Counsel for Plaintiff

May 21, 2007