**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TESSA E. BERGMAN,
          Plaintiff,

                                        Case No. 06-0303 (GK)

          v.

JOHN W. SNOW,
          Defendant

**DEFENDANT'S REPLY TO**
**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant respectfully submits this reply to plaintiff's opposition to defendant's motion

for summary judgment.

**Burdens on Summary Judgment**

Plaintiff's Opposition argues that "Defendant's argument that Plaintiff is not a qualified

individual with a disability is not supported by any specific material facts in Defendant's

[Statement of Material Facts] SOMF and must be rejected for this reason alone."  Opposition at

p. 14-15.  Plaintiff makes the same argument concerning her retaliation and unreasonable delay

claims.  Opposition at p. 34.   However, the defendant's summary judgment motion showed that

plaintiff has failed to prove essential elements of her claims, and thus has not established a prima

facie case.  The defendant is not required to present evidence disproving plaintiff's case; it is

only required to show that plaintiff has not submitted sufficient evidence to establish an essential

element of her claim.   If plaintiff fails to submit such sufficient evidence, "there can be 'no

genuine issue as to any material fact.'"  *Celotex Corp. v. Catrett*,  477 U.S. 317, 322-323 (1986).

The Supreme Court has ruled that a motion for summary judgment properly may be

granted where the moving party shows that the non-moving party has failed to establish an

essential element on which the non-moving party bears the burden of proof.

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law." **In our view, the plain
> language of Rule 56(c) mandates the entry of summary judgment . . . against
> a party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the
> burden of proof at trial. In such a situation, there can be "no genuine issue as
> to any material fact," since a complete failure of proof concerning an
> essential element of the nonmoving party's case necessarily renders all other
> facts immaterial. The moving party is "entitled to a judgment as a matter of
> law" because the nonmoving party has failed to make a sufficient showing on
> an essential element of her case with respect to which she has the burden of
> proof.** "[T]h[e] standard [for granting summary judgment] mirrors the standard
> for a directed verdict under Federal Rule of Civil Procedure 50(a)...." *Anderson v.
> Liberty Lobby, Inc.*, 477 U.S. 242, 250 . . . (1986).

*Celotex Corp. v. Catrett*,  477 U.S. 317, 322-323 (1986).  *See Frito-Lay, Inc. v. Willoughby*,  863

F.2d 1029, 1032-1033 (D.C.Cir.1988) ("Under *Celotex*, a court must enter summary judgment

against a nonmovant "who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial." . . . . A party who bears an initial burden of production should not be permitted to waste

the resources of its opponent and of the courts if it cannot show that it could possibly meet that

burden.").  *Benn v. Unisys Corp.*, 176 F.R.D. 2, 4-5 (D.D.C1997), is an example of an

evaluation of a plaintiff's obligation under *Celotex*:

> Once a moving party fulfills its obligations pursuant to 56(c), the onus is on the
> non-moving party to respond with "specific facts" to establish a genuine issue for
> trial. *Celotex*, 477 U.S. at 324. . . .  Subsection (e) of Rule 56 sets forth the extent
> to and means by which the non-moving party shall make the necessary evidentiary
> showing in order to survive a properly supported motion for summary judgment. .
> . .  In italics the Court notes four areas in which Benn's opposition to Unisys'
> motion for summary judgment is deficient. First, the only Rule 56(e) evidence
> attempting to set forth "specific facts" in dispute is an affidavit affirmed by

plaintiff's counsel, James G. Gore, Jr., who does not have personal knowledge of the events alleged in Benn's complaint. Second and third, plaintiff's counsel cannot testify at trial as to the events he affirms in his affidavit as it would [be] inadmissable hearsay. "The affidavit must be based on personal knowledge and not on the hearsay statement of another purported witness." *Hack v. H.V.R. Parts, Inc.*, 742 F.Supp. 283, 286 (W.D.Pa.1990). Finally, Benn has produced literally absolutely no evidence--only allegations--in support of his opposition to the summary judgment motion. *See Farrell v. Potomac Electric Power Co.*, 616 F.Supp. 995, 1000 (D.D.C.1985)("All the plaintiff has done is to make additional allegations, but as Rule 56(e) clearly provides, such allegations are not enough and do not raise a factual issue."). * * *  Benn must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 . . .(quoting Fed.R.Civ. P. 56(e)).

*Benn v. Unisys Corp.*, 176 F.R.D.at 4 -5;  *See also Green v. Whiteco Industries, Inc.*,  17 F.3d

199, 201 (7th Cir.1994):

On a motion for summary judgment, the moving party has the burden of demonstrating that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This burden "may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 . . . (1986). . . .Furthermore, the Supreme Court has held that the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial. *Id.* at 322 . . . .

*Green*, 17 F.3d at 201; further

FN3. Plaintiff argues that Whiteco bears the burden of producing some affirmative evidence negating an element of plaintiff's case. The Supreme Court expressly rejected this argument in *Celotex*, 477 U.S. at 325 . . . . (referring to the movant's burden, the court said: "we do not think the [*Adickes* language quoted above] should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact....").

*Id.* at fn3.

