UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TESSA E. BERGMAN
        Plaintiff,

V.                                          Civil Action No. 06-0303 (GK)

HENRY M. PAULSON, JR.
Secretary of the Treasury,
U.S. Department of the Treasury
        Defendant.


JOINT PRETRIAL STATEMENT

Plaintiff Tessa Bergman and Defendant Henry M. Paulson, Jr., Secretary of the U.S.

Department of the Treasury, submit their joint pretrial statement as follows:

**1. Identification of Parties**.

**Plaintiff**:

John D. Quinn, Esq. 910 16th Street, N.W. Suite 500

Washington, DC 20006 (202) 833-4170

Tessa Bergman

2102 Arlington Terrace Alexandria, VA 22303 (703) 960-2026

**Defendant**:

The defendant is Henry M. Paulson, Secretary of the Department of the Treasury whom

plaintiff has sued in his official capacity. Counsel for the defendant is Assistant United Stated

Attorney, Rhonda C. Fields, 555 4`h Street, N.W., Washington, D.C. 20530, (202) 514-6970.

Agency counsel is Deanne Sobczak, Attorney, Claims, Labor, and Personnel Law, General Legal

Services, Internal Revenue Service, 950 L'Enfant Plaza, SW 2d Floor, Washington, D.C. 20024,

202-283-7923.

**2. Plaintiff's Statement of the Case**.

On October 19, 1999, Plaintiff Tessa Bergman ("Plaintiff"), a GS-14 employee of Defendant Department of the Treasury, made a written request for a reasonable a job transfer as an accommodation under the Rehabilitation Act (the "Act") due to acute depression. On December 3, 1999, a physician retained by the Department of the Treasury to evaluate Ms. Bergman determined that Plaintiff had a disability that required a reasonable accommodation under the Act and recommended a job transfer to a position involving legal work as the appropriate accommodation. Defendant subsequently determined that Plaintiff had a disability that obligated Defendant to find a reasonable accommodation under the Rehabilitation Act.

In early December 1999, after Defendant determined that Ms. Bergman had a disability that required a reasonable accommodation, Plaintiff notified her supervisors that several attorney positions were then open in the IRS Office of Chief Counsel (OCC) at her present grade level in the same work area, Washington, D.C. Plaintiff is an income and international tax attorney with an LLM in taxation who had previously worked in the OCC and who had left that office on good terms. Defendant did not transfer Ms. Bergman to one of the open OCC positions at her grade level in Washington. Defendant instead transferred Plaintiff to a GS-12 estate tax position in the Virginia/West Virginia field office approximately four months later in March 2000.

Plaintiff  filed a complaint alleging that Defendant Department of the Treasury failed to provide her with a reasonable accommodation, unnecessarily and willfully delayed in finding her a reasonable accommodation, intentionally failed to provide a reasonable accommodation and took retaliatory action against Plaintiff. This action followed.

**Defendant's Statement of the Case.**

This case is brought under the Rehabilitation Act of 1973, as amended in 1992. Plaintiff alleges that she is a qualified individual with a disability and that following her request for a reasonable accommodation the defendant violated the Rehabilitation Act, inter alia, because it took over four and one half months to find her a new position, she was not reassigned to attorney positions she wanted as details or on a permanent basis, and the agency was not sufficiently responsive and interactive with her during the search for an accommodation. Plaintiff also alleges that the defendant retaliated against her because of her request for an accommodation.

Plaintiff contends that she should have been transferred to a vacant position in the Chief Counsel's Office in November 1999, and that the 4 "/z months between her request for accommodation and her transfer to an attorney position in the IRS was unreasonable.

Defendant's position is that there was no violation of the Rehabilitation Act or retaliation. Plaintiff is not a qualified individual with a disability, as the term "disability" is defined by pertinent laws and regulations, and had no right to any accommodation under the Act. Defendant also denies that it violated the Rehabilitation Act by not being sufficiently responsive and interactive with plaintiff; although under the Act defendant was not legally required to accommodate plaintiff with an attorney position, at the recommendation of a contract doctor, defendant in good faith did seek an attorney position for plaintiff. Defendant offered plaintiff an attorney position within the IRS with retained pay, and made other accommodations for her. Plaintiff accepted the attorney position which was offered. Even if plaintiff had been "disabled" as defined by the law and regulations, at the time in question, the regulations in effect did not require that an individual with a disability be transferred to a position outside of the IRS, to the

Office of Chief Counsel, as an accommodation. Additionally all actions of the agency were done for legitimate non-retaliatory reasons.

### 3. Statement of Claims and Defenses.

**Plaintiff's Statement of Claims**.

Plaintiff claims that she was denied a reasonable accommodation under the Rehabilitation Act (the "Act") and was subject to unlawful discrimination and retaliation under the Act.

To prove this claim, Plaintiff must show that she had a disability, that she was a "qualified individual" and that Defendant denied her a reasonable accommodation. Plaintiff claims that Defendant failed to provide her with a reasonable accommodating under the Rehabilitation Act when it refused to transfer her to open, funded positions in the IRS Office of Chief Counsel at her then current grade level (GS 14 step 6) and instead delayed the job transfer for approximately four months and then moved Plaintiff to a lower level position (GS 12, Step 00) in the West Virginia-Virginia field office of the IRS.

