**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
TESSA E. BERGMAN,             )
                              )
            Plaintiff,        )
                              )
      v.                      )        Civil Action No. 06-303 (GK)
                              )
HENRY M. PAULSON, JR.,        )
Secretary of the Treasury,    )
                              )
            Defendant.        )
_____)
```

<u>**MEMORANDUM OPINION**</u>

This case presents the following bizarre situation. A highly qualified and experienced specialist in tax law, working for the Internal Revenue Service ("IRS") at the Department of the Treasury, employed at a GS-14, Step 6 level, had no substantive work to do and therefore sought a transfer to the IRS Office of Chief Counsel where she had worked at an earlier time, had performed with distinction, and had received a cash bonus as well as a Certificate of Merit. Because of the lack of substantive work, which the Government does not deny, the Plaintiff's preexisting chronic, but mild and controllable, depression was exacerbated and deepened into a case of severe chronic depression. The Government seeks to block the transfer she seeks--not on the ground that she is not qualified to handle the work, not on the ground that she is not doing the work assigned to her at the IRS--not on the ground that the transfer is legally forbidden--but on the ground that such a

transfer is not legally <u>mandated</u>.  The practical result of the position the Government is taking in this case is that it would rather have the Plaintiff sit at her desk at the IRS doing virtually nothing, receiving a substantial salary ($79,999 in 1999) from the taxpayers of this country, than transfer her to the Office of Chief Counsel, which had 57 open attorney positions during the relevant period of time and where she had already served with dedication and success.

*  *  *

Plaintiff Tessa E. Bergman,[1] an employee of the IRS, brings this suit alleging disability discrimination and retaliation in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 <u>et</u> <u>seq.</u>, against Henry M. Paulson, Jr. in his official capacity as Secretary of the Treasury.  This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment as to the disability discrimination claim [**Dkt. No. 29**] and the Government's Motion for Summary Judgment as to all claims [**Dkt. No. 31**].  Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Plaintiff's Motion for Partial Summary Judgment is **granted** and the Government's Motion for Summary Judgment is **denied.**

---

[1] Plaintiff is often referred to as Theresa E. Bearman, her former legal name, in documents and deposition testimony in the evidentiary record.  <u>See</u> Dep. of Tessa Bergman, Mar. 12, 2007, at 6-7.  For the sake of clarity and consistency, the Court will refer to Plaintiff as Ms. Bergman throughout this Memorandum Opinion.

I.    **BACKGROUND**[2]

Plaintiff Tessa Bergman is a 1978 graduate of the University of North Carolina School of Law and received an L.L.M. degree in taxation from Georgetown University in 1982. From 1984 to 1988, she was employed as an attorney with the IRS Office of Chief Counsel, where she was awarded a Certificate of Merit and a cash bonus for her work. Following her work at the Office of Chief Counsel, she worked as a tax attorney for two nationally prominent law firms in Chicago. In 1993, she returned to Washington, D.C. to serve as tax counsel for Representative William Jefferson, and later, Senator John Breaux.

From 1998 to 2000, Plaintiff worked in the IRS Office of Public Liaison ("OPL") in a non-legal role as a GS-14, Step 6 Management Program Analyst. She alleges she had almost no work to do at OPL and that what work she did receive was usually clerical or administrative in nature. Neither party disputes that the position did not involve substantive legal work.

Plaintiff alleges that she has long suffered from mild chronic depression. This mild depression was easily managed with medication and did not interfere with her work. In October 1999 however, her therapist, Dr. Judith Nowak, diagnosed her with acute

_____

[2]    Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h) and the parties' summary judgment papers.

depression brought about by her lack of substantive work at OPL. On October 22, 1999, Plaintiff submitted a request to the IRS for a reasonable accommodation under the Rehabilitation Act.

At the request of the Government, Dr. Neil Presant, a consultant with the U.S. Department of Health and Human Services, later reviewed at least some of Plaintiff's medical records.[3] Based on his review of these records, Dr. Presant wrote a letter stating that it was "very plausible that a major contributor to her depression is low self-esteem resulting from being in a position in which the required work product is not commensurate with her training and abilities." Correspondence from Neil Presant to Joan McIver, Dec. 3, 1999. Therefore, he concluded, "I would recommend from a medical point of view that she be accommodated with a position appropriate to her legal and educational background if there is such a position available in your agency." Id.

