UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TESSA E. BERGMAN,                           :
                Plaintiff                    :
                                             :    Civ. Action No. 06-0303 (GK)
V.                                           :
JOHN W. SNOW,                                :
Secretary, Department of the Treasury,       :
                Defendant                    :

MOTION FOR RECONSIDERATION

Pursuant to Federal Rule if Civil Procedure 54(b), the defendant respectfully asks the

Court to reconsider its May 1, 2008 Order and Memorandum Opinion (Mem Op) granting

plaintiff's motion for partial summary judgment and denying defendant's motion for summary

judgment concerning plaintiff's Rehabilitation Act claim. In granting plaintiff's motion for

partial summary judgment ,the Court concluded that the government had conceded during the

course of the litigation before the EEOC that plaintiff was a qualified individual with a disability.

*See* Mem Op at p. 17. Based on that alleged concession, the Court failed to evaluate or address

defendant's estoppel argument in its opposition to plaintiff's motion for partial summary

judgment and defendant's argument in its summary judgment motion that the plaintiff failed to

establish an essential element of her claim, i.e., that she failed to submit evidence showing that

she was in fact a qualified individual with a disability because she failed to show that her mental

impairment substantially limited any of her major life activities.[1]  Defendant requests that on

_____

[1]  To make out a case of discrimination for failure to accommodate a plaintiff must show
by a preponderance of the evidence (1) that she was an individual with a disability within the
meaning of the statute . . . . *Pantazes v. Jackson,* 366 F.Supp.2d 57, 66 (D.D.C.2005). The
ADA defines "disability" as follows:

(A) a physical or mental impairment that substantially limits one or more of the

1

reconsideration the Court deny plaintiff's motion for partial summary judgment and grant

defendant's motion for summary judgment as to the Rehabilitation Act claims.

The Court's opinion properly noted:

the Supreme Court has also consistently emphasized that "at the summary
judgment stage, the judge's function is not to weigh the evidence and determine
the truth of the matter, but to determine whether there is a genuine issue for trial."
*Liberty Lobby*, 477 U.S. at 248, 249. In both *Liberty Lobby* and *Reeves v.
Sanderson Plumbinq Products, Inc.*, 530 U.S. 133, 150 (2000) the Supreme Court
cautioned that "[c]redibility determinations, the weighing of the evidence, **and the
drawing of legitimate inferences from the facts**, **are jury functions, not those
of a judge**" deciding a motion for summary judgment. *Liberty Lobby*, 477 U.S. at
255. In assessing a motion for summary judgment and reviewing the evidence the
parties claim they will present, **"the Court must draw all reasonable
inferences in favor of the nonmoving party."** *Reeves*, 530 U.S. at 150.

Mem Op at p. 9-10 (emphasis added).   In plaintiff's partial motion for summary judgment the

government is the non-moving  party, and, therefore,  all reasonable inferences must be drawn in

favor of the government.  As is discussed in detail below,  the "sham affidavit rule" properly is

not applicable to this matter, and the opinion failed to draw all reasonable inferences in favor of

the government in reaching the conclusion  that the government conceded that plaintiff was a

qualified individual with a disability.

The opinion made its finding citing the "'sham affidavit rule' which precludes a party

---

major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

from creating **an issue of material fact** by contradicting prior sworn testimony. . . ." Mem Op at

p. 16-17 (*citing Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (*quoting*

*Pyramid Sec.*, 924 F.2d at 1123)) (emphasis added).   *Galvin* discussed the issue of whether the

plaintiff could submit supplemental affidavits concerning a **factual matter**, that is,  modifying

the plaintiff's description of what a pill looked like.   488 F.3d at 1029.    The D.C. Circuit did not

rule on the issue but stated

> A supplemental affidavit filed by an interested party should not be deemed
> inadmissible solely because it was filed in response to a motion for summary
> judgment, however; the important considerations are whether the affidavit
> contradicts a prior sworn statement without justification or the filing party
> breached its obligations in discovery. See Fed. R. Civ. P. 37.