3

Once defendant has made the showing that there is lack of sufficient evidence to establish

an essential element of the case, the burden is on plaintiff to set forth specific facts showing that

there is a genuine issue for trial.

> A principal purpose of summary judgment is "to isolate and dispose of factually
> unsupported claims." *Celotex*, 477 U.S. at 323-24. . . . Summary judgment is
> appropriate "against a party who fails to make a showing sufficient to establish the
> existence of an element essential to that party's case, and on which that party will
> bear the burden of proof at trial." *Id*. at 322, 106 S.Ct. 2548; *see also Citadel
> Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir.1994). The moving party need
> not disprove matters on which the opponent has the burden of proof at trial. *See
> Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The party opposing summary judgment
> "may not rest upon the mere allegations or denials of the ... party's pleadings, but
> ... must set forth specific facts showing that there is a genuine issue for trial."
> Fed.R.Civ.P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S.
> 574, 585-88. . . (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049
> (9th Cir.1995).

*Chau v. U.S. Dept. of Homeland Sec.*, 424 F.Supp.2d 1159, 1163 (D.Ariz.2006). Since

defendant is not required to present evidence disproving plaintiff's case, defendant is not

required to present "material facts" disproving plaintiff's case. As is demonstrated below,

defendant has shown that plaintiff has failed to make a showing sufficient to establish the

existence of an element essential to her case, and on which she will bear the burden of proof at

trial. Having made that showing, all other facts are immaterial.

In *Celotex*, the Supreme Court instructed that the "[s]ummary judgment procedure is

properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1.). The defendant met

its obligation under Local Civil Rule 7; the defendant has identified in its statement of material

facts the facts which it believes to be material in this case, that is that the plaintiff asked for an

accommodation in Dr. Nowak's letter dated October 21, 1999, and that Dr. Nowak, plaintiff's treating physician and expert witness, only has identified work as the major life activity substantially impacted by plaintiff's impairment.  DSMF.  Plaintiff bears the burden of setting forth specific facts showing that there is a genuine issue for trial.  Plaintiff has not presented a "separate concise statement of genuine issues. . . ." pursuant to Local Rule 7, and plaintiff has not "set forth specific facts showing that there is a genuine issue for trial" in her Response to Defendant's Statement of Material Facts nor in her Opposition and the exhibits attached thereto. Therefore, as is shown in detail below, defendant is entitled to summary judgment as a matter of law.

### Defendant has shown that there is an absence of evidence sufficient to support the plaintiff's case under the Rehabilitation Act

To make out a prima facie case of discrimination under the Rehabilitation Act for failure to accommodate. . . a plaintiff must show "(1) that he was an individual with a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations."

*Pantazes v. Jackson,* 366 F.Supp.2d 57, 66 (D.D.C.2005).  "[T]he burden is on the employee to prove that [s]he is 'an otherwise qualified' individual."  *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 579 -580 (3rd Cir.1998).  (*citing Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir.1993)).  To sustain a disability discrimination claim pursuant to the Rehabilitation Act, a plaintiff must establish that she has a disability.  *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002); *Stein v. Ashcroft*, 284 F.3d 721, 724 (7th Cir. 2002).   In pertinent part, the Rehabilitation Act defines an "individual with a disability" as a person who has "a physical or mental impairment which substantially limits one or more of such person's major life activities."  29

5

U.S.C. § 705(20)(B). "'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" *Toyota v. Williams*, 122 S.Ct. 681, 691 (2002). However, merely having an impairment does not make one disabled. *Toyota*, 122 S.Ct. at 690. A claimant must instead demonstrate that the impairment **substantially** limits **a major life activity**, *see id.* (citation omitted), and is permanent or long-term. *Paegle v. Dep't of the Interior*, 813 F.Supp. 61, 64 (D.D.C. 1993). A major life activity is one that is of central importance to an individual's daily life, *Toyota v. Williams*, 122 S.Ct. at 691, and includes such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. *Stein*, 284 F.3d at 724 (citation and quotation marks omitted).

In *Toyota*, the Supreme Court cautioned that in meeting the requirements of establishing a disability protected by the Rehabilitation Act "[i]t is insufficient for individuals attempting to prove disability status to merely submit evidence of a medical diagnosis of an impairment. Instead, **the Act requires those 'claiming the Act's protection...to prove a disability by offering evidence that the extent of the limitation** [caused by the impairment**] in terms of their own experience is substantial**.'" *Toyota,* 122 S.Ct. at 691-692 (citation omitted). Also, "mitigating measures" like medication and devices "must be taken into account in judging whether an individual possesses a disability." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999); *Sutton v. United Air Lines*, 527 U.S. 471, 488-489 (1999); *Tangires v. Johns Hopkins Hospital*, 79 F.Supp.2d 587, 595 (D.Md. 2000).