In the administrative proceedings below, Defendant conceded that Plaintiff was disabled and was a qualified individual with a disability. No less than three managers of Plaintiff, including one of the most senior executives of the IRS, testified unequivocally on multiple occasions both in deposition and at the administrative hearing, that Defendant made a determination that plaintiff had a disability that required Defendant to provide a reasonable accommodation to Plaintiff under the Rehabilitation Act. On summary judgment, defendant admits that it made these determinations but states that Defendant was "mistaken" in finding that Plaintiff had a disability within the meaning of the Act.

A plaintiff may establish that she has a disability within the meaning of the Act by

4

showing actual evidence of a disability, evidence of a record of a disability or evidence that the employer regarded the employee as disabled, even if she is not disabled at all. In this case, Plaintiff intends to offer proof that she did in fact have a cognitive disability and that Defendant had a record of such disability. In addition, Plaintiff intends to offer evidence that Defendant "regarded" Plaintiff as having a disability based on the testimony of its witnesses that Defendant determined that Plaintiff had a disability that required Defendant to offer her a reasonable accommodation under the Act. There apparently is no dispute that Plaintiff is a "qualified . individual" with respect to the open positions in Office of Chief Counsel as she had previously worked in that office and served with distinction.

An employer is obligated to engage in an interactive process whereby an employee seeking a reasonable accommodation must be consulted on an ongoing basis to identify specific job positions that could accommodate her disability. Plaintiff intends to present evidence that Defendant denied her a reasonable accommodation by refusing to engage in an interactive process. Plaintiff expects that the evidence will show that Defendant excluded her from the reasonable accommodation process and refused to even respond to requests from Plaintiff and her counsel concerning efforts to find a reasonable accommodation for Plaintiff.

With respect to the reasonable accommodation claims, Defendant's sole defense below was that it was not obligated to transfer Plaintiff to an open position in the IRS Office of Chief Counsel because the IRS Office of Chief Counsel is not part of the IRS. Defendant makes that same argument here. Assuming arguendo that Chief Counsel is not part of the IRS, Defendant's position would require the Court to find that a 1992 amendment to the Rehabilitation Act did not become effective until 2002, because the EEOC waited ten years to promulgate new regulations

5

under the law (even though the statutory history indicates clearly that the law is effective upon enactment). This is an issue of law for the Court to decide.

Plaintiff will present evidence that Defendant intentionally discriminated against her and retaliated against her for pursuing a reasonable accommodation. Plaintiff intends to call John Burns, an IRS EEO officer who is expected to testify that, after Defendant determined that Defendant determined that Plaintiff had a disability that required obligated Defendant to find at reasonable accommodation. Mr. Burns will testify that a senior IRS executive stated repeatedly that he would not transfer Plaintiff to Office of Chief Counsel because he did not want to "move a problem." In addition, Plaintiff will present evidence that Defendant retaliated against Plaintiff by: 1) requiring her to sit at her desk for eight hours and do no work while at the same time having her office mate monitor her telephone and computer use; 2) charging Plaintiff as absent without leave when she was on approved medical leave; 3) refusing Plaintiff's request for religious leave; and 4) otherwise subjecting Plaintiff to abusive treatment.

**Statement of Defenses**.

**Plaintiff is not an individual with a disability**

Plaintiff, by training, is an attorney with a Masters Degree in Taxation and who studied for and passed the Patent Bar. From 1984 to 1987 she was an attorney advisor in the Office of Chief Counsel of the Department of the Treasury. She left the Chief Counsel's Office to join a private law firm and later worked for a congressman as his tax counsel and legislative director. In 1995 she was hired by the IRS in the Office of Legislative Affairs as a legislative analysis officer. That position is not classified as an attorney position. The Office of Legislative Affairs underwent a reorganization, and she "expressed a desire to return to the Office of Chief

6

Counsel." However, in about August 1998, she spoke with the chief of Communications who suggested that in addition to the Office of Chief Counsel she also consider going to a new office which was just being developed, the Office of Public Liaison and Small Business Affairs in IRS. The position in the new office sounded interesting to plaintiff, so she joined the Office of Public Liaison and Small Business Affairs in September 1998.

The position in the Office of Public Liaison and Small Business Affairs also was not classified as an attorney position. It was a Management and Program Analyst position. Plaintiff became disenchanted with the position feeling that it did not utilize her "significant tax and tax-related small business experience."

By letter dated October 21,1999, plaintiff through her doctor requested that plaintiff be given an accommodation under the Rehabilitation Act of restructuring her position so that the functions of her position include the full time practice of law, or a transfer to the Office of Chief Counsel.The letter stated that "The reason for this is that Ms. Bearman's self esteem is at a very low level in her current position. Without this accommodation, her health is likely to deteriorate, forcing her to be hospitalized and unable to work." A letter previously submitted by the doctor had stated that plaintiff suffered from low grade chronic depression and was relapsing into major depression.