According to the deposition testimony of IRS employee Barry Fulcher, given on behalf of the Department of the Treasury pursuant to Fed. R. Civ. P. 30(b)(6), the IRS concluded that it was required to provide a reasonable accommodation for Plaintiff, based on Dr. Presant's findings. Dep. of Barry P. Fulcher, Mar. 19, 2002 ("Fulcher Dep.") at 11-12. Accordingly, the IRS searched for a position for Plaintiff that would involve substantive legal work.

---

[3] The extent of Dr. Presant's review of Plaintiff's medical records is in dispute.

Between early December 1999 and March 27, 2000, there were fifty-seven open attorney positions in the IRS Office of Chief Counsel, Agency's Supplemental Resp. to Complainant's First Set of Interrogatories, Apr. 11, 2002, No. 6 ("Def.'s Supp. Interrog. Resp."), and on several occasions Plaintiff requested reassignment to one of those positions. During this same time period, there were no open attorney positions in the IRS, outside of the Office of Chief Counsel, at Plaintiff's grade level in the Washington, D.C. area.

The Government does not deny that Plaintiff met the minimum qualifications for the Office of Chief Counsel positions. The Government, however, claims that it did not reassign Plaintiff to any of those positions because the Office of Chief Counsel and the IRS were separate appointing authorities.[4] The Government argues it was therefore not obligated to reassign Plaintiff to a position at the Office of Chief Counsel under the then-operative language of 29 C.F.R. § 1614.203(g).[5]

---

[4] The parties do not contest that the IRS and the Office of Chief Counsel were separate appointing authorities.

[5] At all times relevant to the facts of this case, 29 C.F.R. § 1614.203(g) provided:

> When a nonprobationary employee becomes unavailable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade and level, the essential functions of which

Indeed, during the administrative review before the EEOC, the IRS admitted in response to Plaintiff's interrogatories that she was not offered a position in the Office of Chief Counsel because the IRS "had no legal obligation to place the complainant, an IRS employee, in a position in the Office of Chief Counsel because the Office of Chief Counsel and the Internal Revenue Service are separate organizations with separate personnel authorities." Def.'s Supp. Interrog. Resp. No. 4. Additionally, Susan Nieser, another witness deposed as a Treasury Department designee pursuant to Fed. R. Civ. P. 30(b)(6), testified that Plaintiff was denied a position only because "[s]he was not a part of the IRS Office of Chief Counsel." Dep. of Susan Nieser, Mar. 20, 2002 ("Nieser Dep.) at 18.

Plaintiff also alleges that she was subjected to retaliation after requesting a reasonable accommodation under the Rehabilitation Act on October 22, 1999. In December 1999, after she returned from a two-month absence from work, her supervisor, Barry Fulcher, allegedly informed her that the absence would be charged as absent without leave ("AWOL"), and not as medical leave. Later, Fulcher allegedly monitored Plaintiff's telephone and

---

the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program.

(emphasis added). The regulation remained in force until it was amended on May 21, 2002.

Internet usage.  Additionally, Plaintiff claims that she was given no substantive assignments after returning to work.  Fulcher also allegedly imposed "progressive disciplinary action" for Plaintiff's purported failure to repay a workplace loan that she contends had already been repaid.  Pl.'s Opp'n at 36.  Plaintiff additionally claims that Fulcher refused to grant her religious leave for Hanukkah.

Finally, Plaintiff alleges that David Williams, Chief of the OPL, "pressur[ed] his subordinates to reverse Dr. Presant's opinion, and he even went so far as to have a letter drafted instructing Plaintiff to submit to another medical examination."  Id. at 37.[6]

On March 7, 2000, the Government offered Plaintiff a lower grade position as an estate tax attorney in the IRS Virginia field office.  Plaintiff accepted the position and entered into a pay retention agreement with the Government, by which her pay was frozen at her then current pay level of GS-14, step 6.  As a result of accepting this position, Plaintiff was no longer eligible for step increases or full cost of living adjustments.  She therefore claims $68,328 in lost wages.