> Galvin contends the supplemental affidavits do not contradict but merely clarify
> the affiants' prior statements. Because we conclude there would not be a genuine
> dispute over a **material fact** even if the supplemental affidavits were admitted, we
> find it unnecessary to rule upon their actual admissibility. Were it otherwise, we
> would have to determine whether these affidavits contradict or clarify prior
> statements and possibly also whether the sham affidavit rule should be applied to
> a non-party witness.

*Galvin v. Eli Lilly and Co.*,  488 F.3d 1026, 1030-1031 (D.C.Cir.2007).    *Pyramid Securities*

also addressed a factual issue concerning an attempt to modify information in a prior affidavit

concerning the date a ledger was received:

> Pyramid now claims that neither it nor its agents received the ledger until
> December 1985. In retrospect, Attridge wonders whether he had sufficient
> knowledge of the facts to make the sworn allegation found in his affidavit. But
> Attridge's expedient doubts about the veracity of his own past sworn statement do
> not raise a genuine issue of material fact. Where a party emphatically and
> wittingly swears to a fact, it bears a heavy burden-even in the summary judgment
> context-when it seeks to jettison its sworn statement.

*Pyramid Securities Ltd. v. IB Resolution, Inc.*,  924 F.2d 1114, 1123 (D.C. Cir.1991).

The sham affidavit rule is not applicable to this case.   First, whether one is a qualified individual with a disability is a conclusion based on a legal definition -- not a material fact. Second,  the plaintiff did not present any evidence that the government employees ever testified that plaintiff was a qualified individual with a disability. Third, the plaintiff did not present evidence that the government conceded any **facts** requiring the conclusion that plaintiff was a qualified individual with a disability as defined by the Act., i.e. facts showing  that plaintiff's mental impairment substantially limited one or more of her major life activities.  Fourth, plaintiff presented no evidence that the government attempted to contradict any prior sworn statement of government officials; the plaintiff presented no evidence that the government alleged that any of the statements plaintiff attempts to rely upon were untrue or should be modified.  The only thing the government has contradicted is the **inference** which the plaintiff  seeks to draw from the testimony presented.

Plaintiff's contention that defendant conceded that she was a qualified individual with a disability is based primarily on three things: 1) Dr. Presant's letter of December 3, 1999; 2) testimony that the IRS determined that it was required to find a reasonable accommodation based on Dr. Presant's letter of December 3, 1999, and 3) testimony that the only reason the Office of Chief Counsel did not offer plaintiff a position was that it was not required to do so pursuant to 29 C.F.R. § 1614.203 (g).  However, viewing the evidence in the light most favorable to defendant, who is the non-moving party in plaintiff's summary judgment motion, does not require that concession is the sole reasonable inference which may be drawn.  Plaintiff offered Dr. Presant's letter as evidence of disability in her statement of material facts, and defendant denied same as follows:

7.      *On or about December 3, 1999, Dr. Presant issued a written determination that Plaintiff had a disability, acute depression, that required a reasonable accommodation under the Act. Source:Exh. A, ¶ 10, Attachment 1; Exh. C, HT (Sottile), pp. 488-89.*

**Denied**.    Dr. Presant's letter states "It is also very plausible that a major contributor to her depression is low self-esteem resulting from being in a position in which the required work product is not commensurate with her training and capabilities.  Thus, I would recommend from a medical point of view that she be accommodated with a position appropriate to her legal and educational background. . . ."  PSJM at Ex. A Attachment 1. However, this matter is not material to the decision of any issue in this case.  Plaintiff has failed to establish that she was "disabled" or  a" qualified individual with a disability" as defined by the act.  See Defendant's SJM at p. 13-33.