**Low Grade Chronic Depression**

In its motion for summary judgment, DSJM, defendant showed that plaintiff has not presented evidence sufficient to establish an essential element of her case because "she has

6

offered no evidence that her low grade chronic depression substantially limited any major life

activity." DSJM at p. 14. The evidence shows that prior to October 2000, except for one brief

period of hospitalization in 1991, plaintiff has been able to care for herself and work. SJM at 14-

16. Although claiming to have had low grade chronic depression most of her adult life, prior to

her hospitalization, plaintiff's history is one of high achievement, including graduation from

college with a double major with distinction, obtaining a JD and a LLM in taxation, work on the

Hill and distinguished service at the Office of General Counsel at IRS. IF at 27-29, EEO TR:

Bergman at 90-99. After plaintiff was released from the hospital, she returned to Washington

and worked part time. *Id.* at p. 12. She then took care of her ill parents in New Jersey for about

six months. *Id*. Then she returned to Washington and worked as tax counsel and legislative

director for a Congressman. *Id*. at p. 12-13. During this period she took off a day or two in

November/December due to her "Seasonal Affective Disorder," but not for any extended periods.

*Id.* at p. 14-15. She then went back to the IRS and worked as a Legislative Affairs Officer in the

Legislative Affairs Office, where she took off from work due to depression, "Never more than

you have to take off for having a common cold." *Id*. at p. 16. On rare occasions on some

mornings plaintiff could not get out of bed, but would get relief from medications. *Id.* at p. 17-

18. Plaintiff testified that she could always carry out the functions of her job. *Id*. at p. 18.

Indeed, during this time, in addition to carrying out her job functions, in 1996 while working

full-time at the IRS, plaintiff entered a part-time graduate program at Johns Hopkins University

and in two years earned a Masters Degree in Biotechnology. EEOTr Bearman at p. 111-112. In

the summer of 1997, plaintiff sat for the Patent Bar examination, and passed. *Id.* Thus, the

evidence of record establishes that plaintiff cannot prove that her low grade chronic depression

substantially limited any major life activity.

**Major Depression**.

Defendant also showed that plaintiff has not shown that her major depression in October

1999 substantially limited any major life activities.

**Major life activities other than work**

Defendant first looked at major life activities **other than work**, and showed that plaintiff

had not offered evidence that such major life functions were substantially limited by her major

depression. Dr. Nowak's letter of October 11, 1999 had stated that "Ms. Berman is requiring the

aid of family and friends with basic demands of living." DSJM at p. 16, Bergman Depo at Ex. 3.

However, in her deposition testimony Dr. Nowak testified as follows:

> Q. **So her major life functions, walking, talking, breathing, eating, sleeping** --
> A. Obviously.
> Q. **-- there are no issues with those, is that correct?**
> A. **That's correct.**
> Q. Okay. Is there any major life functions which you would say during this period of time in October that she could not carry out?
> A. She was not able to work during that period of time, and she did need some support from friends and family. **They either invited her to dinner or cooked for her, or helped her do various things around the house**. **The details of that I don't know**. But while she wasn't completely disheveled psychotic and unable to function and needing hospitalization, she was compromised some in managing activities of daily living and --
> Q. **What activities of daily living was she having problems with?**
> A. **She needed some help and support with, you know, food, food preparation.**
> Q. Who told you that?
> A. I'm sure she told me that.
> Q. Do you have that in your notes?
> A. No, I don't have it in my notes. I've already told you I don't have everything in my notes. **But the point is she couldn't work during this period.**
> Q. **Is that the major life function?**
> A. **That's coming up. That's coming up. That is the major life function that we're going to be dealing with, yes,** which is clearly going to evolve. . . .

Nowak 2007 Depo. at p. 70-71. (Emphasis added).

Dr. Nowak's statement about what plaintiff told her other people were doing for plaintiff is rank hearsay, and inadmissible for the truth of the matter stated.   F. R. Evid. 801 & 802.   *See Benn v. Unisys Corp.*,  176 F.R.D. 2, 4-5 (D.D.C.1997)("The affidavit must be based on personal knowledge and not on the hearsay statement of another purported witness. *Hack v. H.V.R. Parts, Inc.*, 742 F.Supp. 283, 286 (W.D.Pa.1990)." ).   Moreover, when plaintiff was specifically asked about the allegation in the doctor's letter that she required "the aid of family and friends with basic demands of living," plaintiff, who lived alone, testified that the only family and friends aiding her were one friend and a cousin.   Plaintiff testified that their assistance was limited to giving her moral support by talking with her.  Bergman 2007 Depo at p. 75-76.  The only other type of support plaintiff said she needed was psychiatric.  *Id*. at p. 76. [1]  Plaintiff could dress herself, drive, talk on the telephone and take care of her pet cat.  *Id.* at p. 75-78.  The evidence also showed that the plaintiff was going to her appointments with Dr. Nowak, and was able to cope with dealing with the police about the theft of her car.  DSJM at p. 16-21.[2]

---

[1]Plaintiff's Opposition is offering the doctor's hearsay statement for the truth of the matter stated, not as the basis for Dr. Nowak's opinion testimony.  Even if it were the basis of her opinion, F.R.Evid. Rule 703, specifically provides that "Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."  Here the hearsay statement has no probative value, since plaintiff's own testimony does not allege the truth of the statement, but rather that the only support she needed from her cousin and friend was "moral support."

[2] In granting summary judgment in *Cecala v. Newman*,  2007 WL 1297241, *14 (D.Ariz.2007), the court observed about the affidavit of plaintiff's legal ethics expert:  "Professor Hazard opines that Cooperman Levitt failed to supervise Newman or take remedial action against Newman in violation of a legal duty. . . . Professor Hazard cannot manufacture a genuine issue of fact by assuming facts without evidence and liability without law."