Defendant does not dispute that plaintiff has an impairment, low grade chronic depression. Defendant also does not dispute that Dr. Nowak stated that plaintiff was relapsing into the impairment of major depression in approximately October 1999. However, defendant does dispute that plaintiff's impairments met the standard which required that she be accommodated pursuant to the Rehabilitation Act, because plaintiff's - low grade chronic

7

depression and major depression beginning in about October 1999 -- did not substantially limit

any major life activity.

The federal regulations provide that substantially limits means:

1. unable to perform a major life activity that the average person in the general
population can perform; or
2. significantly restricted as to the condition, manner or duration under
which an individual can perform a particular major life activity as compared

to the condition, manner, or duration under which the average person in
the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The major life activities which plaintiff alleges were substantially

impaired by her chronic low grade depression and major depression are 1) cognitive impairment,

limitation of plaintiff's "ability to think and concentrate", ?? Caring for herself?? and 2) ?work.

Plaintiff cannot meet her burden of showing that she was unable to perform a major life activity

that the average person in the general population can perform, nor has she shown a significant

restriction of a particular major life activity as compared to the average person in the general

population.

(3) With respect to the major life activity of working

(i) The term substantially limits means significantly restricted in the ability to
perform either a class of jobs or a broad range of jobs in various classes as
compared to the average person having comparable training, skills and abilities.
The inability to perform a single, particular job does not constitute a substantial
limitation in the major life activity of working.

29 C.F.R. § 1630.2. Plaintiff, who is a tax and patent lawyer by training, with a Masters Degree

in Biotechnology from Johns Hopkins University, has not shown that her impairment disqualified

her from the myriad job possibilities available in the Washington Metropolitan area as compared

8

to the average person having comparable training, skills and abilities. Thus, plaintiff is not a

person with a disability as defined by the Act and is not entitled to the accommodation requested

under the Act.

**Plaintiffs accommodation request was not reasonable**

The ADA defines the term "discriminate" to include

not making reasonable accommodations to the known physical or mental
limitations of an otherwise qualified individual with a disability who is an
applicant or employee, unless such covered entity can demonstrate that the
accommodation would impose an undue hardship on the operation of the business
of such covered entity.

42 U.S.C. § 12112(b)(5)(A).

Dr. Nowak has attested that plaintiffs low-grade clinical depression "in no way

limits her intellectual functioning," and that plaintiffs acute depression "did not interfere at

all with her performing duties as a tax lawyer." Doctor Nowak's letter of October 21 stated the

reason for her recommendation -- that plaintiff's job be restructured to the full-time practice of

law or alternatively a transfer to the Chief Counsel's office - as follows: "The reason for this is

that Ms. Bearman's self esteem is at a very low level in her current position."  IF at p. 61..

Making an accommodation on the basis of plaintiff's self esteem -- i.e. plaintiff s

perception of what work was demeaning or boring to her - would impose an impractical

obligation on defendant and would impose an undue hardship not only on defendant's operation,

but also the operations of any employer.

**The defendant engaged in the "interactive" process required by the ADA**.

Because the interactive process is not an end in itself, it is not sufficient for [the
employee] to show that the [employer] failed to engage in an interactive process

or that it caused the interactive process to break down. Rather, [the employee] must show that the result of the inadequate interactive process was the failure of the [employer] to fulfill its role in 'determining what specific actions must be taken by an employer' in order to provide the qualified individual a reasonable accommodation.". ... The interactive process begins when an employee requests an accommodation. Once this process has begun, both the employer and the employee have a duty to act in good faith, . . .and the absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation.

*Pantazes v. Jackson*, 366 F.Supp.2d 57, 70 (D.D.C.2005)(citations omitted).

Beginning in October 1999, plaintiff requested a series of accommodations which defendant considered and acted upon in a reasonable, good faith manner. Defendant's good faith actions included allowing plaintiff to take medical leave, giving plaintiff 240 hours of advanced sick leave, assisting plaintiff to enter the leave sharing program, and when plaintiff had exhausted all of her sick leave, annual leave and advanced sick leave, defendant granted her request for an additional four weeks of leave without pay. When plaintiff requested to return to work on a limited revised schedule, defendant granted that request. In January 2000, when defendant's managers became concerned because of her mention of a life and death situation, plaintiff was placed on indefinite leave with pay, pending receipt of an evaluation from Dr. Nowak Defendant also explored whether plaintiff could be placed on a detail, explored whether there was an attorney vacancy in three organizations within the IRS in the local area that had GS905 attorney-advisor positions, and with the Office of Chief Counsel. Having obtained no positive responses for a position for plaintiff in the local area, the search was expanded to IRS offices in Maryland, Delaware, Richmond and Virginia/West Virginia. Plaintiff was offered a position in Virginia/ West Virginia at its Bailey's Crossroads Office, as a Grade 12 attorney, with pay retention. Plaintiff accepted the position.