---

[6] Ironically, it was Williams, a former professional colleague of Plaintiff's, who persuaded Plaintiff to join the newly established Office of Public Liaison, which he was heading.

After exhausting her administrative remedies in extended proceedings before the EEOC,[7] Plaintiff filed her Complaint in this Court, alleging (1) disability discrimination and (2) retaliation in violation of the Rehabilitation Act. Plaintiff filed a Motion for Partial Summary Judgment on her disability discrimination claim. The Government filed a Motion for Summary Judgment as to both claims. Both Motions are presently before the Court.

## II.  STANDARD OF REVIEW

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, demonstrate that there is no "genuine" factual dispute and, second, that if there is it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact

---

[7] Following a lengthy evidentiary hearing, an EEOC Administrative Law Judge determined that the Government did not violate the Rehabilitation Act.

is "material" if it might affect the outcome of the case under the substantive governing law. <u>Liberty Lobby</u>, 477 U.S. at 248.

In its most recent discussion of summary judgment, in <u>Scott v. Harris</u>, ___ U.S. ___, 127 S. Ct. 1769, 1776 (2007), the Supreme Court said,

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 . . . (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Liberty Lobby</u>, 477 U.S. at 247-48.

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 248, 249. In both <u>Liberty Lobby</u> and <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment. <u>Liberty Lobby</u>, 477 U.S. at 255. In assessing a motion for summary judgment and reviewing the evidence the parties claim they will present, "the

Court must draw all reasonable inferences in favor of the non-moving party." <u>Reeves</u>, 530 U.S. at 150. "To survive a motion for summary judgment, the party bearing the burden of proof at trial...must provide evidence showing that there is a triable issue as to an element essential to that party's claim. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)." <u>Arrington</u>, 473 F.3d at 335.[8]

## III. ANALYSIS

### A. Summary Judgment Is Granted to Plaintiff on the Disability Discrimination Claim

#### 1. The Standards Applicable Under the Rehabilitation Act Are Those Contained in the Americans with Disabilities Act

On April 10, 1992, the EEOC promulgated a regulation governing the Government's obligation to reassign an employee under the Rehabilitation Act. The regulation, 29 C.F.R. § 1614.203(g), provided that "an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area <u>and serviced by the same appointing authority</u>."[9]   29 C.F.R. §

---

[8] It should be noted that a non-movant's affidavit may suffice to defeat a summary judgment motion if the parties' sworn statements are materially different. <u>Greene v. Dalton</u>, 164 F.3d 671, 674-75 (D.C. Cir. 1999); <u>Arrington</u>, 473 F.3d at 337.

[9] On May 21, 2002, the regulation was amended to delete this provision.

1614.203(g) (emphasis added).  The parties agree that the IRS and IRS Office of Chief Counsel are separate appointing authorities.[10]

On October 29, 1992, after the EEOC promulgated the version of 29 C.F.R. § 1614.203(g) quoted above, Congress amended the Rehabilitation Act to provide that "[t]he standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section <u>shall be the standards applied under title I of the Americans with Disabilities Act of 1990</u>."  Rehabilitation Act Amendments of 1992, Pub. L. No. 102-569, 106 Stat. 4344 (codified at 29 U.S.C. § 791(g)) (emphasis added) (hereinafter referred to as the "1992 Amendment").

Unlike the Rehabilitation Act, the Americans with Disabilities Act ("ADA") "contains no language limiting the obligation to reassign only to positions within a particular office, branch, etc., but advises that, '[r]ather, the extent to which an employer must search for a vacant position will be an issue of undue hardship.'"  <u>Flowers v. Henderson</u>, 1999 WL 767730, at *4, n.4 (E.E.O.C. Sept. 9, 1999) (quoting <u>EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans With Disabilities Act</u>, No. 915.002, question 27, p. 42 (Mar. 1,

---

[10] Both the Commissioner of Internal Revenue, 26 U.S.C. § 7803(a)(1)(A), and the Chief Counsel for the Internal Revenue Service, 26 U.S.C. § 7803(b)(1), are separately appointed by the President, by and with the consent of the Senate.