Defendant's Statement of Genuine Issues at ¶7.  Dr. Presant's letter on its face only identifies an impairment, depression, and identifies a contributor to the impairment.  He does not opine that plaintiff 's impairment substantially limits a major life activity. He makes a recommendation "from a medical point of view," but does not offer any opinion as to disability as defined by the Act.  A jury could draw no inference that plaintiff was disabled from this letter. It offers no evidence upon which a jury could find that plaintiff was significantly restricted in any major life activity.  *See Colwell v. Suffolk County Police Dept.*,  158 F.3d 635, 644 -645 (2nd Cir. 1998), cert denied 526 U.S. 1018 (1999)

Ellinger testified that his doctor imposed certain restrictions on his work schedule, including that Ellinger work days only and only indoors, with overtime limited to the hours between eight a.m. and eight p.m. The doctor forbade Ellinger from working "late tours or rotating shifts," and instructed him to "avoid[ ] stress and confrontation." Ellinger testified that he continued to "follow" these restrictions after he was returned to full duty status.

This evidence is insufficient to show that Ellinger was "significantly restricted" in his ability to work at a class or broad range of jobs. His only evidence concerned the general restrictions imposed by his doctor. Without specific evidence about "the kinds of jobs from which [an] impaired individual is disqualified," the jury could not perform the careful analysis that is necessary to determine that Ellinger was substantially limited in his ability to work. *See Heilweil*, 32 F.3d at 723.

5

We conclude that each of the plaintiffs failed to advance evidence sufficient to show that the limitation he suffered with respect to a major life activity was substantial.

*Colwell*, 158 F.3d at 644 -645.  *See also Duncan v. Washington Metropolitan Area Transit Authority*, 240 F.3d 1110, 1116 (D.C. Cir. 2001); *Gasser v. District of Columbia*, 442 F.3d 758, 764 -765 (D.C.Cir.2006)

Under Duncan, if the perceived impairment is, as Gasser concedes, that he cannot be exposed to risk of trauma, then the question is whether his preclusion from exposure to a risk of trauma "disqualified him from a substantial class or broad range of jobs." 240 F.3d at 1115. Dr. Thomas answered a different question-whether preclusion from engaging in heavy physical exertion disqualified Gasser from a substantial class or broad range of jobs. Dr. Thomas's testimony therefore was probative of jobs that require physical exertion, not just jobs that involve risk of trauma. *Compare Giordano v. City of New York*, 274 F.3d 740, 749 (2d Cir.2001) ("[Plaintiff] introduced evidence that establishes at most that the defendants regarded him as disabled from police or other investigative or security jobs that involve a substantial risk of physical confrontation."). Gasser should have presented evidence of the number of jobs he would be unable to perform because they involve a risk of trauma. It is not sufficient to short-cut this analysis by looking at Gasser's responsibilities in his limited-duty role. There may well be medium- and heavy-duty jobs that do not involve risk of trauma. Dr. Thomas's analysis therefore was not probative-significantly or otherwise-of whether Gasser was precluded from a broad range or a substantial class of jobs, as *Duncan* requires. *See* 240 F.3d at 1115; *Giordano*, 274 F.3d at 749 ("The record contains no evidence from which we can infer that the [police department] thought, or had grounds for thinking, that other jobs in the public or private sector ... carry the same nature or degree of risk."); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir.1998) (concluding that police officer's back injury "disqualifies him from only a narrow range of jobs (those involving physical confrontation) and thus his impairment is not a substantially limiting one") (citation and internal quotation marks omitted).

*Gasser v. District of Columbia* , 442 F.3d 758, 764 -765 (D.C.Cir.2006).  Thus, viewing this

evidence in the light most favorable to the defendant, not only does Dr. Presant's letter fail to

raise an inference that plaintiff was disabled as defined by the Act, there also is clearly a dispute

as to plaintiff's alleged material fact that "Dr. Presant issued a written determination that Plaintiff

6

had a disability" in the letter.