Plaintiff's Opposition does not deny any of the above.  Opposition at p. 14-21.  Plaintiff

has not submitted any affidavit from herself or her family and friends describing any assistance in

daily living which plaintiff required.  The "moral" support from her cousin and friend described

by plaintiff does not show the substantial limitation of any major life function. The doctor said

she did not know the details of what assistance plaintiff purportedly got.   Even assuming that

someone asked plaintiff to dinner or helped her with food preparation or housework, there is no

evidence of how often this occurred or what was required.  Thus, there is no evidence that there

was any substantial limitation as compared with the average person.   Average people in the

general population have help with food preparation and housework every day, as evidenced by

the number of maid and cleaning services, restaurants, delicatessens, food carry-out and delivery

businesses in any telephone book, not to mention the frozen meals and cold and hot food bars

found in most local food markets.  Substantially limits means:

> 1. unable to perform a major life activity that the average person in the general
> population can perform; or

> 2. significantly restricted as to the condition, manner or duration under which an
> individual can perform a particular major life activity as compared to the
> condition, manner, or duration under which the average person in the general
> population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1);  *Swanson v. University of Cincinnati*,  268 F.3d 307, 315 (6th

Cir.2001).  *See e.g. Greathouse v. Westfall  212 Fed.Appx.*, 379, 382 -384 (6th Cir.2006):

> "[S]ubstantially limits," the Supreme Court has observed, "creat[es] a demanding
> standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534
> U.S. 184, 197 . . .(2002); *see Mahon v. Crowell*, 295 F.3d 585, 592 (6th
> Cir.2002). . . .Under these requirements, an individual must make a significant
> showing of sleep impairment before he can show that a substantial limitation
> exists. . . .Greathouse offers no evidence of the precise impact that his ailments
> have on his sleep patterns, and he nowhere explains how his illness significantly

restricts the manner or duration of his sleep as compared to that of the average person. The reports from his physicians variously generalize that he "has trouble sleeping throughout the night," . . .that he has "difficulty sleeping most nights," . . .that he has "insomnia," . . .that he told his doctor "he sleeps fairly well during the day but every night he cannot sleep if he doesn't take a pill,". . .and that he is in a "state of emotional upheaval characterized by ... sleeplessness,". . .Greathouse added, "I have problems with my sleep, [and] I medicate myself to sleep every night." . . .These general statements regarding his sleeping problems, without more, cannot sustain a claim that his ability to sleep has been substantially limited by his ailments.

And see *Heisler v. Metropolitan Council*,  339 F.3d 622, 629-630 (8th Cir.2003):

> Lastly, Heisler argues that her major depressive disorder substantially limits her ability to take care of herself. Heisler testified during the Veterans Preference hearing that "[w]ith depression it's just hard to perform manual tasks, everyday tasks like taking the garbage out and sweeping the floor, daily hygiene". . .and during her deposition that "it is hard to get out of bed" . . .However, Heisler also testified that she has suffered from depression for twenty years, yet has lived on her own and maintained employment during that time. She has presented no evidence that she has ever needed help in caring for herself. Her conclusory statements that it is sometimes hard to get out of bed and that [it] is difficult to maintain daily hygiene simply do not provide sufficient evidence that her depression substantially limits her ability to care for herself. . . .Heisler no doubt suffers from major depressive disorder that makes her life difficult. However, she has failed to present evidence sufficient to establish that those difficulties rise to the level of substantially limiting that is required to maintain a claim under the ADA.

*Heisler v. Metropolitan Council*,  339 F.3d at 629 -630 (Internal citations omitted); *Cooper v.*

*Olin Corp., Winchester Div.*,  246 F.3d 1083, 1088 -1089 (8th Cir.2001):

> Viewing the facts, including those in the affidavit, in the light most favorable to Cooper, we do not believe that she has presented evidence that shows a material issue of fact on actual disability. Cooper has suffered from depression for more than thirty years, during which she also worked and had raised a family. Her doctors imposed no restrictions when they released her to return to work. Cooper generally takes care of her own finances and operates large machinery. Even during the periods when her depression is most severe, Cooper lives alone and successfully cares for her horses, pets, and farmland. Cooper has presented no evidence that she has substantial difficulty living independently, that she requires help with caring for herself-for example, when she deals with matters of personal

care, cooking meals, or taking care of finances-or that she has been substantially limited in her ability to care for her animals and her home. She has not shown that her impairment causes a substantial limitation when compared to the general population.

Plaintiff has not offered evidence that she was unable to perform a major life activity that the average person in the general population can perform, nor has she shown a significant restriction of a particular major life activity as compared to the average person in the general population.

Instead, plaintiff's opposition has alleged  a new major life function allegedly impaired by plaintiff's depression -- cognitive impairment, limitation of plaintiff's "ability to think and concentrate." Opposition at p. 17.[3]  Plaintiff cites to *Battle v. United Parcel Service, Inc.,* which states that the "ability to perform cognitive functions **on the level of an average person**" constitutes a major life activity.  *Battle v. United Parcel Service, Inc.,*  438 F.3d 856, 861 (8th Cir.2006) (emphasis added).