**Plaintiff Had No Right to Transfer to the Office of Chief Counsel**

Plaintiff contends that the agency could not limit its search for transfer options to the

appointing authority of the IRS, but was required to transfer her to the Office of Chief Counsel.

At the times pertinent to this case, 29 C.F.R. § 1614.203 (g) provided

> When a nonprobationary employee becomes unable to perform the essential
> functions of his or her position even with reasonable accommodation due to a
> handicap, an agency shall offer to reassign the individual to a funded vacant
> position located in the same commuting area and serviced by the same appointing
> authority, the essential functions of which the individual would be able to perform
> with reasonable accommodation if necessary unless the agency can demonstrate
> that the reassignment would impose an undue hardship on the operation of the
> program. In the absence of a position at the same grade or level, an offer of
> reassignment to a vacant position at the highest available grade or level below the
> employee's current grade or level shall be required.

29 C.F.R. § 1614.203 (g). This C.F.R. section was not amended until May 21, 2002. See 29

C.F.R. § 1614.203 (b).

IRS and the Office of Chief Counsel have distinctly separate appointing authorities.

Therefore, even if plaintiff had been protected by the ADA and the Rehabilitation Act, transfer to

the Office of Chief counsel was not required.

**Retaliation**

Plaintiff's complaint alleges that she was retaliated against for asserting her rights under

the Rehabilitation Act. The defendant denies that there were any acts of retaliation nor any

intention to retaliate against plaintiff. Further, defendant had legitimate non-retaliatory reasons

for its actions.

**January 1999 to October 4, 1999, given secretarial and clerical duties and
was not given work to perform at a GS-14 level**

Plaintiff made her request for an accommodation through the October 22, 1999 letter of her

attorney. Plaintiff's initial contact with an EEO counselor concerning her request for accommodation was on December 15, 1999. Therefore, there can be no causal connection between her request for accommodation and alleged actions which occurred before her request for accommodation.

### November 19, 1999, management intervened in a payment arrangement ... regarding repayment of monies owed to the IRS and threatened potential disciplinary action

In September 1998, plaintiff incurred a debt to the IRS as the result of an emergency salary payment of $1,321.86. The IRS records reflect that plaintiff submitted a personal check to IRS for the amount owed in October 1998, but that the check bounced due to insufficient funds in plaintiff's account. Id. In September 1999, plaintiff paid $50. IF at p. 191.

Plaintiff's complaint to the EEO alleged that Ms. Sottile had her supervisor intervene in a payment arrangement plaintiff had made with customer service and that Sottile had the date of the repayment accelerated by 6 weeks to a time when she knew plaintiff would be on leave without pay status. Plaintiff also claimed that after she had paid she was threatened by my supervisor with potential disciplinary action."

Plaintiff's supervisor, Mr. Fulcher, was notified of plaintiff's debt in November 1999 when a Customer Service employee called him, because plaintiff had not been returning her calls. He found out about the bounced check and that an arrangement had been made to repay the balance over a period of time. However, in the intervening year only one payment had been made and that was for the amount of $50. Mr. Fulcher "met with Labor Relations to obtain some guidance from them and the result was that three days later, November 16th, a memorandum was sent to Ms. Bearman stating that the payment needed to be made by ... December 10th, or that

disciplinary action could be taken." *Id*. at p. 379. He issued plaintiff a letter dated November 16, 1999. IF at p. 189. The letter cited to the ethical standard which requires employees "to satisfy in good faith" their financial obligations, and stated "In good faith means an honest intention to fulfill any just financial obligation in a timely manner. Failure to meet this standard can result in disciplinary action up to and including removal. Therefore, it is mandatory that you promptly repay, in full, you outstanding debt no later than December 10, 1999. . . ." *Id*. Plaintiff paid off the debt by check dated December 6, 1999 IF at p. 190. No disciplinary action was taken against plaintiff. IF at p. 247; EEOTr:Fulcher at p. 379.

Plaintiff has failed to meet her burden of showing any material adverse action. Plaintiff owed $1,321.86 to the IRS. In October of 1998 she issued to IRS a check which bounced. In over a year she had made only one payment, a $50 check issued on September 23, 1999. IF at p. 191. Therefore, she owed the IRS $1,271.86. Plaintiff made the payment on December 6. No disciplinary action was taken. Plaintiff has not established how paying a debt that she owed is a material adverse action. Indeed it appears that she did not even have to pay interest on the amount owed. Advising that disciplinary action could be taken is not a material adverse action. In the alternative, the legitimate non-retaliatory reason for Mr. Fulcher's action is that after learning of plaintiff's debt and its history, he consulted Labor Relations for guidance and the November 16 letter resulted from their guidance. The IRS is an agency which imposes stiff interest and penalties on taxpayers who are slow or delinquent in paying their debts to the IRS. It is not surprising that they would seek payment of such an outstanding debt from an employee.