1999)).  Congress directed that the 1992 Amendment "shall take effect on the date of enactment of this Act."  Rehabilitation Act Amendments of 1992, Pub. L. No. 102-569, § 138, 106 Stat. 4344; Kemer v. Johnson, 900 F. Supp. 677, 681 n.6 (S.D.N.Y. 1995) (the 1992 Amendment was effective on enactment).

Despite Congress' clearly stated command that the standards applied for claims brought under the Rehabilitation Act "shall be the standards applied under [the ADA]," 29 U.S.C. § 791(g), the EEOC delayed for almost ten years before amending 29 C.F.R. § 1614.203(g) to finally make it consistent with the 1992 Amendment.

It is hornbook law that a regulation that is clearly inconsistent with the plain meaning of a statute is invalid.  Am. Fed'n of Gov't Employees v. Gates, 486 F.3d 1316, 1321-22 (D.C. Cir. 2007).  In this case, Congress plainly mandated that the standards applied under the Rehabilitation Act must be identical to the standards used in ADA cases.  Nevertheless, the pre-1992 Amendment Regulation, 29 C.F.R. § 1614.203(g), continued to state-- inaccurately and directly contrary to the 1992 Amendment --that the standards that would be applied to Rehabilitation Act cases would not also apply to cases arising under the ADA.  Because the original version of 29 C.F.R. § 1614.203(g) is therefore plainly inconsistent with 29 U.S.C. § 791(g), it must yield to the controlling statutory language.

Flowers v. Henderson, a 1999 EEOC decision, as well as 1999 interpretive guidelines issued by the EEOC, support this conclusion. In Flowers, the EEOC recognized that the limitation of an agency's reassignment obligation in 29 C.F.R. § 1614.203(g) to positions serviced by the same appointing authority no longer applied following enactment of the 1992 Amendment. 1999 WL 767730, at *4, n.4. In advising the Postmaster General of his obligations, the EEOC explained that under the 1992 Amendment "the ADA contains no language limiting the obligation to reassign only to positions within a particular office." Id.

The EEOC's 1999 enforcement guidance spells out the EEOC's reasoning in greater detail:

> Is an employer's obligation to offer reassignment to a vacant position limited to those vacancies within an employee's office, branch, agency, department, facility, personnel system...or geographical area?
>
> No. This is true even if the employer has a policy prohibiting transfers from one office, branch, agency, department, facility, personnel system, or geographical area to another. The ADA contains no language limiting the obligation to reassign only to positions within an office, branch, agency, etc. Rather the extent to which an employer must search for a vacant position will be an issue of undue hardship. . . .

1999 EEOC Enforcement Guidance, question 27, p. 42.

The Supreme Court has held that EEOC interpretive guidelines do not receive deference under Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 n.6 (2002). Instead, "[s]uch

interpretations are entitled to respect under our decision in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944), but only to the extent that those interpretations have the power to persuade." Id. (internal quotation marks omitted).

Here, the EEOC's interpretive guidelines are indeed persuasive. They are fully consistent with the plain meaning of the 1992 Amendment: namely, that the standards applied to Rehabilitation Act cases shall be the same standards applied in ADA cases.

Moreover, in 2002, the EEOC promulgated a revised version of 29 C.F.R. § 1614.203 that fully confirmed that the 1992 Amendment meant what it said. The amended Regulation states:

> The standards used to determine whether section 501 of the Rehabilitation Act of 1973, as amended (29 U.S.C. [§] 791), has been violated in a complaint alleging nonaffirmative action employment discrimination under this part shall be the standards applied under Titles I and V (sections 501 through 504 and 510) of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. [§§] 12101, 12111, 12201), as such sections relate to employment. These standards are set forth in the Commission's ADA regulations at 29 CFR part 1630.

29 C.F.R. § 1614.203(b) (amended 2002). In essence, the revised Regulation merely restates the plain statutory language of the 1992 Amendment.