Further, viewed in the light most favorable to defendant, testimony that the Agency had to or did accommodate plaintiff based on Dr. Presant's letter does not require the inference that defendant believed or conceded that plaintiff was a qualified individual with a disability. As *Colwell* ruled

> An employer that accedes to minor and potentially debatable accommodations (a sensible way to avoid litigation, liability, and confrontation), does not thereby stipulate to the employee's record of a chronic and endless disability. Otherwise, costless accommodations to physical complaints-here, the plaintiff's fellow officers, not the county, paid the price in terms of reduced flexibility in assignments-would entail large future costs, would discourage the employment of persons with minor limitations, and would promote litigation without assisting persons entitled to protection of the ADA.

*Colwell*, 158 F.3d at 646. IRS acceded to plaintiff's and the doctor's recommendation that she be given a job as an attorney. In the scheme of things, moving plaintiff to an attorney job in Virginia was a "minor and potentially debatable accommodation" which was cost free to the IRS. The fact that defendant moved plaintiff to an attorney job does not raise an inference that defendant believed or conceded plaintiff was disabled as defined by the Act.

> whether an individual is "regarded as" having a disability "turns on the employer's perception of the employee" and is therefore "a question of intent, not whether the employee has a disability." *Id.* at 284. It is not enough, however, that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA. See id. at 285-86. Thus, in order to prevail, the plaintiffs were required to adduce evidence that the County regarded each officer as having an impairment that substantially limited a major life activity. This the officers failed to do.
>
> As a threshold matter, the officers concede that their assignment to light duty status does not mean that they are regarded as disabled. Their argument is that they are regarded as disabled because (1) Colwell, Abrams, and Ellinger were on light duty on a long-term basis, and were continuously assigned to non-confrontational positions; (2) Abrams and Ellinger alone among the

7

promotional candidates were required to undergo physical examinations; and (3) Police Commissioner Cosgrove considered Ellinger to be "light duty" despite his knowledge that Ellinger had recently returned to full duty status.

This evidence is insufficient to permit the inference that the County perceived the officers as having impairments that substantially limited them in one or more major life activities. Assignment to light duty status (as the officers concede) does not support the inference that the County viewed them as disabled; the fact that the light duty assignments were prolonged can make no difference. Continuous assignment of a policeman to non-confrontational positions does not permit the inference that the officers were regarded as substantially limited in their ability to do work. To prove that they were regarded as substantially limited in their ability to work, the officers bore the burden of proving that the County "perceived [them] to be incapable of working in a broad range of jobs" suitable for persons of their age, experience, and training. *Ryan v. Grae & Rybicki*, 135 F.3d at 872. The fact that the officers were believed to be unable to wrestle with disturbers of the peace is not enough. *See id.*

*Colwell* , 158 F.3d at 646 -647. *See also Thompson v. Rice*, 422 F.Supp.2d 158, 175 -176

(D.D.C.,2006)

An individual is "regarded as" disabled if her employer "mistakenly believes that [the] person has a physical impairment that substantially limits one or more major life activities" or "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139. **However, "an employer's attempts to accommodate an employee's concerns and perceived needs do not establish that the employer regarded the employee as having a disability**." *Weigert v. Georgetown Univ.*, 120 F.Supp.2d 1, 13 (D.D.C.2000) (citation omitted).

Defendant argues that because working abroad is not a major life activity, plaintiff does not qualify as disabled under the "regarded as" definition. As discussed in Section B.1 supra, the Court agrees that working abroad is not a major life activity. **Furthermore, plaintiff's restricted medical clearance does not show that defendant regarded plaintiff as disabled because it reveals nothing about whether defendant believed that plaintiff had an impairment that substantially limited her in a major life activity**. As defendant points out, the medical clearance system is used to determine whether a person may be appropriately posted in a foreign country that has limited medical facilities, recognizing that some medical conditions could be exacerbated by overseas postings or that certain locations may not have adequate facilities to treat an employee's condition. See Def. Reply Mem. at 24; Def. Ex. 19 (Foreign Affairs