Plaintiff asserts:

Dr. Nowak described Ms. Bergman's cognitive impairment as if she had "cotton wool in her brain . . .it's like thinking through molasses." [According to Dr. Nowak, the cognitive impairment made it] very difficult for [plaintiff] to plan work organization and then to be able to follow through with the work organization.

Opposition at p.17.    It is questionable whether concentration is a major life activity. *See, e.g., Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999) ("Concentration may be a significant and necessary component of a major life activity, such as working, learning, or speaking, but it is not an "activity" itself."); *accord Lemire v. Silva*, 104 F.Supp.2d 80, 87 (D.Mass.,2000) (" The ability to concentrate is not a major life activity. It is exceedingly difficult to define the ability to

---

[3]  Neither Dr. Nowak's Rule 26 report, Ex. J, nor her new affidavit, Ex. K, state that plaintiff's cognition, thinking or concentration, was substantially impacted by her depression.

concentrate with sufficient specificity to avoid the tailoring problem noted in *Johnson Controls*.

*See [Reeves v.] Johnson Controls [World Services, Inc.]* , 140 F.3d [144] at 152. In addition,

limitations on the ability to concentrate can be more appropriately framed as limitations on the

major life activities of working, learning, or speaking.").   However, plaintiff Bergman has

offered no evidence of the extent of her alleged cognitive impairment or how it compares with

the cognitive abilities of an average person in the general population.  When Dr. Nowak was

asked how she would know that a patient had lowered cognition, she admitted that generally it is

not objectively observable but, as with plaintiff, is self-reported by the patient.

> Q.   I'm asking as a layperson how you know that one of your patients or
> diagnosed that one or your patients has lowered cognition?
> A.  Sometimes if its completely obvious I can tell because they are -- they're
> having an encephalopathy and they are not properly tracking in my presence.  That
> happened to one of my patients recently. . . .That's not common.  **In depression
> you don't notice it necessarily in somebody who's sitting in your office.  They
> describe it** . . . . what they're more likely to describe, and its what Tessa certainly
> gets when she's depressed, that she gets cotton wool in her brain . . . .

Nowak 2007 Depo. at p. 90.   The descriptions plaintiff offers – "cotton wool in her brain,"

"thinking through molasses," "very difficult . . .to plan work and follow through with the work

organization" –  are not evidence that plaintiff's ability to think and concentrate was substantially

limited, and does not compare plaintiff's cognitive abilities to those of the average person in the

general population.  *See Heisler v. Metropolitan Council*, 339 F.3d 622, 629 (8th Cir.2003)

("Heisler has failed to produce evidence that her depression significantly restricts her ability to

concentrate (or learn or work) as compared to the general population. . . . Her conclusory

statements that she has difficulty concentrating, coupled with her own testimony that she could

perform her job, does not suffice to establish that her major depressive disorder significantly

restricted her ability to concentrate-either in and of itself or as a subset of learning or working - as compared to the general population."); *Swanson v. University of Cincinnati*, 268 F.3d 307, 317 (6th Cir.2001) ("In regard to his concentration, inferences from Swanson's performance record at the University of Nevada should be made in his favor, but no rule requires a court to examine it only for the purpose intended by Swanson. Rather, Fed.R.Civ.P. 56(c) demands that a court consider all the evidence as a whole when determining whether a genuine issue of material fact has been raised. Taken as a whole, his medical training record shows that his depression impacted, but did not significantly restrict, the condition, manner, or duration of his ability to concentrate."); *Doyal v. Oklahoma Heart, Inc*., 213 F.3d 492, 497 (10th Cir.2000):

> In her opposition to the motion for summary judgment, Doyal failed to present evidence of any specific instances where she had difficulty in learning. . . .Because Doyal introduced no evidence suggesting she experienced greater difficulty than anybody else learning the new computer system or any other new material, she has failed to demonstrate that she was significantly restricted in learning. *See* 29 C.F.R. § 1630.2(j)(2) (providing that whether a person is "significantly restricted" in her performance of a major life activity is to be evaluated relative to the condition, manner or duration under which the average person in the general population can perform that same activity); *see also Bowen v. Income Producing Management, Inc.*, 202 F.3d 1282, 1287-88 (10th Cir.2000) (recognizing that, to be significantly restricted in learning, one's skills and abilities must be inferior to those of the average person.).

Plaintiff has not given any examples or evidence which demonstrate that the extent of the alleged cognitive impairment, in terms of plaintiff's experience, is substantial.  Plaintiff has not described even one instance of her having difficulty in planning and following through with any work assignment or other activity.  Plaintiff has offered no evidence that her depression significantly restricted her cognitive ability as compared to the average person in the general population.  Indeed, the underlying  premise of plaintiff's complaint is that she has intellectual

and cognitive abilities so substantially superior to those of the rest of us that having to engage in

what she deems insufficiently intellectual activity at work (secretarial and clerical functions)

plunges her into major depression.   The evidence of record actually shows plaintiff has

impressive cognitive ability, compared to the average person in the general population.