**December 1999, plaintiffs request for compensatory leave for religious observation was denied**

Although plaintiff was authorized leave without pay until December 28, 1999, Dr. Nowak sent to the labor relations office a letter dated December 3, 1999, stating that plaintiff must return to work the next week and that plaintiff was sufficiently improved to be able to return part-time with short term accommodations. However, plaintiff did not return to work the next week. Instead, plaintiff sent to her supervisor, Mr. Fulcher, a letter dated December 7, 1999, which requested advanced religious comp time for the week and indicated plaintiff would be returning to work beginning the week of December 13. 1999..

By letter dated December 9, 1999, Mr. Fulcher advised plaintiff that her request for 40 hours advanced religious compensatory time was denied. The letter advised her that any time missed for the week of December 6th would be charged as leave without pay. He explained that the federal regulations provide that religious compensatory time should be granted unless granting the time "interferes with the efficient accomplishment of an agency's mission. Pursuant to the Service's Time and Leave Handbook the Service has determined that the efficient accomplishment of its mission may be interfered with if, `no opportunities are foreseen, within a reasonable length of time (120 days), at which the employee will be unable to repay. compensatory time taken.'". The records reflected that plaintiff already had a 42-hour religious compensatory time deficit which had been in existence since at least January 1, 1999 Plaintiff also had failed to follow office procedure requiring that leave be requested in advance. Id. Such a request is to be made 15 business days in advance of the anticipated start date. Thus, the legitimate non-discriminatory reason for Mr. Fulcher's action is reflected in his December 9, 1999 letter. Id. at 380-382..  After plaintiff returned to work, she sent Mr. Fulcher an e-mail on December 16 stating that the time and attendance records were incorrect and that she only owed

14

18 hours from 1997 and 1998. Plaintiff's inability to repay the 18 hours in that two year period

supports Mr. Fulcher's belief that she would be unable to repay any additional advanced

compensatory time within a 120 day period.

### Plaintiff was charged Absent without Leave (AWOL) 6 hours on December 13, 1999, 6 hours on December 14, 1999 and 2 hours on December 15, 1999

Plaintiff's request for advance religious compensatory time had stated that she would be

returning to work on December 13. The letter from plaintiff's doctor had stated that she would be

starting work the week of December 5, but only from LOAM to 4PM. IF at p. 73. However,

plaintiff was absent on December 13th and 14th and two hours late on December 15. Plaintiff's

doctor did not give any excuse for plaintiff being absent. Plaintiff did not call in to tell Mr.

Fulcher she would not be working those days. She received an e-mail from Mr. Fulcher on

December 16, 1999. It advised that she was being placed on Absent Without Leave (AWOL) for

6 hours on December 13, 6 hours on December 14 and 2 hours on December 15. IF at p. 91.

Plaintiff has not established that placing her on AWOL is a material adverse action.

Plaintiff stated "The letter said I was approved for leave without pay status through December

28th and I would be expected to return to work on December 28th, 1999. It was my

understanding that my absences were excused, not pay status, but excused through December

28th of `99." EEOTr: Bergman at p. 150.(emphasis added). Since plaintiff would not be in a pay

status whether designated as AWOL or LWOP, there was no material adverse action.

Additionally, as is reflected in his memorandum, it was Mr. Fulcher's understanding that

plaintiff was returning to work on December 6, and plaintiff had said in her request for advance

comp time that she would be returning December 13 per Dr. Nowak's letter. Doctor Nowak's

letter can reasonably be interpreted as meaning that plaintiff no longer needed the advance leave since plaintiff could return to work on a limited work schedule basis. Plaintiff had not contacted Mr. Fulcher and had not requested leave for the 6 hours she was expected to work on December 13, 14, and 2 hours on Dec. 15. Thus, he reasonably believed her to be away without leave.

**The plaintiff's repeated requests to be placed on a 120-day detail, as an interim accommodation, was ignored**.

Plaintiff has offered no proof that a request for a detail was ignored. About December 16, 1999, the issue of a detail with Appeals came up. There were issues as to whether there was a vacant position and how it was going to be funded. Id at p. 412. On January 6, 2000 the issue of the detail to Appeals was discussed. Just the day before, plaintiff had called the Commissioner's Office.. "It was agreed that her comments to Steve may or may not be construed as suicidal but that IRS should come down on the side of caution until someone qualified could make that determination." Therefore it was decided that Dr. Presant should contact plaintiff's doctor. In relation to the detail, "We tentatively agreed that work on the detail should be delayed until the medical issue was resolved."Id. Plaintiff was told not to come into the office on January 6, and was placed on paid administrative leave. Dr. Nowak responded to the agency's inquiry about when plaintiff could return to work by letter dated January 21, 2000, "Ms. Bearman should not be required to return to work until such time as her request for a reasonable accommodation is acted upon."

On February 1, 2000, Mr. Fulcher was advised that Dave Williams did not want to pay for the detail and that they should check to see if Appeals would pay for the detail. EEOTr: at Fulcher Ex. 2 at Bates # 27. On February 3, Mr. Fulcher inquired whether Appeals would be

willing to absorb the cost of plaintiff's detail since his division was picking up the costs associated with an appeals employee detail. Id. On February 8, 2000, Mr. Fulcher was advised that Appeals could not fund the detail. Thus, plaintiff has not offered proof that her request for a detail was ignored.