The Government argues that because 29 C.F.R. § 1614.203(g) is unambiguous in its meaning, no deference to the EEOC's interpretive guidelines is appropriate. See Christensen v. Harris County, 529

U.S. 576, 588 (2000).  Otherwise, "[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." Id.  However, the ambiguity of the Regulation is not the issue. Rather, the issue is whether the Regulation conflicts with a statute enacted after the Regulation was promulgated.  The EEOC guidelines are interpreting 29 U.S.C. § 791(g), and not the Regulation that that statute invalidates.

The Government also argues that Plaintiff fails to cite any case law in support of her position.  The reason why is very simple: with the exception of a single case, Mitchell v. Crowell, 975 F. Supp. 1440 (N.D. Ala. 1997), the issue presented here has not been litigated.  In Mitchell, although the court rejected the plaintiff's arguments that the "1992 amendments to the Rehabilitation Act incorporate the broader standards of the ADA, and thus, supersede any limitations imposed upon plaintiff's transfer rights under 29 C.F.R. § 1614.203," it did so only in a footnote and without setting forth any reasoning whatsoever.  Id. at 1442 n.2.  The opinion makes no reference to the arguments advanced by counsel, or to the authority cited by them.  It is therefore of no assistance.[11]

---

[11] A number of other courts have applied the provisions of the pre-1992 Amendment 29 C.F.R. § 1614.203(g) in cases that arose after the Amendment's passage.  See e.g., Bracey v. OPM, 236 F.3d 1356, 1361-62 (Fed. Cir. 2001); Woodman v. Runyon, 132 F.3d 1330, 1339-40 (10th Cir. 1997) (noting 1992 Amendments to Rehabilitation

In the final analysis, the former 29 C.F.R. § 1614.203(g) is inconsistent with the plain meaning of 29 U.S.C. § 704(g).  That statute became effective upon enactment.  No preexisting regulation can have any validity once a conflicting statute is enacted by Congress.  Thus, with enactment of the 1992 Amendment, cases arising under the Rehabilitation Act are governed by the same standards applied under the ADA.  Accordingly, an employer's reassignment obligation is not limited to vacant positions serviced by the same appointing authority.

> **2.    The Government Has Conceded that Plaintiff Is a Qualified Person with a Disability Otherwise Entitled to a Reasonable Accommodation**

"Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony." Pyramid Sec. Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir. 1991).  This Circuit has adopted the "'sham affidavit rule' which precludes a party from creating an issue of material fact by

---

Act but still applying 29 C.F.R. § 1614.203(g)); Craig v. Potter, 2004 WL 363352, at *3 (7th Cir. Feb. 20, 2004); Larson v. Dep't of Veterans Affairs, 1999 WL 591503, at *1 (9th Cir. Aug. 5, 1999); Corrigan v. Perry, 1998 WL 129929, at *8 (4th Cir. Mar. 24, 1998).

However, there is no indication that any of these courts were presented with the argument at issue here and certainly none of these cases present any analysis of the issue.  As one court candidly acknowledged, "[t]he regulatory scheme promulgated pursuant to [the Rehabilitation Act] and other acts addressing the discrimination of disabled citizens in the public and private sector has resulted in a Gordian knot of regulations, jurisprudence, and, occasionally, confused citations to each." Bennett v. Henderson, 15 F. Supp. 2d 1097, 1103 (D. Kan. 1998).

contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony." <u>Galvin v. Eli Lilly & Co.</u>, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (quoting <u>Pyramid Sec.</u>, 924 F.2d at 1123).

During the course of the litigation before the EEOC, the Government repeatedly conceded that Plaintiff was a qualified individual with a disability and that the <u>only</u> reason Plaintiff was not offered a position with the IRS Office of Chief Counsel was because such a reassignment was not required pursuant to 29 C.F.R. § 1614.203(g).

For example, Plaintiff propounded the following interrogatory to agency counsel:

> State all reasons why complainant was not transferred to each job position identified in your response to interrogatory number 3 and identify all persons with knowledge of such facts.

Def.'s Supp. Interrog. Resp. No. 4.  Agency counsel provided the following supplemental response:[12]

> The complainant was not transferred to a position in the Office of Chief Counsel because the Office of Chief Counsel made a determination that it had no legal obligation to place the complainant, an IRS employee, in a position in the Office of Chief Counsel <u>because the Office of Chief Counsel and the Internal Revenue Service are separate organizations with separate personnel authorities</u>.