Manual, volume 3, § 1931). That system does not indicate whether a person is substantially limited in a major life activity, and thus cannot be characterized as automatically qualifying persons as being disabled under the "regarded as" provision of the Rehabilitation Act. *See EEOC v. J.B. Hunt Transp., Inc.*, 321 F.3d 69, 75 (2d Cir.2003) (holding that employer's policy of screening out applicants taking medications that could impair driving ability did not "regard" applicants as disabled because "driving freight-carrying tractor-trailer trucks over long distances for extended periods of time" did not constitute a broad range or class of jobs). Indeed, the broad interpretation advocated by plaintiff would mean all State Department employees with limited medical clearances *176 are disabled, a result in conflict with the intent of the Rehabilitation Act. *See Toyota*, 534 U.S. at 197-98, 122 S.Ct. 681. Therefore, the Court finds that defendant has not regarded plaintiff as disabled by restricting her medical clearance and thereby limiting her ability to serve in some overseas posts.

*Thompson v. Rice*,  422 F.Supp.2d at175 -176. (Emphasis added).   Plaintiff also has failed to explain why Chief Counsel's reason for not transferring plaintiff onto its staff is a concession that plaintiff is a qualified person with a disability under the Act.  The IRS undertook to place plaintiff in an attorney position.  As is discussed below, viewed in the light most favorable to defendant, the evidence shows that the IRS undertook to seek such a placement without having made a final determination as to plaintiff's disability status under the Act.  The IRS asked the Chief Counsel's Office if they would accommodate plaintiff.  Counsel's Office refused to do so, stating that the regulation did not mandate that they accommodate her.  See Docket # 29, Exhibit C, Excerpts from Hearing Transcript: Fulcher testimony.  That Counsel's Office refused to take plaintiff because of their interpretation of the regulation, does not prove that Counsel's Office believed she was disabled under the act or conceded such.  Counsel did not have to make that determination, and plaintiff did not in her motion offer any evidence that Counsel's office in fact

made a factual determination that plaintiff was disabled as defined by the Act.[2]   Indeed, making

a decision under its interpretation of the regulation that **if** an individual were disabled,  it would

not have to hire an individual, would  not establish that a determination was therefore made that

an individual  was disabled under the Act.

The Supreme Court has made a clear distinction between the treatment of alleged

contradictions of fact versus alleged contradictions of legal conclusion.  In *Cleveland v. Policy*

*Management Systems Corp.*,  526 U.S. 795 (1999) the Court examined the impact on a claim of

disability under the ADA of a plaintiff's prior administrative claim of total disability under the

Social Security Act.  The Court  refused to apply to the case prior case law concerning purely

factual conflicts.   It stated that the case did not

> involve directly conflicting statements about purely factual matters, such as "The
> light was red/green," or  "I can/cannot raise my arm above my head." An SSA
> representation of total disability differs from a purely factual statement in that it
> often implies a context-related legal conclusion, namely, "I am disabled for
> purposes of the Social Security Act." And our consideration of this latter kind of
> statement consequently leaves the law related to the former purely factual, kind of
> conflict where we found it.

*Id*.  526 U.S. at 801-802.  Instead the Court ruled that "despite the appearance of conflict that

arises from the language of the two statutes, the two claims do not inherently conflict to the point

where courts should apply a special negative presumption like the one applied by the Court of

---

[2]   Assume the proposition: hospital ward 2 must take a patient if the patient A) has
anthrax  and B)  has insurance. Ward 2 rejects patient Green at intake because Green has no
insurance.   Ward 2 is asked why did you not take patient Green.  Response-- because he had no
insurance.  Is that the only reason you did not take him?  Response -- Yes.      The fact that the
only reason Ward 2 did not take Green was that he had no insurance, does not offer any proof
that Green had anthrax.    In this case substitute "disability" for "anthrax" and "requirements
under the regulation"  for "insurance," and it is apparent that viewed in the light most favorable
to defendant, no inference of a concession of disability must be drawn.