Throughout her depression,  plaintiff was able successfully to work as an attorney with the IRS,

to care for two ill parents, to work in private practice, on the Hill, and as a legislative analyst.

While working, plaintiff was able to sit for and pass the Patent bar and obtain a Masters Degree

in Biotechnology.  These are activities which cannot be accomplished by many average people

who have no cognitive impairment.  Moreover, neither Dr. Nowak's deposition testimony, Rule

26 statement, nor her latest affidavit, state that plaintiff was unable to think and concentrate or

that her ability to think and concentrate was significantly restricted as compared to the condition,

manner, or duration under which the average person in the general population can perform that

same activity.   To the contrary, Dr. Nowak's latest affidavit states:

> 4.      Most of the time, she suffers from a low-grade clinical depression, which
> **in no way limits her intellectual functioning**.
>
> 11.     [A]lthough Ms. Bergman was **still suffering from acute depression** in
> March 2000 **she was fully capable of performing as a tax attorney**
> when she was transferred to a position in the IRS field office as a tax
> attorney.  Thus, **although her depression remained, it did not interfere
> at all with her performing duties as a tax lawyer**.

Plaintiff's Opposition Ex. K at ¶4, 11.  Thus, the evidence of record shows that according to

plaintiff's own treating physician and expert,  "cotton wool in her brain" etc., did not

significantly restrict plaintiff's intellectual functioning.    By contrast, in *Battle*,

> Dr. Gale testified that Battle's depression and anxiety substantially limit his ability
> to think and concentrate as compared to the average person in the general

> population. . . . . Dr. Gale also explained to the jury that Battle thinks and
> concentrates at a laborious rate, has to spend significant extra time working on
> projects, and cannot think and concentrate about matters unrelated to work.

*Battle v. United Parcel Service, Inc.*, 438 F.3d at 862.  This is the complete opposite of Dr.

Nowak's statements that plaintiff's low-grade clinical depression "in no way limits her

intellectual functioning," and that her acute depression "did not interfere at all with her

performing duties as a tax lawyer."  Thus, plaintiff has neither offered evidence showing that any

major life activity was substantially limited by her low-grade or acute depression, nor shown a

genuine issue of material fact concerning substantial limitation of a major life activity.[4]

**The major life activity of work**

Defendant's motion for summary judgment also showed that plaintiff has not presented

evidence establishing that the major life activity of work was substantially impaired by her major

depression.  Defendant cited to the test under *Sutton v. United Airlines*, 527 U.S. 471, 491-92

(1999).  DSJM at p. 21-22. Defendant argued *inter alia*:

> Plaintiff has not met her burden of showing that her impairment disqualified her

---

[4]  Dr. Nowak's Rule 26(a)(2) statement indicates that Dr. Nowak is expected to testify that plaintiff has a "disability."  See plaintiff's Ex. J.  While Dr. Nowak as a psychologist is allowed to testify about the impairments which plaintiff may have, any testimony by her that plaintiff had a "disability" is not admissible because it is an impermissible legal conclusion. "Disability" is a legal term of art under the Rehabilitation Act.  *See  Burkhart v. Washington Metropolitan Area Transit Authority*,  112 F.3d 1207, 1213 (D.C.Cir. 1997) ("an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied. . . ." "Therefore, by invoking a legal term of art, Spurlock's testimony constituted an impermissible legal conclusion." );  *Torres v. County of Oakland* , 758 F.2d 147, 151 (6th Cir.1985) ("The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate.");  *see also U.S. v. Naegele*,  471 F.Supp.2d 152, 162 -163 (D.D.C.2007);  *U.S. ex rel. Mossey v. Pal-Tech, Inc* . , 231 F.Supp.2d 94, 98 -99 (D.D.C.2002).

from the actual duties of her particular job or from a substantial class or range of jobs. *See Gasser v. District of Columbia*, 442 F.3d 758, 764 (D.C.Cir. 2006). Plaintiff is an attorney with a Masters in Taxation and has passed the Patent Bar. There are a plethora of jobs for attorneys in the Washington D.C. area, including with federal and local legislative and executive branches, trade groups, private law firms and private industry both national and international. Plaintiff has not shown herself to be disqualified from any of these myriad job possibilities by her impairment.

DSJM at p. 23.

Plaintiff did not deny, and thus has conceded, that she has not shown that her impairment disqualified her from the myriad attorney job possibilities available in the Washington Metropolitan area. Rather, plaintiff has responded with the disingenuous argument that her disability "disables her at all times from performing job duties that are primarily clerical in nature." Opposition at p. 20. Plaintiff argues that the broad range of jobs that her depression -- both low-grade and acute -- disqualifies her from is all clerical and secretarial jobs. However, clerical and secretarial jobs is not the **relevant** job market. The pertinent regulations state:

> (3) With respect to the major life activity of working--
> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as **compared to the average person having comparable training, skills and abilities.** The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
> (ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":
> (A) The geographical area to which the individual has reasonable access;
> (B) The job from which the individual has been disqualified because of an impairment, **and the number and types of jobs utilizing similar training, knowledge, skills or abilities**, within that geographical area, **from which the individual is also disqualified because of the impairment** (class of jobs); and/or
> (C) The job from which the individual has been disqualified because of an impairment, **and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities**, within that geographical area, **from which the individual is also disqualified because of the impairment** (broad

17

range of jobs in various classes).