### On December 23, 1999, management monitored the plaintiffs telephone calls and use of the internet

Plaintiff's claimed that, Ms. Sottile had Mr. Fulcher monitor her phone calls and use of the Internet on December 23, 1999, 2 days before Christmas. Plaintiff and Mr. Fulcher shared an office, and they sat approximately three to five feet apart. The seating arrangement remained the same when he became her supervisor. Id. at p. 36. There was no partition between them. "A. My desk was behind me, his desk was behind him, so we faced -- we could -- if we turned around we faced each other. He could see my computer. He could see what I was looking at on my computer and he could hear my phone conversations." Bergman 2007 Depo at p. 36. Plaintiff related that one day Mr. Fulcher was watching what she was doing on the computer and told her that it was against office policy to surf the internet. Plaintiff related that on one occasion Mr. Fulcher heard her making a telephone call to her father and told her it was against office policy to make personal calls. No disciplinary action was ever taken against plaintiff.

Mr. Fulcher's affidavit reflects that he did not systemically monitor plaintiff's or any other employee's use of the telephones and internet. He did notice non-government related activity on plaintiffs screen; plaintiff was not issued an official reprimand or any type of discipline. Id. Thus, plaintiff has failed to establish that any material adverse action occurred.

### On January 3, 2000, the plaintiff was expected to perform the work of a full time employee while working part-time

Plaintiff testified that she did not have any work assignments when she came back on December 15, other than making one or two telephone calls. EEOTr:Bergman at p. 150-151 Plaintiff was asked: "What did you do in your job during this time frame after December 15th?" She responded: "Basically for the time I was there, I was required to sit at my desk and look busy." Id. at p. 153. When asked "Did you have any work assignment whatsoever?" Plaintiff responded "No." *Id*. at p. 155.

By her own admission plaintiff did little to no substantive work after she returned part time. Plaintiff had not identified any full-time work assignment which she was required to do on January 3, 2000. Plaintiff has shown no material adverse action.

**During the week of February 3, 2000 the plaintiff's attorney was subjected to abusive language by GLS employees when plaintiff's attorney requested the status of plaintiffs requests for accommodation.**

The use of abusive language to someone other than plaintiff is not an action against plaintiff, much less an adverse action.

In the incident in question, an agency counsel hung up on plaintiff's counsel "in a fit of pique" IF at p. 275. Plaintiff's counsel called and "demanded that I get to the bottom of some AWOL charges against her client. Because the Complainant had a number of leave issues, I asked her attorney for the particulars of the AWOL charges and the dates of the AWOL charges. Her attorney responded that she did not know. I then suggested to the attorney that it would be difficult for me to get to the bottom of the matter if she could not even provide me with the necessary information. The Complainant's attorney then asked for the name of my supervisor. I provided his name and telephone number and hung up." *Id*.

**On February 26, 2000, the plaintiff was denied a within grade increase to a**

**GS-14 step 6**

Plaintiff did not allege that her supervisors affirmatively denied her a within grade increase. Rather, she alleged "Had management responded to my request for reasonable accommodation, and avoided the unnecessary delay in at least providing a temporary accommodation, it would not have been necessary to take leave without pay and I would have received a within grade increase to GS-14 step 6 in February 2000." IF at p. 115.

' Neither Ms. Sottile nor Mr. Fulcher took any affirmative steps to deny plaintiff a within grade increase. IF at p. 248, 257.  ' Plaintiff got her step increase: "Just prior to my accepting reasonable accommodation with the pay retention agreement I had got my step increase to a Step 6, and it was the GS-14, Step 6 salary to which the pay retention applied." EEOTr:Bearman at p. 184.

As this court has ruled:

> it is well-settled that in assessing whether a Title VII violation has occurred the "proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.

*Jarmon v. Powell*, 208 F.Supp.2d 21, 30 (D.D.C.2002). Thus, in assessing whether plaintiff has met her burden concerning this particular claim of retaliation, the consequence of alleged prior acts is not relevant. Plaintiff alleges no affirmative act of reprisal, only the consequence of a prior act. Therefore, plaintiff has failed to sustain her burden of showing a prima facie case of retaliation.

**On January 6, 1999, the manager delayed responding to plaintiff's request regarding the decision to place the plaintiff on paid administrative**

As has been discussed above, a decision was made on January 6, 2000, to place plaintiff on administrative leave with pay for an indefinite period. EEOTr: Fulcher at p. 389-390. This

was communicated telephonically to plaintiff on January 6th. Plaintiff asked her supervisor, Mr. Fulcher, to confirm the decision in a letter to her as soon as possible. IF at p. 108. Plaintiff was sent a letter dated January 12, 2000. Plaintiff alleged that Ms. Sottile "deliberately attempted to delay the sending of the confirmation letter ...and to get the decision revoked." IF at p. 108.