---

[12] The Government's initial response stated that Plaintiff was not transferred to various specific positions because there were no positions, or funding for such positions, available.

17

Id. (emphasis added).[13]   Thus, the Government has conceded that
although Plaintiff was free to apply for open positions at the
Office of Chief Counsel, the only reason she was not offered
reassignment to an open position was because the agency believed it
was not legally required to do so.

In addition, Barry Fulcher, another Fed. R. Civ. P. 30(b)(6)
designee on behalf of the agency, testified that the IRS determined
that it was required to find a reasonable accommodation for the
Plaintiff following the receipt of Dr. Presant's letter on December
3, 1999.  Fulcher Dep. at 11-12.  Indeed, Fulcher testified that
had the Office of Chief Counsel believed it was obligated to offer
Plaintiff one of its fifty-seven open attorney positions, Plaintiff
would have been accommodated in December 1999.  EEOC Hearing Tr. at
458-59.

---

[13] Susan Nieser, who testified on behalf of the Department of
the Treasury pursuant to Fed. R. Civ. P. 30(b)(6), gave similar
testimony on behalf of the agency at her deposition:

    Q.   I--I want to--I want a list of every single reason
         why Ms. Bearman [sic] was not placed in one of
         those open positions in 1999.
    A.   I've answered the question to the best of my ability.
    Q.   You have--so you have no other reasons than what you've
         told me so far?
    A.   She could have applied under a vacant announcement.  She
         was not a part of the IRS Office of Chief Counsel.
    Q.   She wasn't disqualified because she was not a part of the
         Office of Chief Counsel?
    A.   She had to apply.

Nieser Dep. at 18 (emphasis added).

18

The Government now argues in its Motion for Summary Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment that Plaintiff was not a qualified person with a disability, and that her Rehabilitation Act claim fails for that additional reason. The Government characterizes this new argument as an "alternative legal theory." Def.'s Opp'n at 6.

This characterization misses the mark. Based on the evidentiary record in this case, it is an undisputed material fact that the sole reason the IRS did not reassign Plaintiff to a position in the IRS Office of Chief Counsel was because it believed at the time that it was not legally obligated to do so. It is also undisputed that the IRS believed Plaintiff to be a qualified person with a disability under the Rehabilitation Act, based on the testimony of Fulcher, the agency's own Fed. R. Civ. P. 30(b)(6) designee.

Accordingly, the Government can defeat summary judgment only by demonstrating that there is a genuine issue of material fact concerning why Plaintiff was not offered a position in the IRS Office of Chief Counsel. However, the Government has not even offered an affidavit that contradicts its earlier discovery admissions. See Galvin, 488 F.3d at 1080. The Government has therefore failed to show that there is a genuine issue of material

fact concerning whether Plaintiff is a qualified person with a disability.[14]

Because, as discussed above, the Court has concluded that 29 U.S.C. § 791(g) invalidated the former 29 C.F.R. § 1614.203(g) when it was enacted in 1992, Plaintiff's Motion for Partial Summary Judgment is **granted** and the Government's Motion for Summary Judgment is **denied** as to the disability discrimination claim.

**B.    Summary Judgment Is Denied to the Government on the Retaliation Claim**

**1.    The McDonnell-Douglas Burden Shifting Framework**

Claims of retaliation for engaging in protected Equal Employment Opportunity activity are governed by the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999).

Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of retaliation. See McDonnell Douglas, 411 U.S. at 802.  Once the plaintiff establishes a prima facie case, the defendant must "'produc[e] evidence' that the adverse employment actions were taken 'for a

---

[14] Plaintiff also argued that the Government is judicially estopped  from arguing that Plaintiff is not a qualified person with a disability, an argument she later apparently conceded. See, e.g., Pl.'s Reply in Support of Mot. for Partial Summ. J. at 4-5. Because the Court concludes that the Government has conceded that Plaintiff was a qualified person with a disability and there is therefore no genuine dispute of material fact concerning that issue, the Court need not address Plaintiff's judicial estoppel argument.