Appeals here. That is because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Cleveland*, 526 U.S. at 802-803. The Court further ruled

> Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or **defense** alternately or hypothetically," and to "state as many separate claims or **defenses** as the party has regardless of consistency." Fed. Rule Civ. Proc. 8(e)(2). We do not see why the law in respect to the assertion of SSDI and ADA claims should differ. (And, as we said, we leave the law in respect to purely factual contradictions where we found it.)

*Cleveland* , 526 U.S. at 805 (emphasis added). *See Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 780 (3rd Cir. 2001) in which the plaintiffs, in separate civil actions, took inconsistent positions on a legal conclusion. (Three times during the Hickok action they specifically denied that the Plan was covered by ERISA, but this suit is based on the premise that it is.) The Third Circuit examined the issue as one of judicial estoppel "Guided by the Supreme Court's recent decision in *Cleveland v. Policy Management Systems Corp*. . . ."

*Montrose Medical Group Participating Savings Plan*, 243 F.3d at 781. It stated:

> The issue in *Cleveland* was whether a person who sought Social Security Disability Insurance (SSDI) benefits could later be judicially estopped from claiming protected status under the Americans with Disabilities Act (ADA). In seeking SSDI benefits, the claimant certified that she was ""disabled"" and ""unable to work,"" but in a later ADA suit she submitted that she could ""perform the essential functions"" of a job ""with ... a reasonable accommodation."" *See id.* at 798-99, 119 S.Ct. 1597. Observing ""that, in context, these two seeming divergent statutory contentions are often consistent with each other,"" the Court held that ""pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim."" *Id.* at 797, 119 S.Ct. 1597.

*Montrose Medical Group Participating Savings Plan v. Bulger* , 243 F.3d 773, 781 -782 (3rd Cir.2001). The Third Circuit continued:

11

Though Cleveland's earlier claim had been accepted by the administrative agency, *see id.* at 802, 119 S.Ct. 1597 (stating that she had "both applied for, and received, SSDI benefits"), the Court laid down guidance highly pertinent to this case. Quoting Federal Rule of Civil Procedure 8(e)(2), it noted that "[o]ur ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternatively or hypothetically' and to 'state as many separate claims and defenses as the party has regardless of consistency.' " *Id.* at 805, 119 S.Ct. 1597. Stressing that "if an individual has merely applied for, but had not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system," the Court opined that it did "not see why the law in respect to the assertion of SSDI and ADA claims should differ." *Id*.

Guided by *Cleveland*, we hold that it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court or agency. Because the practice is specifically sanctioned by the Federal Rules, asserting inconsistent claims within a single action obviously does not constitute misconduct that threatens the court's integrity. **In *Cleveland*, the Supreme Court drew a direct parallel between pleading inconsistently in a single case and doing so in subsequent ones, so long as the initial claim was never sustained. Moreover, the Court described the latter type of inconsistencies as "the sort normally tolerated by our legal system."** Though the Court did not use the magic words-"it is not bad faith to assert inconsistent claims in separate actions so long as the initial position was never accepted by a court or agency"- Cleveland' s import is clear.

* * *

We are unpersuaded by MONY's and Bulger's contentions that Cleveland is inapplicable here, or that stare decisis precludes adoption of the rule we announce today. . . .[T]hey submit that the question whether a plan is covered by ERISA is one of fact rather than law. And because in *Cleveland* the Supreme Court expressly declined to disturb the law of judicial estoppel relating to "purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head,' " 526 U.S. at 802, 119 S.Ct. 1597, they suggest that Cleveland has no applicability to the issue now before us. We reject this contention for two reasons. First, it is waived because it was raised for the first time at oral argument. . . .. Second, we conclude that it is simply wrong on the merits. Though the question whether a particular plan is covered by ERISA may not be one of pure law, it is also not a "purely factual matter" in the sense the phrase was used in *Cleveland*.

*Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 782 -783 (C.A.3 (Pa.),2001). Thus, since the question of whether plaintiff was a qualified individual with a disability is not a purely factual matter, *Cleveland* and not the sham affidavit rule applies. Pursuant to Cleveland, a defendant properly may plead an allegedly inconsistent legal theory. *Smith v. District of Columbia*, 295 F.Supp.2d 53, 55 -56 (D.D.C.2003). In the instant case the plaintiff did not claim or prove that defendant ever affirmatively claimed, pleaded or stated that plaintiff was a qualified individual with a disability under the Act. Since defendant's affirmatively asserting inconsistent defenses is not precluded by *Cleveland* and *Montrose*, plaintiff has not explained how an inference of concession arises by not asserting a defense. The interrogatory and questions relied upon by plaintiff do not ask for **all defenses** to plaintiff's claim; they simply ask why Counsel did not give plaintiff the job of her preference. Counsel's refusal to hire plaintiff adds nothing to the proof of what major life functions were significantly limited by plaintiff's impairment. As is discussed above, similar to *Cleveland*, defendant's defense that plaintiff has not proven all essential elements of her claim that she is disabled under the Act, does not inherently conflict with giving her an attorney position in IRS or denying her an attorney position in General Counsel's Office. As the precedent cited above demonstrates, there are too many situations in which the two can comfortably exist side by side.

      *Cleveland* also stated that in some circumstances a plaintiff may be required to give an explanation for an apparent contradiction

> An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"-that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential

element of her ADA case-at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

*Cleveland*, 526 U.S. at 806. The plaintiff in Cleveland was found to have proffered such an

explanation

In her brief in this Court, Cleveland explains the discrepancy between her SSDI statements that she was "totally disabled" and her ADA claim that she could "perform the essential functions" of her job. The first statements, she says, "were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work." Brief for Petitioner 43. Moreover, she claims the SSDI statements were "accurate statements" if examined "in the time period in which they were made." Ibid. **The parties should have the opportunity in the trial court to present, or to contest, these explanations, in sworn form where appropriate**. Accordingly, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*Cleveland*, 526 U.S. at 807.

To the extent it could be deemed that defendant is required to give an explanation for any

perceived inconsistency, that explanation was given and documented with evidentiary support in

defendant's opposition to plaintiff's motion. Viewed in the light most favorable to defendant,

put simply, no final determination had been made by the agency as to whether or not plaintiff

was or should be considered a qualified individual with a disability. The defendant agency was

responding to Dr. Presant's letter, but had not obtained any independent assessment as requested

by the Chief of the Divisions, Mr. Williams. Defendant's Opposition to Plaintiff's motion for

summary judgment stated:

Here, the record demonstrates that conscientious government employees were acting in good faith in responding as quickly as possible to plaintiff's evolving issues. See defendant's SJM at pp 4-8, 27-31. They received a letter from Dr. Presant on December 3, 1999, stating that in his medical opinion plaintiff should

be accommodated by giving her a legal position.   The Chief of the  Divisions, Mr.
Williams, had reviewed the letters concerning accommodation, and had
significant questions concerning Dr. Presant's opinion.  PSJM at Ex C:Williams
Tr. at p. 264-266.  He "asked for an outside opinion." *Id*. at p. 264; EEO Tr. Ex. at
Bates #24-25 (Fulcher notes for 1/6:  "Dave was unhappy with Dr. Presant's
granting of reasonable accommodation since he may not have had sufficient input
from a psychologist or psychiatrist. . . .Dave also said he wanted the letter to
address the inconsistencies in Terri's doctor[']s letters since in one she said Terri
could not work but in the later one (once Terri said she was experiencing financial
problems) that she could work").  Despite Mr. Williams' concerns,  the search for
an accommodation was not interrupted.  *Id*. at Bates # 26 (Fulcher notes for 1/18:
"I called Paula and updated her and she said that Dave Williams is still waiting on
letter from Julie asking that an independent evaluation be done on Terri.  I said the
RA [reasonable accommodation] issue could be worked independent of that and
we should not delay it while we await the independent evaluation.") and see
EEOTr:Fulcher at p. 428-438.  The letter requesting an independent evaluation
which Mr. Williams had asked for, was still in draft form on February 10, 2000.
IF at p. 290–292.  However, Mr. Fulcher had received a positive response from
the IRS Virginia Office and on February 7 had made a tentative offer for an
attorney position for plaintiff. Defendant's SJM at p. 30.  Mr. Fulcher gave
plaintiff a formal offer on March 7, 2000, and plaintiff accepted the attorney
position on March 16, 2000.  IF at p. 288-289.