29 C.F.R. § 1630.2 (emphasis added); *Swanson*, 268 F.3d at 317 ("In regard to work, "substantial limitation" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes **as compared to the average person having comparable training, skills and abilities**.")(emphasis added); *Nuzum v. Ozark Automotive Distributors, Inc.*, 432 F.3d 839, 847 -848 (8th Cir.2005) ("While a lifting restriction standing alone is insufficient to demonstrate that [the plaintiff] was substantially limited in the life activity of working, the inability to lift heavy objects can translate across a broad spectrum of physically demanding jobs." Even if such a result is possible, it would depend on **proof that the limitation forecloses the broad category of jobs for which Nuzum's background and skills otherwise would fit him**. *See Knutson v. Ag Processing, Inc.*, 394 F.3d 1047, 1053-54 (8th Cir.2005); *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir.2001). Nuzum has not attempted any such proof. . . .*See Knutson*, 394 F.3d at 1051 ("[W]orking does not mean working at a particular job of the person's choice.").")(emphasis added); *Cooper*, 246 F.3d at 1089 ("A plaintiff must show that because of her impairment she has suffered a significant reduction in meaningful employment opportunities.")

Plaintiff was not a GS 5-7 clerk or secretary.  She was a GS-14 Legislative Analyst.  She did not go to secretarial school to train to be a clerk or secretary. Her training is in the law -- tax and patents-- and biotechnology.   Plaintiff is not a secretary who would be out of a large range of possible jobs involving, for example keyboarding,  if not accommodated with a particular type of work station or ergonomic keyboard.  Plaintiff is a highly educated attorney who is not in the job market for "clerical and secretarial jobs."  Meaningful employment opportunities for plaintiff

18

include, at minimum, jobs as an attorney.  Plaintiff has not submitted any evidence that her

impairment disqualified her from jobs utilizing her training, knowledge, and skills.  Indeed,

plaintiff's contention is that "clerical" work "was not commensurate with her job description."

Opposition at p. 21.  Her doctor says that her depression, whether low-grade or major, does not

impair her working as an attorney.   Plaintiff repeatedly has stressed that her vocation or

profession is working as an attorney.  *See e.g.* Bergman 2007 Depo at p. 58-59 ("What I told Ms.

Curry was I had 20 years experience as an international tax attorney and that was the type of

work I wanted to do, and that was the type of work I expected to be doing.").

   Plaintiff has offered no proof of any vocational limitation. *See Gasser,* 442 F.3d at 764

("The plaintiff's evidence must be 'significantly probative' so that the jury is not 'left in the dark'

about the **vocational limitations** the plaintiff faces.") (emphasis added).  Plaintiff Bergman has

offered no proof that her impairment significantly restricted her in the ability to perform jobs

utilizing training, knowledge, skills or abilities that were similar to hers, i.e. attorney jobs.

>  To be substantially limited in the major life activity of working, then, one must be
> precluded from more than one type of job, a specialized job, or a particular job of
> choice. **If jobs utilizing an individual's skills** (but perhaps not his or her unique
> talents) **are available, one is not precluded from a substantial class of jobs**.
> **Similarly, if a host of different types of jobs are available, one is not
> precluded from a broad range of jobs**.

*Sutton v. United Air Lines, Inc.*,  527 U.S. 471, 491-492 (1999).

   Drawing all inferences in plaintiff's favor, the **facts** in the record show that plaintiff has

failed to establish the most essential element of her Rehabilitation Act claims, i.e., she has failed

to show that she was a person with a disability as defined by the act. Plaintiff has failed to show

one genuine material fact in dispute which requires trial on this issue.  Defendant is entitled to

summary judgment as a matter of law.

**Conceded arguments**

It is well settled in this Circuit that when a plaintiff files an opposition addressing only certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., General Bd. Of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002) (*citing FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997); *see also* Local Rule LCvR 7(b); *Bancouldt v. McNamara*, 227 F.Supp.2d 144, 149 (D.D.C. 2002)("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.") (citations omitted); *Bramwell v. Blakey,* 2006 WL 1442655, *8 (D.D.C.2006)("The FAA contended in its motion for summary judgment that it did provide job training, job coaching, and "single tasked" or "structured" assignments, and that in some instances it offered such services but Ms. Bramwell declined to accept them. Ms. Bramwell did not address this issue in her response to the motion for summary judgment.* * * Thus, the Court treats this issue as conceded"); *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard,* 2006 WL 696053, *23 (D.D.C.2006)("While Plaintiff states that it has not waived its appeal with regard to FOIA Exemption 6 in its "Opposition to Defendants' Statement of Material Facts Not in Dispute . . .it fails to address the Agency's specific arguments as to Exemption 6 in its actual Cross-Motion for Summary Judgment and Opposition. Moreover, Plaintiff never explains in any filing why the redaction of the names of junior Coast Guard personnel. . .was improper. Plaintiff never justifies its objection. Accordingly, the Court construes Plaintiff's failure to respond as a concession that the Agency's arguments on this issue

are meritorious; as such, the Court grants Defendant's Motion for Summary Judgment with respect to its FOIA Exemption 6 withholdings."); *Hooker-Robinson v. Rice,* 2006 WL 508343, *3 (D.D.C. 2006)("Because the plaintiff only addressed some of the defendant's challenges in her response, the Court will consider those challenges not addressed by the plaintiff in her response as conceded."); *Matta v. Snow*, 2005 WL 3454334, *23 (D.D.C.2005)("Accordingly, the Court shall grant Defendant's Motion for Summary Judgment as it applies to Plaintiff's "participation claim," as Plaintiff has failed to cite to any material fact supporting his allegation and has failed to respond to the arguments made in Defendant's Motion for Summary Judgment").