Plaintiffs allegation of an "attempt" fails to even allege, much less prove, a material adverse action. Mr. Fulcher advised that it took to January 12 to get the letter out because "The memorandum was pretty sensitive and we wanted to make sure we were acting appropriately, that the wording was correct, and the letter ...went to more than one person, it went through Labor Relations. It just took some administrative time to insure it was prepared correctly and met our needs as well as the employees." EEOTr:Fulcher at p. 391-92.

**4. Stipulations**.

**The parties stipulate to the following uncontested facts:**

1. From September 1998 through March 27, 2000, Plaintiff was an employee of Defendant Department of Treasury, working as a Management Program Analyst in the Office of Public Liaison and Small Business Affairs of the Internal Revenue Service.

2. Through March 27, 2000, Plaintiff was employed at GS 14, Step 6, on the government pay scale.

3. On or about October 22, 1999, Plaintiff submitted a written request for a reasonable accommodation under the Rehabilitation Act of 1973, as amended (the "Act").

3a. Restructuring of plaintiff's job as requested was not possible.

4. Beginning in early December 1999 and continuing until March 27, 2000, there were open attorney positions in the Office of Chief Counsel in Washington, D.C., at Plaintiff's grade

level.

     5. In 1999 Plaintiff requested reassignment to an open attorney position in the Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level.

     6. Between December 3, 1999, and March 27, 2000, the open attorney positions in OCC were the only attorney positions at Plaintiff's grade level open in the Department of Treasury in the Washington, D.C., metropolitan area.

     7. Plaintiff was qualified for an open attorney position in the Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level.

     8. Beginning December 3, 1999, and continuing through March 27, 2000, Defendant did not reassign Plaintiff to one of the open attorney positions in the Office of Chief Counsel in Washington, D.C., at Plaintiff's grade level.

     9. On or about March 7, 2000, Plaintiff was offered a position as an estate tax attorney in the Virginia field office of the IRS as a reasonable accommodation under the Act. The position was a GS 12, Step 00, position on the government pay schedule.

     10. Plaintiff accepted the transfer to the Virginia field office as an estate tax attorney GS 12, Step 00, in early March 2000


**5. Witnesses**.

    **Plaintiff:**

*Tessa Bergman*. Ms. Bergman will testify to the facts and circumstances that give rise to this claim and to the damages she suffered. Time estimate: 3 hours direct.

*John Burns*. Mr. Burns is expected to testify to the facts and circumstances surrounding

Plaintiff's claims and the efforts of Defendant to find a reasonable accommodation for Plaintiff. He will testify consistent with the testimony at the hearing in this case. Time estimate: 45 minutes direct.

*Judith Nowak, MD.*\* Dr. Nowak will offer testimony concerning Plaintiff's disability consistent with her testimony at the hearing in this case, her deposition and the affidavits she submitted on summary judgment. Time estimate: 2 hours direct.

*Barry Fulcher*. Employee of Defendant. Likely testimony by deposition and/or hearing testimony and, if necessary, by live testimony on issues designated below. Time estimate: 1 hour direct.

*Susan Nizer*. Employee of Defendant. By deposition and/or hearing testimony and, if necessary, by live testimony on issues designated below. Time estimate: 10 minutes direct.

*Susanne Sottile*. Employee of Defendant. Likely testimony by deposition and/or hearing testimony and, if necessary, by live testimony on issues designated below. Time estimate: 20 minutes direct.

*David Williams*. Employee of Defendant. Likely testimony by deposition and/or hearing testimony and, if necessary, by live testimony on issues designated below. Time estimate: 20 minutes direct.

*Stuart Fields*. Employee of Defendant (IRS). Brief testimony concerning Defendant's obligation to transfer Plaintiff to the Office of Chief Counsel. Time estimate: 25 minutes direct.

*Julie Barry*. Employee of Defendant (OCC). Brief testimony concerning Defendant's obligation to transfer Plaintiff to the Office of Chief Counsel. Time estimate: 25 minutes direct.

*Francine Weiss, Esq.,* Ms. Weiss was formerly counsel to Plaintiff and may testify regarding efforts to find a reasonable accommodation for Plaintiff. Estimated time: 30 minutes.

22

*A representative of the Department of the Treasury*. Brief testimony concerning job openings in the Office of Chief Counsel if stipulations cannot be reached. Estimated time: 10 minutes direct.

*A representative of the Office of Personnel Management*. Brief testimony concerning job openings in the Office of Chief Counsel if stipulations cannot be reached. Estimated time: 10 minutes direct.

*A representative of the Office of Chief Counsel*. Brief testimony concerning job openings in the Office of Chief Counsel if stipulations cannot be reached. Estimated time: 10 minutes direct.

*Any witness listed by Defendant*.

**Defendant:**

Susan Sottile - upper level supervisor, can testify about response to plaintiffs request for accommodations, and legitimate reasons for defendant's actions. (1 hour)

Barry Fulcher - plaintiff's first line supervisor, can testify about plaintiff's job functions, the response to plaintiff's request for accommodations, and legitimate reasons for defendant's actions. (4 hours)

David Williams -- can testify about response to plaintiffs request for accommodations and legitimate reasons for defendant's action. (1 hour)

Mr. Fitzpatrick -- Sotille's Deputy, can testify about response to plaintiff's request for accommodations and legitimate reasons for defendant's actions. (1 hour).