legitimate, non-discriminatory reason.'" <u>Aka v. Washington Hosp.</u>
<u>Ctr.</u>, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (quoting <u>St. Mary's</u>
<u>Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993)). Once the defendant
has done so, "the presumption...raised by the prima facie case is
rebutted" and "drops from the case." <u>Id.</u> (quoting <u>Hicks</u>, 509 U.S.
at 507). For purposes of surviving summary judgment, the plaintiff
must show that a reasonable jury could infer that the proffered
legitimate reason was false and that defendant's actions were
intended as retaliation from a "combination of (1) the plaintiff's
<u>prima facie</u> case; (2) any evidence the plaintiff presents to attack
the employer's proffered explanation for its actions; and (3) any
further evidence of [retaliation] that may be available to the
plaintiff." <u>Id.</u> at 1289.

Our Court of Appeals recently held that, when considering a
motion for summary judgment in an employment discrimination case,
a district court need not consider whether a plaintiff has actually
set out the elements of a <u>prima facie</u> case. <u>Brady v. Office of the</u>
<u>Sergeant at Arms</u>, ___ F.3d ___, 2008 WL 819989, at *3 (D.C. Cir.
Mar. 28, 2008). Instead, "the district court must resolve one
central question: Has the employee produced sufficient evidence for
a reasonable jury to find that the employer's asserted non-
discriminatory reason was not the actual reason" for the adverse
employment actions, and that the employer's actions were intended
as retaliation. <u>Id.</u>

21

**2.    There Are Genuine Issues of Material Fact that Preclude Summary Judgment**

Local Civil Rule 56.1 requires that "[e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue." Unfortunately, the Government failed to comply with this Rule, thereby needlessly complicating the Court's task in ruling on its Motion.  The Government's statement of material facts contains a mere three facts, none of which relate to Plaintiff's claim of retaliation.  As our Court of Appeals has previously noted, "[r]equiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purposes" and frees the district court from sifting through an often voluminous evidentiary record.  Jackson v. Finnegan, Henderson, Farabow, Garret & Dunner, 101 F.3d 145, 150-51 (D.C. Cir. 1996).

While the Court could deny the Government's Motion on this ground alone, it also appears that there are genuine issues of material fact concerning Plaintiff's claim of retaliation that preclude summary judgment.

Plaintiff has presented evidence of purported retaliation against her following her October 22, 1999 request for a reasonable accommodation under the Rehabilitation Act.  For example:

(1)    The decision of Plaintiff's supervisor to list her as absent without leave when she was purportedly on approved medical leave;

22

(2)    The monitoring of Plaintiff's Internet and telephone
       usage;

(3)    The Government's failure to provide Plaintiff with
       substantive work;

(4)    The decision of Plaintiff's supervisor to deny her paid
       religious leave for Hanukkah; and

(5)    Williams' alleged behind-the-scenes efforts to require
       Plaintiff to submit to an additional medical examination.

The Government denies that these actions were taken for the
purpose of retaliation and has proffered an innocent explanation
for each.

Viewing all of the evidence in the light most favorable to the
Plaintiff and drawing all reasonable inferences in her favor, there
are genuine issues of material fact concerning whether the above
listed actions were the result of unlawful retaliation--issues that
must be resolved at trial.  If the jury accepts Plaintiff's version
of the facts, she has "produced sufficient evidence for a
reasonable jury to find that [the Government's] asserted non-
discriminatory reason[s] [were] not the actual reason[s]" for the
adverse employment actions.  Brady, 2008 WL 819989, at *3.
Accordingly, the Government's Motion for Summary Judgment is **denied**
as to the retaliation claim.

**IV.    CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment concerning the disability discrimination claim [**Dkt. No. 29**] is **granted** and the Government's Motion for Summary Judgment as to all claims [**Dkt. No. 31**] is **denied.** Only the retaliation claim remains for trial. An Order shall accompany this Memorandum Opinion.


May 1, 2008                              /s/
                                         Gladys Kessler
                                         United States District Judge


**Copies via ECF to all counsel of record**