It turns out that Mr. Williams' concerns were well placed.  Labor
Relations had asked Dr. Presant to expedite his opinion.  On December 2, 1999,
Labor Relations responded to Dr. Presant's November 15, 1999 request for
additional information concerning plaintiff.  In keeping with the promise to
plaintiff to expedite the matter, Labor Relations told Dr. Presant "Due to the
urgency of this case and some extenuating circumstances, I am requesting that you
expedite this request and provide your recommendations on the subject case by
close of business on Friday, December 3, 1999, or no later than Tuesday,
December 7, 1999."  12/2/99 McIver lrt.

Dr. Presant responded the next day, December 3, with his
recommendation.  IF at p. 280.  Dr. Presant had obtained no independent
evaluation of plaintiff's condition.  Dr. Presant is a consultant with the
Department of Health and Human Services.  Presant Dec. at ¶ 1.  He does not
specialize in psychiatry or psychology.  *Id*. at ¶2.  Prior to issuing his December 3,
1999 opinion letter, he "did not examine Ms. Bearman and was not given
underlying medical or psychiatric information concerning Ms. Bearman such as
medical charts or notes."   The information available to him were "Dr. Nowak's
letters dated October 11 and October 21, 1999, and a letter, with attachments,
from Ms. Bearman's attorneys dated October 22, 1999.  [He] also had
approximately two telephone conversations with Dr. Nowak.  [He] accepted Dr.
Nowak's letters at face value.  [He] did no independent assessment of Ms.

Bearman's condition." *Id*. at ¶4-6.

* * *

Since plaintiff is not "disabled," she has no right to the remedies she requests; thus there is no detriment to her. On the issue of transfer to the Office of General Counsel, plaintiff has attempted to use the Rehabilitation Act not as a shield against discrimination, but as a sword to get her the job of her preference. To allow a person who is not disabled to do so, because government employees, going beyond what the Act requires, acted in good faith based on Dr. Presant's acceptance of Dr. Nowak's recommendation at face value, has nothing to do with preservation of the integrity of the judicial system and the sanctity of sworn statements. Our Circuit has "expressed a preference for the 'determination of cases on the basis of the true facts as they might be established ultimately.'" *Smith United Mine Workers of America 1974 Pension v. Pittston Co.,* 984 F.2d 469, 477 fn 12 (D.C.Cir.1993) (*citing Konstantinidis [v. Chen*, 626 F.2d 933, 936-38 (D.C.Cir.1980)].

The defendant has not contradicted any previous sworn testimony, any alleged inconsistency has been explained, and plaintiff has not established a prima facie case that she is a qualified individual with a disability. Based on the record, plaintiff's partial motion for summary judgment should be denied since there are material issues of fact, and since the inferences drawn in the light most favorable to defendant show that plaintiff has not presented evidence that she is a qualified individual with a disability nor has she presented evidence sufficient to raise an inference that defendant has conceded its defense that plaintiff failed to establish she was disabled as defined by the Act.

Our Circuit has "expressed a preference for the determination of cases on the basis of the true facts as they might be established ultimately. *Smith United Mine Workers of America 1974 Pension v. Pittson Co.*, 984 F.2d 469, 477 fn 12 (D.C. Cir, 1993). The Court should deny plaintiff's motion for partial summary judgment and should grant defendant's motion for summary judgment on the merits of the factual record as to the Rehabilitation Act claims.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970