### Conceded Retaliation Claims

To establish a prima facie case of retaliation, "the plaintiff must present evidence that (1) he engaged in protected activity; (2) the employer took a material adverse action against him; and (3) the adverse action was causally related to the exercise of his rights." *Moses v. Howard University Hosp.*, 2007 WL 442218, *5 (D.D.C. 2007) (*citing Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C.Cir.2006); *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C.Cir. 2006). *See Rochon v. Gonzales,* 438 F3d. 1211, 1219 (D.C.Cir. 2006) .

From pages 33 to 45 of its motion for summary judgment, defendant demonstrated that plaintiff had failed to establish essential elements of the retaliation and hostile work environment claims raised at the administrative level.  Plaintiff has failed to address or rebut defendant's arguments and has failed to identify any genuine issue for trial in respect to any alleged act of retaliation or hostile work environment.  Therefore, plaintiff has conceded that she has failed to establish an essential element of her claims as follows:

21

- January 1999 to October 4, 1999, given secretarial and clerical duties and was not given work to perform at a GS-14 level: no causal connection because the alleged acts occurred before the protected activity.  DSJM at p. 33-34.

- November 19, 1999, management intervened in a payment arrangement . . . regarding repayment of monies owed to the IRS and threatened potential disciplinary action: no material adverse action because plaintiff owed the money to IRS, paid without being charged interest, and no disciplinary action was taken.  *Id.* at p. 34-35.

- December 1999, plaintiff's request for compensatory leave for religious observation was denied: Plaintiff has failed to rebut defendant's legitimate non-retaliatory reasons for its actions.  *Id*. at p. 35-37.

- Plaintiff was charged Absent without Leave (AWOL) 6 hours on December 13, 1999, 6 hours on December 14, 1999 and 2 hours on December 15, 1999: no material adverse action because plaintiff expected to be in a non-pay status, LWOP; therefore, there was no los of pay by being designated AWOL.  *Id.* at p. 37-38.

- The plaintiff's repeated requests to be placed on a 120-day detail, as an interim accommodation, was ignored: defendant showed that plaintiff has offered no proof that the request for a detail was ignored.  *Id.* at p. 38-39.

- On December 23, 1999, management monitored the plaintiff's telephone calls and use of the internet: no material adverse action proved by office mate's one day observation of plaintiff's actions and when no disciplinary action issued.  *Id*. at p. 39-40.

- On January 3, 2000, the plaintiff was expected to perform the work of a full time employee while working part-time: no material adverse action shown since plaintiff has

not identified any full-time work assignment required of her on January 3. *Id*. at p. 40.

- During the week of February 3, 2000, the plaintiff's attorney was subjected to abusive language by GLS employees when plaintiff's attorney requested the status of plaintiff's requests for accommodation: use of abusive language to someone other than plaintiff is not a material adverse action against plaintiff. *Id*. at p. 40-41.

- On February 26, 2000, the plaintiff was denied a within grade increase to a GS-14 step 6: plaintiff proved no affirmative act of retaliation, only the consequence of a prior act. *Id*. at p. 41-42.

- On January 6, 1999, the manager delayed responding to plaintiff's request regarding the decision to place the plaintiff on paid administrative leave: no material adverse action shown in alleged attempt. *Id* at p. 42.

- Hostile work environment: plaintiff failed to prove any alleged act of retaliation; plaintiff failed to offer evidence of retaliatory intent, retaliatory animus or harassment; plaintiff failed to offer evidence of severe and pervasive intimidation, ridicule and insult. *Id*. at p. 42-45.

Thus, plaintiff has conceded that she has failed to establish an essential element of the retaliation and hostile work environment claims raised at the administrative level.

The one act which plaintiff's Opposition contends was a material adverse action is "that Plaintiff suffered a two-grade demotion in the reasonable accommodation process because defendant delayed her transfer and refused to transfer her to a vacant, funded position in OCC." Opposition at p. 38. Plaintiff did not allege this as an act of retaliation at the administrative level. Moreover, plaintiff has failed to offer evidence of an adverse action by defendant.

Defendant did not mandate that plaintiff transfer jobs or place plaintiff in the position in an involuntary manner. The record shows that defendant made an **offer** of the lower graded position to plaintiff with pay retention and plaintiff voluntarily accepted the offer.  Investigative File at p. 223-224.  Plaintiff could have rejected the offer and maintained her grade 14. Moreover, plaintiff was not entitled to any accommodation since she was not "disabled."

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment should be granted.                                    Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970