Neil Presant -- occupational medicine consultant with the Department of Health and Human Services, can testify about response to plaintiff's requests for accommodation. (1 hour)

Judith Nowak* -- plaintiff's psychiatrist, can identify her treatment progress notes and testify about plaintiff's impairment. (5 hours)

23

Martin Allen* -- psychiatrist who conducted independent examination of plaintiff can testify about plaintiff's impairment and alleged injuries. (1 hour)

Madeline Mendola -- Labor Relations, can testify about actions to process plaintiffs request for accommodation. (1 hour)

Kathy King -- EEO Specialist, can testify about actions to process plaintiffs request for accommodations. (1 hour)

Joan McIver -- Acting Section Chief for Labor Relations, can testify about processing of plaintiffs accommodation request.(1 hour)

Julie Barry -- GLS Attorney, can testify about her conversation with plaintiff's counsel, an alleged to be an act of retaliation; and the processing of plaintiffs accommodation request. (30 minutes)

Susan Nieser-- can testify about IRS separate hiring authority. (30 minutes)

Peter Vasquez, Jones Janet Jones, Melissa Smith - - HR Specialist, can testify to plaintiff's actual pay under retained pay vs. continued GS-14 pay. (1 hour)

Representative for Office of Chief Counsel - to testify about separate hiring authority (45 minutes)

William Branch - former supervisor Supervisory Attorney (Estate Tax)) (15 minutes) -

Elliott Pleeners - Supervisory Attorney (Estate Tax) - current supervisor (15 minutes)

Any witness listed by plaintiff

**6. Exhibits**:

Exhibit Lists of Plaintiff and Defendant are attached.

Defendant reserves the right to introduce exhibits on plaintiff's exhibit list as well as

documents needed for impeachment or rebuttal.

Defendant objects to the following exhibits offered by plaintiff:

Exhibit No 28 – Defendant does not object to business records of the IRS which appear in the investigative file, such as the memoranda and letters referred to in Exhibits 1-25.  Defendant does object to materials in the investigative file which constitute inadmissible hearsay such as affidavits, statements, the investigator's summaries and administrative investigative materials having no relevance to the facts of the case.

Defendant objects to plaintiff's exhibits #19, 26, 27 because defendant is unable to ascertain what the exhibits are.

Exhibits No.29,30, 39, 41, 42, 43, 46, 47, 48, 56, 57, 58 – submitted on July, 2, defendant had been unable to review them.

Defendant also objects to all portions of letters from plaintiff's attorneys which purport to state what the law pertaining to accommodations is or is not .

**7. Designation of Deposition Testimony**.

Plaintiffs and Defendant's Designations of Deposition Testimony and Designation of Hearing Testimony are  attached.

**8. Relief Requested**.

Plaintiff seeks the following:

a. Reinstatement to a Grade 14 and restoration of seniority, both on a retroactive basis, and order mandating that Defendant place Plaintiff as a GS14, step 8, AttorneyAdviser position in the Office of Chief Counsel, National Office, 1111 Constitution Avenue, N.W., Washington, DC.

b. Elimination of negative 42 hours of religious compensatory time.

c. Elimination of all remaining AWOL and LWOP hours and, accordingly, restoration of annual leave lost due to those designations.

d. Restoration of 120 hours of advanced sick leave authorized and taken.

e. Attorney's fees and costs (attorney's fees for the administrative proceedings and for this case currently exceed $135,000 and the claim will be based on the total amount due after trial).

f. Back pay in the amount of (approximately $70,000 depending on trial date). g. Damages for defendant's illegal discrimination and retaliation including pain, suffering and mental anguish.

**9. Pending Motions.**

Plaintiff's Motion for Partial Summary Judgment, Defendant's Motion for Summary Judgment, Plaintiff's Motion to Strike and Motion to File Supplemental Brief.

**10. Demonstrative Evidence.**

**Plaintiff**

Plaintiff intends to offer enlargements of exhibits and a demonstrative exhibit showing a calculation of damages.

**Defendant**:

Defendant anticipates offering a summary time line pertaining to the processing of plaintiff's accommodation requests, and a summary comparison of plaintiff's salary on retained salary versus continued GS 14 level pay.

Defendant requests that the Court have an "Elmo" device and video monitors in the court

room for trial so the parties may display documents to the jury.

### 11. Jury Instructions and Voir Dire

Proposed jury instruction and voir dire are attached.

### 12. Estimated Trial Time:

Plaintiff – Three days.

Defendant – Three days.

Respectfully submitted,

_____

John D. Quinn
SALE & QUINN, P.C.
910 16thStreet, N.W.
Suite 500
Washington, D.C. 20006 (202) 833-4170
Counsel for Tessa Bergman

_____

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____

RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____

RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970