# EXHIBITS

1. **<u>Martin G. Allen, MD</u>**

   **Internal Revenue Service
   Department of the Treasury
   Federal Occupational Health Service
   Psychiatrist**

2. **Civil Actions**

**INTERVENER EXHIBIT 1**



*FOIA*

**EPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, D.C. 20224**

*9/22/2005*

**SMALL BUSINESS/SELF-EMPLOYED DIVISION**

SEP 2 2 2005

*VACANCY ANNOUNCEMENTS*
*REDUCED INCOMING CALLS*
*GRADE 5-6-7*

MICHAEL L BUESGENS
500 E STASSNEY APT 1023
AUSTIN TX 78745

Dear Mr. Buesgens:

This letter is in response to your Freedom of Information Act request dated August 21, 2005, which was received in this office on August 25, 2005.

In regards to your request for copies of internal vacancy announcements in the Austin, Texas commuting area for grade 5/6/7/8 positions for the year of 2003, please refer to our previous response letter to you dated July 26, 2005. As explained in the letter, we were able to obtain some of the announcements for 2003 and enclosed those copies. The remaining information could not be provided without a document being created and FOIA does not require agencies to create records not already in existence. We have no additional records to provide to you. The enclosed Notice 393 explains your appeal rights.

For further information, please contact Paula Ward, Disclosure Specialist, ID number 18-03230, 512-460-4433 or fax 512-460-4437, Internal Revenue Service, Austin Campus Disclosure Office, PO Box 2986, Mail Stop 7000 AUSC, Austin, Texas 78768. Please refer to case number 18-2005-03035.

Sincerely,

Stephanie K. Young
18-02241
Disclosure Officer
Austin Campus

*AUSTIN, TEXAS*

Enclosure



*IRS DOCTOR MARTIN G. ALLEN, MD*

Case 1:06-cv-00303-GK    Document 19    Filed 01/03/2007    Page 6 of 10

*TESSA E. BERGMAN PLAINTIFF*          **EXHIBIT 1**

**From:** JDQCSQ@aol.com [mailto:JDQCSQ@aol.com]
**Sent:** Tuesday, January 02, 2007 2:31 PM
**To:** Fields, Rhonda (USADC)
**Subject:** IME

**Rhonda:** Your motion requests an independent medical exam so Defendant can present an expert witness on the issue of plaintiff's claim that she suffered mental anguish, pain, suffering and related permanent injuries. Plaintiff is willing to drop these damages claims if Defendant will withdraw the request for an IME. I would appreciate it if you would give me your response ASAP as our response to your motion for an IME is due tomorrow.

John

**Subject:**      **RE: IME**
**Date:**         1/3/2007 11:38:48 AM Eastern Standard Time
**From:**         Rhonda.Fields@usdoj.gov

**To:**           JDQCSQ@aol.com

My client is not inclined to withdraw the request for an IME

*1:06CV00303-GK*

*NEAL PRESANT, MA*

To the extent it could be deemed that defendant is required to give an explanation for any

perceived inconsistency, that explanation was given and documented with evidentiary support in

defendant's opposition to plaintiff's motion. Viewed in the light most favorable to defendant,

put simply, no final determination had been made by the agency as to whether or not plaintiff

was or should be considered a qualified individual with a disability. The defendant agency was

responding to Dr. Presant's letter but had not obtained any independent assessment as requested

by the Chief of the Divisions, Mr. Williams. Defendant's Opposition to Plaintiff's motion for

summary judgment stated:

> Here, the record demonstrates that conscientious government employees were
> acting in good faith in responding as quickly as possible to plaintiff's evolving
> issues. See defendant's SJM at pp 4-8, 27-31. They received a letter from Dr.
> Presant on December 3, 1999, stating that in his medical opinion plaintiff should

14

# Neal Lee Presant, MD, IRS Doctor

be accommodated by giving her a legal position. The Chief of the Divisions, Mr. Williams, had reviewed the letters concerning accommodation, and had significant questions concerning Dr. Presant's opinion. PSJM at Ex C:Williams Tr. at p. 264-266. He "asked for an outside opinion." *Id.* at p. 264; EEO Tr. Ex. at Bates #24-25 (Fulcher notes for 1/6: "Dave was unhappy with Dr. Presant's granting of reasonable accommodation since he may not have had sufficient input from a psychologist or psychiatrist. . . .Dave also said he wanted the letter to address the inconsistencies in Terri's doctor[']s letters since in one she said Terri could not work but in the later one (once Terri said she was experiencing financial problems) that she could work"). Despite Mr. Williams' concerns, the search for an accommodation was not interrupted. *Id.* at Bates # 26 (Fulcher notes for 1/18: "I called Paula and updated her and she said that Dave Williams is still waiting on letter from Julie asking that an independent evaluation be done on Terri. I said the RA [reasonable accommodation] issue could be worked independent of that and we should not delay it while we await the independent evaluation.") and see EEOTr:Fulcher at p. 428-438. The letter requesting an independent evaluation which Mr. Williams had asked for, was still in draft form on February 10, 2000. IF at p. 290–292. However, Mr. Fulcher had received a positive response from the IRS Virginia Office and on February 7 had made a tentative offer for an attorney position for plaintiff. Defendant's SJM at p. 30. Mr. Fulcher gave plaintiff a formal offer on March 7, 2000, and plaintiff accepted the attorney position on March 16, 2000. IF at p. 288-289.

It turns out that Mr. Williams' concerns were well placed. Labor Relations had asked Dr. Presant to expedite his opinion. On December 2, 1999, Labor Relations responded to Dr. Presant's November 15, 1999 request for additional information concerning plaintiff. In keeping with the promise to plaintiff to expedite the matter, Labor Relations told Dr. Presant "Due to the urgency of this case and some extenuating circumstances, I am requesting that you expedite this request and provide your recommendations on the subject case by close of business on Friday, December 3, 1999, or no later than Tuesday, December 7, 1999." 12/2/99 McIver lrt.

Dr. Presant responded the next day, December 3, with his *TELEMEDICINE* recommendation. IF at p. 280. Dr. Presant had obtained no independent evaluation of plaintiff's condition. Dr. Presant is a consultant with the Department of Health and Human Services. Presant Dec. at ¶ 1. He does not specialize in psychiatry or psychology. *Id.* at ¶2. Prior to issuing his December 3, 1999 opinion letter, he "did not examine Ms. Bearman and was not given underlying medical or psychiatric information concerning Ms. Bearman such as medical charts or notes." The information available to him were "Dr. Nowak's letters dated October 11 and October 21, 1999, and a letter, with attachments, from Ms. Bearman's attorneys dated October 22, 1999. [He] also had approximately two telephone conversations with Dr. Nowak. [He] accepted Dr. Nowak's letters at face value. [He] did no independent assessment of Ms.

Bearman's condition." *Id.* at ¶4-6. *ITS ATTORNEYS*

***

Since plaintiff is not "disabled," she has no right to the remedies she requests; thus there is no detriment to her. On the issue of transfer to the Office of General Counsel, plaintiff has attempted to use the Rehabilitation Act not as a shield against discrimination, but as a sword to get her the job of her preference. To allow a person who is not disabled to do so, because government employees, going beyond what the Act requires, acted in good faith based on Dr. Presant's acceptance of Dr. Nowak's recommendation at face value, has nothing to do with preservation of the integrity of the judicial system and the sanctity of sworn statements. Our Circuit has "expressed a preference for the 'determination of cases on the basis of the true facts as they might be established ultimately.'" *Smith United Mine Workers of America 1974 Pension v. Pittston Co.,* 984 F.2d 469, 477 fn 12 (D.C.Cir.1993) (*citing Konstantinidis [v. Chen,* 626 F.2d 933, 936-38 (D.C.Cir.1980)].

The defendant has not contradicted any previous sworn testimony, any alleged inconsistency has been explained, and plaintiff has not established a prima facie case that she is a qualified individual with a disability. Based on the record, plaintiff's partial motion for summary judgment should be denied since there are material issues of fact, and since the inferences drawn in the light most favorable to defendant show that plaintiff has not presented evidence that she is a qualified individual with a disability nor has she presented evidence sufficient to raise an inference that defendant has conceded its defense that plaintiff failed to establish she was disabled as defined by the Act.

Our Circuit has "expressed a preference for the determination of cases on the basis of the true facts as they might be established ultimately. *Smith United Mine Workers of America 1974 Pension v. Pittson Co.,* 984 F.2d 469, 477 fn 12 (D.C. Cir, 1993). The Court should deny plaintiff's motion for partial summary judgment and should grant defendant's motion for summary judgment on the merits of the factual record as to the Rehabilitation Act claims.

**MARTIN G. ALLEN, M.D.**
2501 Calvert Street, NW
Suite 101
Washington, D.C. 20008
202-333-3833

*1:06CV00303-GK*

**Education:**   Yale College, New Haven, Connecticut (1957 - 1961) B.A.
New York University - Bellevue Medical School (1961 - 1965) M.D.

**Professional Training and Experience:**

1965-1966   Internship: St. Vincent's Hospital, New York City
1966-1968   Residency: Payne Whitney Clinic, New York Hospital
Cornell Medical Center, New York City
1968-1970   Clinical Associate, Section on Twin and Sibling Studies, NIMH, Bethesda, MD
1968-1970   Group Psychotherapy Training Program, Washington School of Psychiatry
1970-1979   Candidate, Washington Psychoanalytic Institute
1970-1976   Assistant Professor of Psychiatry, Georgetown University Medical School
1971-1976   Faculty, Washington School of Psychiatry
1973-1978   Faculty, A.K. Rice Institute
1976-1980   Associate Professor of Psychiatry (with tenure) Georgetown Medical School
1980-1995   Faculty, Washington Psychoanalytic Institute
1980- present  Clinical Professor of Psychiatry, Georgetown University Medical School
1992- present  Faculty, National Capitol Military Residency Program
1993-2000   President, Behavioral Health Associates

**Professional Activities:**

Clinical Professor of Psychiatry, Georgetown University Medical School
Department of Psychiatry –
Director, Group Therapy Training Program (1970 - 1988)
Teaching and supervision of residents (1970 - present)
Director, Clinical Case Conference (1975 - 1983)
Consultant to Student Health (1978 - 1979)
Forensic Psychiatry faculty (1984 - 1990)
Georgetown University Hospital –
Clinical Director, Mental Health Unit (1974 -1978)
Quality Assurance Committee (1974 - 1979)
Utilization Review Committee (1975 - 1976)
Psychiatry Audit Committee (1977 - 1982)
Director of Psychiatry, St. Elizabeth's Medical Surgical Unit (1978 -1979)
Georgetown University Medical School –
Admissions Committee, Interviewer (1971 -1977)
Committee on Faculty (1976 -1983)
Teaching basic psychiatry to medical students (1970 -1983)
Private practice of psychiatry, psychoanalysis, group therapy (1968 - present)
Consultant, Twin Studies Program, NIMH (1970 - 1974)

Martin G. Allen, M.D.
Page 2

*1:06CV00303-GK*

Consulting Editor, Journal of Cross Cultural Psychology (1970 - 1974)
Consultant, Fairfax Family Practice Center (1979 - 1982)
Consultant, Washington VA Hospital (1983 - 1993)
Washington Psychiatric Society --
    Confidentiality Committee (1973 - 1974)
    Economics and Insurance Committee (1974 - 1977), Chairman (1975 – 1976)
    Peer Review Committee (1975 - 1978) Subcommittee Chairman (1976 - 1978)
    Elected to Council (1978 - 1980)
    Ethics Committee (1985 - 1989)
Peer Review (Utilization Review) --
    Georgetown University Hospital
      Quality Assurance Committee (1974 - 1979)
      Utilization Review Committee (1975 - 1976)
    Washington Psychiatric Society (1975 - 1978)
    Blue Cross - Blue Shield
      Committee on Physicians Services (1978 - 1986)
      Integrated Quality Cost Control Panel (1988 - 1989)
      Grievance and Appeal Committee, Advisor (1996 - 1997), Member (1997 - 2002)
    American Psychiatric Association (1980 - 1989)
    Value Behavioral Health Inc. (1985 - 1987, 1991 - 1994)
    Psychiatric Institute of Washington, Director of U.R. (1986 - 1991)
    Integrated Behavioral Care (1992-2000)
    American Day Treatment Centers (1993 - 1996)
    VA External Peer Review Program, Birch & Davis (1993 - 1999)
    Principal Behavioral Health Care, American Psych Systems (1994 - 1997)
Washington Psychoanalytic Society --
    Committee on Finance, Co-chairman, (1981 - 1985)
    Treasurer (1983 - 1985)
    Elected to Council (1985 - 1988)
Consultation to lawyers, govt. agencies (e.g. Federal Occupational Health) and corporations (e.g. Forensic Medical Advisory Service) re: psychiatric disability, injury and/or fitness for duty evaluations


Professional Societies:

    American Psychiatric Association, Washington Psychiatric Society (1968 - present)
    American Group Psychotherapy Association (1969 - present)
    International Association for Cross-Cultural Psychology (1972 - 1983)
    American Psychoanalytic Association (1978 -present)
    American Society of Psychoanalytic Physicians (1995 - present)
    American College of Forensic Examiners (1998 - present)


Honors:

    Graduated Yale College "cum laude"
    Fellow, American Psychiatric Association, 1976
    Distinguished Life Fellow, Am. Psychiatric Assn., 2003

*1:06 CV00303-GK*

Martin G. Allen, M.D.
Page 3

**Military Service:**

    1968 - 1970       USPHS, Senior Assistant Surgeon, NIMH, Bethesda, MD.

**Licenses:**

    District of Columbia          Virginia

**Certification:**

    American Board of Medical Examiners, 1966
    American Board of Psychiatry, 1972
    American Psychoanalytic Assn., 1980
    American Board of Disability Analysts 1997
    American Board of Forensic Medicine, 1998

**Hospital Staff:**

    Georgetown University Hospital

- Home
- Change Address
- Questions@abpn.com
- Travel Information

# The American Board of Psychiatry and Neurology, Inc.

A Member Board of the American Board of Medical Specialties (ABMS)

**CERTIFICATION**
Neurology/Child Neurology
Psychiatry
Subspecialties
Addiction Psychiatry
Child and Adolescent Psychiatry
Clinical Neurophysiology
Forensic Psychiatry
Geriatric Psychiatry
Hospice and Palliative Medicine
Neurodevelopmental Disabilities
Neuromuscular Medicine
Pain Medicine
Psychosomatic Medicine
Sleep Medicine
Vascular Neurology
Certification Statistics

Addiction Psychiatry
Child and Adolescent Psychiatry
Clinical Neurophysiology
Forensic Psychiatry
Geriatric Psychiatry
Pain Medicine

**PUBLICATIONS**
Applications
Content Outlines
Core Competencies
Examination Schedules
Frequently Asked Questions
Forms
  ADA Form
  CSV v1
  CSV v2
  Duplicate Certificate Form
  NEX v1
  NEX v2
  Neuroscience Research Path
  Verification of Certification Form
Information for Applicants
Important Notices
Newsletters

## About ABPN - Who We Are

### Board of Directors

The ABPN Board of Directors consists of sixteen voting members. The nominating organizations for psychiatry are the the American College of Psychiatrists, American Psychiatric Association, and the American Medical Association; for neurology, they are the American Neurological Association and the American Academy of Neurology. Each of these organizations proposes nominees to serve on the Board, but the Board itself selects its members. The Board is independently incorporated.

Elections to fill the places of members whose terms have expired take place annually. **Neurology (N)** and **Psychiatry (P)** are always represented equally on the Board. The Board holds meetings several times each year for the purpose of examining candidates and transacting business.

| The 2008 Board of Directors for the American Board of Psychiatry and Neurology, Inc. | |
|---|---|
| **President** Burton V. Reifler, MD, MPH (P) Winston-Salem, NC | |
| **Vice President** Patricia K. Coyle, MD (N) Stony Brook, NY | |
| **Secretary** Robert M. Pascuzzi, MD (N) Indianapolis, IN | |
| **Treasurer** Naleen N. Andrade, MD (P) Honolulu, HI | |
| **Member-at-Large** Steven T. DeKosky, MD (N) Pittsburgh, PA | |
| **Member-at-Large** David A. Mrazek, MD, FRCPsych (P) Rochester, MN | |
| **Neurology Directors** | **Psychiatry Directors** |
| Michael J. Aminoff, MD, DSc (N) San Francisco, CA | Naleen N. Andrade, MD (P) Honolulu, HI |
| Patricia K. Coyle, MD (N) Stony Brook, NY | Beth Ann Brooks, MD (P) Detroit, MI |
| Patricia K. Crumrine, MD (N) Pittsburgh, PA | Christopher C. Colenda, MD, MPH (P) College Station, TX |
| Steven T. DeKosky, MD (N) Pittsburgh, PA | Robert W. Guynn, MD, (P) Houston, TX |

| | | STAFF and OFFIC |
|---|---|---|
| Ralph F. Józefowicz, MD (N) Rochester, NY | David A. Mrazek, MD, FRCPsych (P) Rochester, MN | The Ameri Board of Psych and Neurc Inc. Execu Offic 2150 E. |
| Janice M. Massey, MD (N) Durham, NC | Burton V. Reifler, MD, MPH (P) Winston-Salem, NC | |
| Robert M. Pascuzzi, MD (N) Indianapolis, IN | Victor I. Reus, MD (P) San Francisco, CA | |
| Ann Henderson-Tilton, MD (N) New Orleans, LA | Barbara S. Schneidman, MD, MPH (P) Chicago, IL | |
| | | |
| Executive Vice President, Larry Faulkner, MD | | |

Lake Cook Road, Suite 900
Buffalo Grove, IL 60089
phone: 847.229.6500
fax: 847.229.6600

Staff at the Board consists of dedicated and talented people whose purpose is to assist candidates and diplomates through the credentialing, certification, and maintenance of certification processes. Our Board of Directors and staff also work with committees of specialist and subspecialist physicians to develop our initial certification and MOC examinations, implementation of Maintenance of Certification Program, core competencies outlines, and other advances related to the fields of psychiatry and neurology.

**Communications and Information Services** staff develops and implements software and systems, maintains the integrity of hardware and databases, produces a variety of media (newsletters, applications, *Information for Applicants* publications, and the web site), and presents information (sessions and booths) at organizational meetings to keep our candidates and diplomates informed of the latest developments in our testing processes, examination schedules, content and core competencies outlines, new subspecialties, and other Board business. Publications are provided as pdf files via this web site for downloading to personal computers.
For information on systems and software development, please contact Paul Whittington, Director, at 847.229.6549 or email *pwhittington@abpn.com* or Kevin Point at 847.229.6537 or email *kpoint@abpn.com*.
For information on newsletters, publications or the web site, please contact Katie DiOrio at 847.229.6536 or email *kdiorio@abpn.com*.

**Credentials and Meetings** staff processes candidates' applications for our examinations, verifies physicians' credentials for admissions to certification and maintenance of certification examinations, and coordinates sites and travel



home    check up on your doctor    find a doctor    rate a doctor    login: consumer / physician

**Martin G Allen, MD**
**Psychiatrist**
Male - 39 years experience

2501 Calvert St NW
Washington, DC 20008
(202) 333-3833
**Map this Address**

🖨 PRINTER FRIENDLY
✉ SHARE WITH OTHERS
⊞ A̲ A FONT CONTROL

*1:06CV00303 GK*

Send me
alerts:

Email me about new
ratings and information
on this doctor.

Email:

**CLOSE**

Certification Report

**Specialty**

**Specialty:**

**Psychiatry &
Neurology**

Vitals receives quarterly updates on board
certification from ABMS®
Please check the certificate link to see exact date
of certification.

**Martin G Allen, MD**
is certified by the
following ABMS® Certified
Board:

Board
Certified?

**View ABMS
certification**

**The American Board of Psychiatry & Neurology**

American Board
of Medical Specialties
*Higher standards. Better care.*

| Doctors By Name | |
|---|---|
| Specialty Certification | |
| **Psychiatry** | |
| Lifetime certification granted January 30, | 1972 |

A psychiatrist specializes in the prevention,
diagnosis and treatment of mental, addictive
and emotional disorders such as schizophrenia
and other psychotic disorders, mood disorders,
anxiety disorders, substance-related disorders,
sexual and gender identity disorders and

**Hospital Affiliation**

Dr. Allen is affiliated with a hospital.

**Georgetown**

Hospital quality is often a reflection of the
doctors associated with it.
Where available, hospital ranking by specialty is
shown.

**Education**

| | Institution | Institution |
|---|---|---|
| | Ranking: | Rating: |

Dr. Allen was educated at the following institutions:

Federal Contracts to ALLEN MARTIN G MD, FY 2000-2007, summary        Page 1 of 2

*1:06CV00303-GK*



## Contracts to ALLEN MARTIN G MD (FY 2000-2007)

(MAP IT)

| Search Criteria Used (More) | | |
|---|---|---|
| Federal Fiscal Year | ALL | GO |
| Level of Detail | Summary | GO |
| Output | HTML | GO |

*MARTIN G. ALLEN, MD*
*FEDERAL CONTRACTS*

## Summary

Total dollars: **$15,918**
Total number of contractors: **1**
Total number of transactions: **2**
Get list of contractors
Get list of transactions

## Top 5 Products or Services Sold

| Legal Services | $1,500 |
|---|---|

## Extent of Competition



94%

90.6%

## Top 5 Contracting Agencies Purchasing from Contractor(s)

| HOUSING AND URBAN DEVELOPMENT, Department of | $14,418 |
|---|---|
| Equal Employment Opportunity Commission | $1,500 |

| Full and open competiton | $0 |
|---|---|
| Full and open competiton, but only one bid | $1,500 |
| Competition after exclusion of sources | $0 |
| Follow-on contract | $0 |
| Not available for competition | $0 |
| Not competed | $14,418 |
| Unknown | $0 |

## Top 10 Contractors

| ALLEN MARTIN G MD | $15,918 |
|---|---|

## Trend



2000 2001 2002 2003 2004 2005 2006 2007

op 5 Known Congressional
istricts where Work is

Federal Contracts to ALLEN MARTIN G MD, FY 2000-2007, summary          Page 2 of 2

*MARTIN G. ALLEN, MD*

**Performed** '

| | |
|---|---|
| District of Columbia nonvoting (Eleanor Holmes Norton) | $15,918 |

| | |
|---|---|
| 2000 | $0 |
| 2001 | $0 |
| 2002 | $0 |
| 2003 | $0 |
| 2004 | $0 |
| 2005 | $0 |
| 2006 | $15,918 |
| 2007 2Q * ' | $0 |

*Note: FY 2007 only includes up through second and part of third quarter.

**Expand all summaries** to all values, not just top 5 or 10

*END OF REPORT*

This search was (MAP IT) done on June 3, 2008.

| Search Criteria Used | | |
|---|---|---|
| Federal Fiscal Year | ALL | GO |
| Assigned Parent Company ID | 13613 | |
| Sort By | No sort (summary only) | |
| Level of Detail | Summary | GO |
| Output | HTML | GO |

The contracts database is compiled from government data last released on 06/12/2007

This search result was produced as a project of **OMB Watch**. The data was obtained from the **Federal Procurement Data System** (FPDS) - Next Generation and other federal government sources through **Eagle Eye Publishers**, Inc. Eagle Eye also provided identification of parent companies and other data improvements.

ABOUT OMB WATCH | ABOUT THIS SITE | SITE MAP | CONTACT US

*FAX: 847-229-6600*



**American
Board of
Psychiatry and
Neurology, Inc.**

*Mail to:*
**Executive Vice President
American Board of Psychiatry and Neurology, Inc.
2150 E. Lake Cook Road, Suite 900
Buffalo Grove, Illinois  60089
Phone: 847.229.6500
Fax: 847.229.6600**

A Member Board of the American Board of Medical Specialties (ABMS)

## Request for Verification of Certification or Other Board Status

The ABPN will provide written verification of certification and other board status upon written request. A $35 fee must accompany requests for verification from anyone other than the diplomate/candidate, and a release form signed by the physician about whom the information is requested.

Diplomates, as well as applicants who have not yet been notified of the status of their applications, who request written verification to be sent directly to their home or professional address, or to a state medical licensing board, do not need to include the fee; however, diplomate/applicant requests for verification to be sent to anyone else must also be accompanied by the $35 fee. Applicants must also include the fee when requesting verification after the Board has sent to the applicant written notification of the status of his/her application.

*1: 06CV00303-GK*

**Other Board Status**
The Board confines the information it will release to the verification of the following:
1. Whether a physician has now, or had in the past, been admitted to examination, and whether or not the physician has completed the examination process.
2. Whether a physician has submitted an application for admission to examination, and whether that application was approved or is still being processed by the Board.
Information about the site and nature of a physician's training is not available from the ABPN.
The American Board of Psychiatry and Neurology, Inc., in accordance with the policy of the American Board of Medical Specialties, does not recognize or use the term "Board eligible" and does not issue statements concerning "Board eligibility." The Board informs an applicant of admissibility to examination only when the applicant has an active, approved application on file in the Board office.

NOTE: *Requests that do not require the $35 fee may be faxed to 847.229.6600.*

*Please check the appropriate box and include all items listed.*

☐ I am a diplomate of the ABPN or have applied for ABPN certification. Please send to me, at my address below, written verification of my board status.
A. Complete and sign request form.

☐ I am a diplomate of the ABPN or have applied for ABPN certification and have not yet received notice of the status of my application. Please send to the state medical licensing board indicated below, written verification of my board status.
A. Complete and sign request form.

☐ I am a diplomate of the ABPN or have applied for ABPN certification. Please send to the party indicated below, written verification of my board status.
A. Complete and sign request form.
B. Enclose a check payable to ABPN, in the amount of $35, or fill in the credit card form.

☒ I am a third party requesting written verification of ABPN board status about the physician listed below.
A. Complete and sign request form.
B. Enclose the release form on the next page, signed by the physician about whom information is requested.
C. Enclose a check payable to ABPN, in the amount of $35, or fill in the credit card form.

Physician's full name  **Martin G. Allen, MD,**

Physician's Social Security Number **Occupational Medicine**          Psychiatry

Physician's Date of Birth **Graduated Medical School 1965**    New York

Person/Organization requesting verification  **Michael L. Buesgens**

Send verification to:  **3112 Windsor Road, Suite A322**

**Austin, Texas 78703**

Signature _____    Date  **06/04/2008**

**Federal Occupational Health Services-FOH-HHS-IRS**

**American Board of Psychiatry and Neurology, Inc.**

A Member Board of the American Board of Medical Specialties (ABMS)

**Mail to:**
**Executive Vice President**
**American Board of Psychiatry and Neurology, Inc.**
**2150 E. Lake Cook Road, Suite 900**
**Buffalo Grove, Illinois 60089**
**Phone: 847.229.6500**
**Fax: 847.229.6600**

## Request for Verification of Certification or Other Board Status
### Permission to Release Board Status Information
(To be completed by physician about whom information is being requested by a third party)

I hereby authorize and consent to the release of information by the American Board of Psychiatry and Neurology, Inc., or its staff, in response to requests regarding my board status. I hereby release the American Board of Psychiatry and Neurology, Inc., its directors, officers, staff, and agents from any actions, suits, obligations, damages, claims, or demands arising from so doing.

Signature (full name) _____ *1:06CV00303-GK*

Print name _____

Date of birth _____ *MACMO G. ALLEO MD*

Date signed _____

The American Board of Psychiatry and Neurology, Inc. accepts payment by Visa or MasterCard credit cards.
Please fill in all requested information and return via mail to the address listed above or fax to 847.229.6600.

**The ABPN accepts no liability for misdirected or inaccurate information.**
If you submit this information via facsimile transmission, please include a Disclaimer in your fax transmission such as the one provided below:

Disclaimer: This facsimile transmission contains information, which is confidential and/or privileged. This information is intended for use only by the addressee indicated above. If you are not the intended recipient, please be advised that any disclosure, copying, distribution, or use of the contents of this information is strictly prohibited, and that any misdirected or improperly received information must be returned to the sender immediately.

### PLEASE PRINT CREDIT CARD INFORMATION CLEARLY AND LEGIBLY OR TYPE

☐ Visa    ☐ MasterCard    Credit Card Number [ ] [ ] [ ] [ ] - [ ] [ ] [ ] [ ] - [ ] [ ] [ ] [ ] - [ ] [ ] [ ] [ ]

Amount Authorized for payment  $ [ ] , [3] [5] . [0] [0]    Expiration Date (mm/yy)  [ ] / [ ]

Name as shown on Credit Card
[B][u][e][s][g][e][n][s] — last name
[M][i][c][h][a][e][l] — first name and middle name or initial as shown on credit card

Billing Address
[3][1][1][2] [W][i][n][d][s][o][r] [R][D] [S][u][i][t][e][A][3][2][2] — street
[A][u][s][t][i][n] — city    [T][X] — state / country    [7][8][7][0][3] — zip code

Billing Phone Number [5][1][2] / [3][3][9] / [6][0][0][5] X7958
area code  Email: mikebuesgens@hotmail.com

Signature of credit card holder _____ *Michael Buesgen*    6/4/2008

TRANSMISSION VERIFICATION REPORT

```
TIME   : 06/04/2008 00:50
NAME   : ESD NORTH CENTRAL
FAX    : 5123396099
TEL    : 5123396005
SER.# : BROM4J175473
```

2 PAGES

| DATE,TIME | | |
| --- | --- | --- |
| FAX NO./NAME | 6/4/08 | 06/04  00:49 |
| DURATION | | 18472296600 |
| PAGE(S) | | 00:00:46 |
| RESULT | | 02 |
| MODE | | OK |
| | | STANDARD |
| | | ECM |

2 PAGES

AMERICAN BOARD OF PSYCHIATRY
AND NEUROLOGY, INC

# ABMS

**Contact Us Via Postal Mail**
Use the address provided below to send us a written
question. Please note that, though ABMS makes every
effort to answer all inquiries, not all questions
can be answered individually.

American Board of Medical Specialties
1007 Church Street, Suite 404
Evanston, IL 60201-5913

**Contact Us Via Phone**
If you'd prefer, you can reach us by phone at (847)
491-9091.

**Physician Verification Inquiries**
There are three easy, direct ways to verify
physician certification through ABMS:

- **Check Online**
  As part of its public service mission, access to
  the ABMS Medical Specialists Online
  certification verification service is available
  to the public free of charge. This self-serve
  resource allows you to conduct searches by a
  physician's name or area of certification and a
  state name. Start your search now.

- **Make a Phone Call**
  Call the toll-free ABMS Certification
  Verification Service at 1-866-ASK-ABMS (275-
  2267.) Please note: Agents can only provide
  certification verification. They cannot provide
  you with detailed biographical or residency
  training information, help you locate a
  physician or register complaints against a
  physician.

- **Look in the Book**
  The *Official ABMS Directory of Board Certified
  Medical Specialists*, published by Elsevier
  under license from ABMS, lists information on
  physicians who have met the certification



**Robert O'Block, Founder**

Home    Certification Classes    Advisory Board    ACFEI    Membership    Continuing Education

**Upcoming Events**

**2008 National Conference**



**Contact ACFEI**
2750 East Sunshine
Springfield, MO 65804
(800) 423-9737 or (417) 881-3818
info@acfei.com
www.acfei.com





# Welcome to the American Board of Forensic Medicine!

Forensic medicine is the application of medical science to legal problems. Experts in forensic medicine provide research, reports, and testimony in court to assist in the determination of a legal question, such as the cause of death, particularly when foul play is suspected. A specialist in forensic medicine may utilize knowledge of anatomy, medicine, physiology, surgery, chemistry, pathology, physics, or a number of other fields in order to answer a contested question.

## Diplomate

Check out our site to find out more information about becoming a Diplomate in Forensic Medicine. If you are not a member of ACFEI please feel free to check out our membership opportunities and become one of the elite with a membership with ACFEI.

## Testimony

"I am truly amazed at the talented people from every aspect of law enforcement, science, forensics, homeland security, and medicine that I have met through ACFEI. The education the society provides is wonderful, but the education that the other members provide to me is irreplaceable."

~ Dr. Kathirae S. Perkins, RPh, DO, PhD, DABFE, CMI-V, CFC, CHS-V, Diplomate of the American Board of Forensic Medicine, member since 2004

Management Executives|American College of Forensic Examiners|American Board for Certification in Homeland Security|American Psychotherapy Association|American Association of Integrative Medicine|American College of Counselors
ABFA|ABFE|ABFD|ABFM|ABFN|ABCIP|ABPS|ABRE|ABFC|ABFET|ABLEE|ABFSW|ABCHS

Copyright © 2007 American College of Forensic Examiner International and American Board of Forensic Medicine
All Rights Reserved.



of Independent Medical

**Contact Us    Feedback**

About ABIME    ABIME Board

**Navigation** ABIME Faculty    Directory Search

ABIME Online Store    Home

Register Online

Contact Us

Presidents Message

ABIME 2008 Anouncement

Board of Registry Information

**Telephone:**
1.877.523.1415 (toll free)
304.523.1415
304.523.1416

ABIME Certification Information

**Facsimile:**
304.523.1824

Educational Courses

AMA Guides 6th Ed. Order Form

**Postal address:**
1338 3rd Avenue
Huntington, WV 25701
USA

Downloadable Order Forms

Recertification Information

**Electronic mail:**
For General Information: **info@abime.org**
About this site: **ABIME webmaster**

Educational & Exam Schedule

Journal of Disability Medicine

ABIME Guidelines of Conduct

How to Become  ABIME Certified

Member Directory Search

Resource Links

Featured Services

Contact - American Board of Disability Analysts (ABDA)          Page 1 of 1

# American Board of Disability Analysts (ABDA)

Home | Newsletters / Annual Conference | Certifications | Affiliated Organizations | Links | Contact |

## Contact



### American Board of Disability Analysts

Park Plaza Medical Bldg.
345 24th Avenue North
Nashville, TN 37203 USA

### E-mail:



americanbd@aol.com



©2007 American Board of Disability Analysts (ABDA)



  

**ABOUT PSYCHOANALYSIS**

**TRAINING & EDUCATION PROGRAMS**

HOME

ABOUT APSAA

ADVOCACY

NEWS

APSAA MEMBERS SECTION

MEETINGS AND EVENTS

PUBLICATIONS

ONLINE STORE

MEMBERSHIP & ASSOCIATES

MEMBER DIRECTORY

FIND AN ANALYST

FELLOWSHIP PROGRAM

AMERICAN PSYCHOANALYTIC FOUNDATION COMMITTEE

RESEARCH

CONTACT US

You are here: CONTA

American Psychoanalytic Association
309 East 49th Street
New York, New York 10017-1601

Phone: (212) 752-0450

Fax:    (212) 593-0571

Email:  info@apsa.org



**MEMBER SECTION**

LWWOnline | LOGOUT | eALERTS | PROFILE | CUSTOMER SUPPORT MICHAEL

Wolters Kluwer | Lippincott Williams & Wilkins

JOEM Journal of Occupational Environmental Medici

12/1996

Home    Search    Current Issue    Archive

December 1996, 38:12 > Reasonable Accomodation Requests...

< Previous  |  Next >

ARTICLE LINKS:
View thumbnail images

*NEAL LEE PLESANT, MD*

Journal of Occupational & Environmental Medicine:Volume 38(12)December 1996pp 1199-1200

*FEDERAL OCCUPATIONAL HEALTH*

# Reasonable Accomodation Requests in a Federal Setting

*BETHESDA, MD*

# [Letter To The Editor]

Presant, Neal L. MD, MPH

Clinical Director; Washington Office; Department of Health and Human Services; Washington, DC

*To the Editor:* Federal Occupational Health (FOH) is one of the smaller divisions within the US Public Health Service (PHS), serving as the medical advisor to many federal civilian and military agencies on matters of occupational health and safety. It has no regulatory authority but serves rather as a service delivery agency, assisting other components of the federal government in meeting their legal requirements as determined by the Occupational Safety and Health Administration, the Environmental Protection Agency, and other applicable rule-making entities. By statute, FOH can only assist other parts of the federal government; it has no role with state, county, or municipal governments, or with the private sector.

Since 1992, FOH has provided assistance with medical evaluations of reasonable accommodation requests from a broad spectrum of agencies, including groups with regulatory, security, research, and artistic missions. In such cases, FOH serves as medical advisor to the personnel department by the process later discussed in this letter. Typically, a federal employee will present a request for reasonable accommodation to their immediate supervisor. This request must be accompanied by a medical provider's documentation explaining the disabling condition, including how it was diagnosed, how it

impacts on the individual's daily life, and what workplace accommodations would enable the employee to continue performing the essential elements of his or her job. The supervisor may be empowered to grant the accommodation without further consultation. However, the request is often brought to a department with a personnel function, such as Human Relations, Employee Relations, etc, for further evaluation and assistance. Personnel experts may then come to FOH to interpret the medical information, and to determine if it meets the criteria specified in the Federal Personnel Manual. There will usually be further contact between FOH and the employee's personal physician to elaborate on information that may be unclear or missing. After review of the medical documentation, the position description, and the relevant functional job requirements, a written opinion will be sent to the personnel department stating FOH's opinion as to whether an employee is considered medically disabled and as to whether the proposed accommodation could be reasonably expected to permit the disabled individual to perform their essential functions. FOH may also recommend a modification to the proposed accommodations.

All medical and personnel records presented to FOH between 1992 and 1995 for medical opinion concerning reasonable accommodation requests were reviewed and abstracted. Demographic data collection included age, gender, agency, GS level (the basis of the Federal pay scale), and job title. The primary and secondary diagnoses, the specialty of the health provider supplying the medical documentation, and the accommodation requested were also included.

The cases reviewed ($n$ = 115), represented information from 16 different federal agencies. Sixty-nine (60%) records involved female employees and 46 (40%) involved male employees. There was a significant correlation between reasonable accommodation requests and the GS-12 grade level, a level traditionally at the interface between medium-level technical skills and lower-level management. There was also a negative correlation between reasonable accommodation requests and GS-5 level. GS-5 level employees in this study were typically lower- to medium-skilled secretarial staff. It was interesting to note the lack of requests from higher-level management (GS-14 and 15).

The diagnosis was given with the documentation in 114 (99%) requests. Many employees had more than one diagnosis. Anxiety and/or depression was the primary or secondary diagnosis in 53 individuals, low back pain in seven, learning disability in seven, and osteo- or rheumatoid arthritis in five. Other diagnoses appeared fewer than five times. There were slight differences in the pattern of diagnoses between men and women. Women were slightly more likely to be diagnosed with fibromyalgia (three), arthritis (four), and asthma (three). Among the 38 individuals at the GS-12 level, the leading diagnoses were: anxiety/depression (16); blindness (four); chronic fatigue

syndrome (two); and learning disability (two). In 49 (43%) cases, the employees alleged that the workplace itself was partially or totally responsible for their disability, generally after a personnel action or perceived harassment by the supervisor.

The medical specialist providing the primary documentation was a psychiatrist in 46 cases, a neurologist in 13, and an orthopedist in 11 cases. Other specialists were represented seven times or fewer. Men (22 of 44) were more likely to visit mental health professionals than were women (22 of 63), whereas most of the orthopedics (8 of 11) and rheumatology (5 of 6) visits were made by women.

The accommodations requested are summarized in **Table 1**. Several individuals asked for more than one accommodation. Nine other accommodations were each requested once. These included better office ventilation, an alternate workplace closer to home, retraining, no work on cold days, a move to a warmer city, a more collegial atmosphere, extra time to finish work, advanced warning when building maintenance was performed, and moving the agency to a building found suitable by the employee.

| | |
|---|---|
| Transfer to a New Supervisor | 31 |
| Less Stressful Job | 15 |
| Advanced Sick Leave | 13 |
| Frequent Unpredictable Absences | 9 |
| Work at Home | 9 |
| Flexible Hours | 8 |
| No Required Travel | 6 |
| Less Work | 6 |
| Remove a Disciplinary Action | 6 |
| Very General— No Specific Request | 5 |
| Leave Without Pay | 5 |
| Clearer Communication | 5 |
| Reader, Individual Aide | 4 |

| | |
|---|---|
| Header, Individual Aide | |
| Ergonomic Aids | 4 |
| No or Less Lifting | 4 |
| Magnifying Software | 4 |
| "Dragon" Software (Voice-Sensitive) | 3 |
| No Repetitive Motion | 2 |
| Sunlight in Office | 2 |
| No Bending or Stooping | 2 |
| Part-Time Work | 2 |
| Sleep Breaks During Work Hours | 2 |

TABLE 1. Accommodations Requested

FOH does not know the final outcomes of these requests. In many cases, these requests are still in mediation or litigation.

Because of methodological limitations, specifically the sampling design, this report can only be considered as a summary of a case series. The cases were not referred randomly. It is presumed that the simpler, more straightforward requests were handled at the level of the first- or second-line supervisor and never received attention from the personnel department and the PHS.

Despite these limitations, some conclusions are apparent from the results. The cases reaching our attention were not from a representative sample of federal employees. The lower GS levels appeared to be under-represented, whereas GS-12-a level at the boundary between technical and administrative duties-was over-represented. The types of complaints likewise appear to demonstrate a heavy bias toward mental health issues. If we include both primary and secondary diagnoses, nearly half (53) of the subjects considered depression, anxiety, or stress to be their disability. Furthermore, Axis I psychiatric diagnoses were relatively uncommon, representing only six of all primary psychiatric diagnoses. The accommodation requested often demonstrated the situational aspect of the alleged disability, with a request for a new supervisor being more than twice as common as the next most frequent request (a less stressful job). In many of the

cases, a disciplinary action or poor work rating preceded the reasonable accommodation request. Indeed, 49 (43%) of the individuals claimed that the job was a major contributing factor of their alleged disability.

Conversations with the treating health professionals revealed difficulties in evaluating such cases. Psychiatrists and psychologists could amply document the stress-and depression-related symptoms of their clients. However, even though they had frequently written forceful letters supporting supervisory or workplace changes, they were generally ignorant of actual work requirements and admitted knowledge of supervisory employee interactions was secondhand, known only through the words of their client.

Learning disabilities often posed certain difficulties as well. When presented with a medical opinion that learning disabilities were relatively fixed and would not explain a sudden decreased performance level in an employee who had been doing the same job for several years, employees generally responded that fundamental processes of performing their work had recently changed. Supervisors, conversely, responded that all changes had been minor. Resources were unavailable to intensively evaluate the workplace from a psychosocial perspective or to precisely match results of psychological testing with exact, clearly specified functional job requirements.

In conclusion, in this case series, reasonable accommodation requests appear to be made disproportionately by specific groups of federal employees and for reasons that were probably not foremost in the minds of the framers of the Rehabilitation Act of 1973 and the legislators who subsequently wrote and passed the Americans with Disabilities Act. Indeed, in many cases, the issues and medical documentation presented were of the variety traditionally regarded as routine personnel matters of employee performance and supervisor-employee disputes. Further generalizations were not possible because of the non-random assignment of cases. Also, comparison with trends in private industry was not possible because of the unavailability of comparable data. However, the findings suggest that further research is warranted to determine if the Rehabilitation Act is being utilized and applied fairly in the federal government, and whether the benefits of this legislation are appropriately reaching the disabled work force.

**Editor's Note:** The views expressed in this letter are solely those of the author and do not represent the views of Federal Occupational Health, the US Public Health Service, or the United States Government.

Neal L. Presant, MD, MPH

Clinical Director; Washington Office; Department of Health and Human Services; Washington, DC

[Federal Register: October 5, 2004 (Volume 69, Number 192)]
[Notices]
[Page 59645-59647]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr05oc04-114]

-----------------------------------------------------------------------

DEPARTMENT OF THE TREASURY

Internal Revenue Service


Privacy Act of 1974, as Amended; System of Records

AGENCY: Internal Revenue Service, Treasury.

ACTION: Notice of proposed new Privacy Act system of records.

-----------------------------------------------------------------------

SUMMARY: In accordance with the requirements of the Privacy Act of
1974, as amended, 5 U.S.C. 552a, the Internal Revenue Service (IRS),
Department of the Treasury, gives notice of a proposed Internal
Revenue-wide system of records, Treasury/IRS 35.001-Reasonable
Accommodation Request Records.

DATES: Comments must be received no later than November 4, 2004. The
proposed system of records will be effective November 15, 2004, unless
the IRS receives comments that would result in a contrary
determination.

ADDRESSES: Comments should be sent to Chief, EEO and Diversity,
Internal Revenue Service, Room 2422, 1111 Constitution Avenue, NW.,
Washington, DC 20224. Comments will be made available for inspection
and copying in the IRS Freedom of Information Reading Room. An
appointment for inspecting the comments can be made by contacting the
library at (202) 622-5164.

FOR FURTHER INFORMATION CONTACT: Pat Mance or Teresa A. Bonham,
National Headquarters EEO and Diversity Office, Internal Revenue
Service, Department of the Treasury, Room 2422, 1111 Constitution
Avenue, NW., Washington, DC 20224. Telephone number (202) 622-5410 or
(202) 622-6786 (TDD).

SUPPLEMENTARY INFORMATION: The Internal Revenue Service (IRS) gives
notice of a proposed new system of records entitled ``Treasury/IRS
35.001-Reasonable Accommodation Request Records'' that is subject to
the Privacy Act of 1974. The IRS is establishing the system of records
to facilitate the provision of reasonable accommodation by establishing
procedures and a form for use in requesting such reasonable
accommodation, as well as providing a record that the request was

submitted. The request form initiates the agency's reasonable accommodation process, and the system of records serves as the agency's record of the administrative events pertaining to the approval or disapproval of the requested accommodation. In implementing procedures, a new ``Reasonable Accommodation Request Form'' will be implemented Servicewide.

The new system of records report, as required by 5 U.S.C. 552a(r) of the Privacy Act, has been submitted to the Committee on Government Reform of the House of Representatives, the Committee on Governmental Affairs of the Senate, and the Office of Management and Budget, pursuant to Appendix I to OMB Circular A-130, ``Federal Agency Responsibilities for Maintaining Records About Individuals,'' dated November 30, 2000.

The proposed new system of records, entitled ``Treasury/IRS 35.001-Reasonable Accommodation Request Records,'' is published in its entirety below.

Dated: September 17, 2004.
Arnold I. Havens,
General Counsel.
TREASURY/IRS 35.001

SYSTEM NAME:
    Reasonable Accommodation Request Records.

SYSTEM LOCATION:
    National Headquarters, Chief Counsel, and Business Units (Agency-Wide Shared Services, Appeals, Modernization & Information Technology Services (MITS), Taxpayer Advocate Service, Communications and Liaison, Criminal Investigation, Wage and Investment, Small Business/Self Employed, Large and Mid-sized Business, and Tax Exempt and Governmental Entities (TE/GE)). See ``system managers and addresses'' for location.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:
    Applicants and current and former Internal Revenue Service employees with disabilities who request reasonable accommodation.

CATEGORIES OF RECORDS IN THE SYSTEM:
    Employee's or applicant's name, occupational series and grade, operating division/function, office location and address, office telephone number, disability or medical condition, reasonable accommodation (RA) requested, explanation of how RA would assist the applicant in the application process and the employee in performing his/her job, deciding official's name and title, deciding official's telephone number, essential duties of the position, information relating to an individual's capability to satisfactorily perform the duties of the position he/she is either applying for or presently holds, relevant medical information, estimated cost of accommodation, action by deciding official, signature of employee/applicant, signature of the deciding official, signature of health care practitioner, social worker, or rehabilitation counselor, medical documentation and supporting documents relating to reasonable accommodation.

AUTHORITY:

[[Page 59646]]

U.S.C. 701 et seq., as amended; The Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq. (ADA); Executive Order 13164, Requiring Federal Agencies to Establish Procedures to Facilitate the Provision of Reasonable Accommodation (July 26, 2000).

PURPOSE:

The purpose of the system is to implement uniform procedures to administer reasonable accommodation requests.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USE:

These records may be used:

(1) To disclose pertinent information to appropriate Federal, State, local, or foreign agencies responsible for investigating or prosecuting the violations of, or for enforcing or implementing, a statute, rule, regulation, order, or license, where the disclosing agency becomes aware of a potential violation of civil or criminal law or regulations.

(2) To disclose information to a Federal, State, or local agency, maintaining civil, criminal or other relevant enforcement information or other pertinent information, which has requested information relevant to or necessary to the requesting agency's or the bureau's hiring or retention of an individual, or issuance of a security clearance, license, contract, grant or other benefit.

(3) To provide information to the Department of Justice for the purpose of litigating an action or seeking legal advice. Disclosure may be made during judicial processes.

(4) To disclose information in a proceeding before a court, adjudicative body, or other administrative body before which the agency is authorized to appear when (a) the agency, (b) any employee of the agency in his or her official capacity, (c) any employee of the agency in his or her individual capacity where the Department of Justice or the agency has agreed to represent the employee, or (d) the United States, when the agency determines that litigation is likely to affect the agency, is a party to litigation or has an interest in such litigation, and the use of such records by the agency is deemed to be relevant and necessary to the litigation or administrative proceeding and not otherwise privileged.

(5) To provide information to officials of labor organizations recognized under 5 U.S.C. chapter 71 when relevant and necessary to their duties of exclusive representation.

(6) To provide information to third parties during the course of an investigation to the extent necessary to obtain information.

(7) To disclose information to the news media and the public, in accordance with guidelines contained in 28 CFR 50.2 in the same manner as permitted for Department of Justice officials, unless release would constitute an unwarranted invasion of personal privacy.

(8) To disclose information to a contractor to the extent necessary for the performance of a contract.

(9) To disclose information to an arbitrator, mediator, or similar person in the context of alternative dispute resolution, to the extent relevant and necessary to permit the arbitrator, mediator, or similar person to resolve the matters presented, including asserted privileges.

(10) To disclose information to the Merit Systems Protection Board and the Office of Special Counsel in personnel, discrimination, and labor management matters when relevant and necessary to their duties.

(11) To disclose information to foreign governments in accordance with formal or informal international agreements when necessary to respond to a request for reasonable accommodation.

(12) To disclose information to the Office of Personnel Management and/or to the Equal Employment Opportunity Commission in personnel, discrimination, and labor management matters when relevant and necessary to their duties.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:
STORAGE:
Paper and electronic records.

RETRIEVABILITY:
Date of reasonable accommodation request, employee/applicant for employment's name, record number, and Business Unit.

SAFEGUARDS:
Access controls will not be less than those provided for by the Automated Information System Security Handbook, IRM 2(10)00, and the Manager's Security Handbook, IRM 1(16)12.

RETENTION AND DISPOSAL:
Records are maintained in accordance with Record Disposition Handbooks, IRM 1(15)59.1 through 1(15)59.32. Records related to specific individuals are to be maintained for the duration of employment. Aggregate data used to track the agency's performance are to be maintained for three years.

SYSTEMS MANAGER(S) AND ADDRESS:
National Headquarters, Attn: Chief, EEO and Diversity, N:EEO, Room 2422/IR, 1111 Constitution Avenue, NW., Washington, DC 20224.
Chief Counsel, Attn: Director, EEO and Diversity Office, Suite 500, 950 L'Enfant Plaza, SW., Washington, DC 20024.
Business Units:
Agency-Wide Shared Services, Room 7554/IR; Communications and Liaison, Room 7230/IR; Taxpayer Advocate Service, Room 1314/IR; Criminal Investigation, Room 2242/IR; Attn: Director, EEO and Diversity Office, 1111 Constitution Avenue, NW., Washington, DC 20224.
Appeals, Attn: Director, EEO and Diversity Office, FCB, Suite 4200 E, 1099 14th Street, NW., Washington, DC 20005.
MITS, Attn: Director, EEO and Diversity Office, 5000 Ellin Road, B8-157, Lanham, MD 20706.
Small Business/Self Employed, Attn: Director, EEO and Diversity Office, 5000 Ellin Road, C3-275, Lanham, MD 20706.
Large and Mid-sized Business, Attn: Director, EEO and Diversity

Office, 801 9th Street, Mint Building, M3-177, Washington, DC 20001.
    TE/GE, Attn: Director, EEO and Diversity Office, 4050 Alpha Road,
MS 1120, Dallas, TX 75244.
    Wage and Investment Division, Attn: Director, EEO and Diversity,
401 W. Peachtree Street, Room 1619, Atlanta, GA 30365.

NOTIFICATION PROCEDURES:
    Individuals seeking access to any record contained in this system
of records pertaining to themselves or seeking to contest its contents
may inquire in accordance with instructions appearing in 31 CFR part 1,
subpart C, Appendix B. Inquiries should be addressed as in ``Record
Access Procedures'' below.

RECORD ACCESS PROCEDURES:
    Individuals seeking access to any record contained in this system
of records, or seeking to contest its content, may inquire in
accordance with instructions appearing at 31 CFR part 1, subpart C,
Appendix B. Inquiries should be addressed to the Chief, EEO and
Diversity, Chief Counsel, or Business Units (Appeals, Modernization &
Information Technology Services, Taxpayer Advocate Service,
Communications and Liaison, Criminal Investigation, Wage and
Investment, Small Business/Self Employed, Large and Mid-sized Business,
and Tax Exempt and Governmental Entities) Directors, EEO and Diversity,
servicing

[[Page 59647]]

the area in which the individual resides. (See ``System Manager(s) and
Address'' for location)

CONTESTING RECORD PROCEDURES:
    See ``Notification Procedure'' above.

RECORD SOURCE CATEGORIES:
    Information given by an individual requesting accommodation(s),
input from individual's manager, documentation from individual's
medical practitioner, agency medical representative, contractors or
offices relating to the issuance of accommodation(s).

EXEMPTIONS:
    None.
[FR Doc. 04-22306 Filed 10-4-04; 8:45 am]

BILLING CODE 4830-01-P

**INTERVENER EXHIBIT 2**

**1:06-cv-00303-GK** BERGMAN v. SNOW
Gladys Kessler, presiding
**Date filed:** 02/21/2006
**Date of last filing:** 05/23/2008

# Attorneys

1:06CV00303-GK

**Rhonda C. Fields**
UNITED STATES ATTORNEY'S
OFFICE
555 Fourth Street, NW
10th Floor
Washington, DC 20530
(202) 514-6970
(202) 514-8780 (fax)
rhonda.fields@usdoj.gov
  *Assigned: 05/25/2006*
  *LEAD ATTORNEY*
  *ATTORNEY TO BE NOTICED*

Federal Occupational Health
FOH-HHS
representing
**JOHN W. SNOW**
*(Defendant)*

Neal Lee Presant, MD

Martin G. Allen, MD

INTERNAL REVENUE SERVICE

**John David Quinn**
SALE & QUINN, P.C.
910 16th Street, N.W.
Suite 500
Washington, DC 20006
(202) 833-4170
(202) 887-5137 (fax)
jdqcsq@aol.com
  *Assigned: 08/22/2006*
  *LEAD ATTORNEY*
  *ATTORNEY TO BE NOTICED*

representing

**TESSA E. BERGMAN**
2102 Arlington Terrace
Alexandria, VA 22303-1500
(703) 960-2026
*(Plaintiff)*

**Stephen Sale**
CLAXTON, SALE & QUINN, P.C.
910 16th Street, N.W.
Suite 500
Washington, DC 20006
(202) 833-4170
(202) 887-5137 (fax)
sscsq@aol.com
 *Assigned: 08/14/2006*
 *LEAD ATTORNEY*
 *ATTORNEY TO BE NOTICED*

representing

**TESSA E. BERGMAN**
2102 Arlington Terrace
Alexandria, VA 22303-1500
(703) 960-2026
*(Plaintiff)*

| Michael L. Buesgens |  |  |  |
| --- | --- | --- | --- |
| Intervener-Plaintiff |  |  |  |
| Civil No. 1:06CV00303-GK |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

1. Pat S. Genis, AUSA
   A. Adversary Case No. 07-10008
   B. Appeal Civil No. 1:07CV00859-RBW
2. R. Barry Robinson, AUSA
   IRS Bankruptcy Crimes Case06-11164-FRM-SS
3. Michael Lynn Salyards, IRS Attorney
   General Legal Services
   Office of Chief Counsel
4. Karen Melnik, AUSA
   1:05CV02334-RCL/1:06CV01558-RCL

# MICHAEL L. BUESGENS

# U.S. Party/Case Index

## All Types Name Search Results

**12 Total Party matches for selection BUESGENS, MICHAEL for WASHINGTON D.C.**
**Thu Jun 5 01:35:30 2008**
**Selections 1 through 12 (Page 1)**

## DISTRICT OF COLUMBIA

●_____

### Bankruptcy Cases

| | Name | Court | Case No. | Filed | Chapter |
|---|---|---|---|---|---|
| 1 | BUESGENS, MICHAEL L. | dcbke | 07-10008 | 02/23/2007 | AP |
| | BUESGENS AND PAULSON | | | | |
| 2 | BUESGENS, MICHAEL L. | dcbke | 07-10008 | 02/23/2007 | AP |
| | BUESGENS AND PAULSON | | | | |

### Civil Cases

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 3 | BUESGENS, MICHAEL L. | dcdce | 1:2007cv00859 | 03/21/2008 | 422 | |
| | BUESGENS v. PAULSON et al | | | | | |
| 4 | BUESGENS, MICHAEL L. | dcdce | 1:2004cv01056 | 06/25/2004 | 442 | 12/21/2007 |
| | PANTAZES v. JACKSON | | | | | |
| 5 | BUESGENS, MICHAEL L. | dcdce | 1:2006cv01558 | 09/01/2006 | 360 | 11/14/2006 |
| | BUESGENS v. UNITED STATES OF AMERICA et al | | | | | |
| 6 | BUESGENS, MICHAEL L. | dcdce | 1:2007cv01585 | 09/06/2007 | 440 | 10/18/2007 |
| | BUESGENS v. KRCHA | | | | | |
| 7 | BUESGENS, MICHAEL L. | dcdce | 1:2007cv01597 | 09/07/2007 | 360 | |
| | WOOD v. KATOR et al | | | | | |
| 8 | BUESGENS, MICHAEL L. | dcdce | 1:2006cv01964 | 11/15/2006 | 440 | |
| | BUESGENS v. BROWN et al | | | | | |
| 9 | BUESGENS, MICHAEL L. | dcdce | 1:2005cv02334 | 12/05/2005 | 442 | 05/09/2006 |
| | BUESGENS v. COATES et al | | | | | |

# U.S. Party/Case Index

## Appellate Name Search Results

**3 Total Party matches for selection BUESGENS, MICHAEL for DC CIRCUIT**

Federal Occupational Health Services-FOHS

1. Neal Lee Presant, MD, Bethesda, Maryland
2. Mark Norman Frank, MD, Denver, Colorado
3. James William Allen, MD, Wilmington, Delaware

1 BUESGENS, MICHAEL L. dccae 07-5011 01/19/2007 2440 05/03/2007
BUESGENS, MICHAEL v. PAULSON, HENRY, et al
2 BUESGENS, MICHAEL L. dccae 07-5295 08/31/2007 2442 02/26/2008
KATOR, IRVING, et al v. JACKSON, ALPHONSO R.
3 BUESGENS, MICHAEL L. dccae 06-5314 10/13/2006 2442 03/27/2007
BUESGENS, MICHAEL L. v. COATES, MARCIA H., et al

---

Michael L. Buesgens

DISTRICT OF COLUMBIA

# U.S. Party/Case Index

## All Types Name Search Results

**2 Total Party matches for selection WALRAVEN, NANCY for NINTH CIRCUIT**
**Thu Jun 5 01:17:32 2008**

Neal Lee Presant, MD, Medical Director
IRS-FOHS-PSC-HHS Medical Services for
Federal Agency ● Employees

### Bankruptcy Cases

| Name | Court | Case No. | Filed | Chapter |
|------|-------|----------|-------|---------|
| 1 WALRAVEN, NANCY S | azbke | 03-09794 | 06/06/2003 | 7 |
| NANCY S WALRAVEN | | | | BANKRUPTCY |

### Civil Cases

| Name | Court | Case No. | Filed | NOS | Closed |
|------|-------|----------|-------|-----|--------|
| 2 WALRAVEN, NANCY | azdce | 2:2006cv00864 | 07/06/2007 | 445 | 05/22/2008 |
| Walraven v. Paulson | | | | | |

Appeal No. 08-16242

Nancy Walraven, Former IRS Employee
Reasonable Reassignment Denied
Psychiatric Disability
IRS Field Office
210 East Earll Drive
Phoenix, Arizona

# U.S. Party/Case Index

## All Types Name Search Results

**7 Total Party matches for selection PORTER, DANA for PENNSYLVANIA**
**Thu Jun 5 09:46:05 2008**

Dana M. Porter, Former IRS Employee

Neal Lee Presant, MD, Medical Director

Federal Occupational Health Services

### Bankruptcy Cases

| Name | Court | Case No. | Filed | Chapter |
|------|-------|----------|-------|---------|
| 1 PORTER, DANA M | paebke | 08-03006 | 02/20/2008 | |
| PORTER AND STIFF, ET AL. | | | | |
| 2 PORTER, DANA M | paebke | 07-13246 | 06/04/2007 | 13 |
| DANA M PORTER | Buesgens Motion to Intervene | | | |

### Civil Cases

| Name | Court | Case No. | Filed | NOS | Closed |
|------|-------|----------|-------|-----|--------|
| 3 PORTER, DANA M | paedce | 2:2007cv04927 | 11/21/2007 | 422 | 02/01/2008 |
| PORTER et al | | | | | |
| 4 PORTER, DANA M | paedce | 2:2007cv04927 | 11/21/2007 | 422 | 02/01/2008 |
| PORTER et al | | | | | |
| 5 PORTER, DANA M. | paedce | 2:2007cv01541 | 04/23/2007 | 440 | 01/28/2008 |
| PORTER v. DEPT. OF THE TREASURY | | | | | |
| 6 PORTER, DANA M. | paedce | 2:2008cv02312 | 05/16/2008 | 422 | |
| PORTER et al | | | | | |
| 7 PORTER, DANA M. | paedce | 2:2006cv03071 | 07/13/2006 | 440 | 07/20/2006 |
| PORTER v. NTEU NATIONAL OFFICE | | | | | |

Buesgens Motion to Intervene

Philadelphia, PA

# U.S. Party/Case Index

## All Types Name Search Results

**3 Total Party matches for selection BLUE, DELORES JEAN for WISCONSIN**
**Thu Jun 5 00:56:29 2008**

NEAL LEE PRESANT, MD WORKS LEGAL LIABILITY ISSUE
FIRST AND FEDERAL EMPLOYEE MEDICAL SERVICES
SECOND AND U.S. ●ATTORNEYS DO THE REST

### Bankruptcy Cases

| Name | Court | Case No. | Filed | Chapter |
|------|-------|----------|-------|---------|
| 1 BLUE, DELORES JEAN wiebke 94-26266 | | | 11/18/1994 | 13 |
| DELORES JEAN BLUE | | | | |
| 2 BLUE, DELORES JEAN wiebke 04-29190 | | | 06/18/2004 | 7 |
| DELORES JEAN BLUE | | | | |

### Civil Cases

| Name | Court | Case No. | Filed | NOS | Closed |
|------|-------|----------|-------|-----|--------|
| 3 BLUE, DELORES JEAN wiedce 2:2005cv00755 | | | 07/18/2005 | 442 | 06/12/2007 |
| Blue v. Jackson | | | | | |

```
2:05CV00755-AEG-MILWAUKIE, WISCONSIN
     RELATED-ASSOCIATED
  BANKRUPTCY CASE NO. 04-29190
```

# U.S. Party/Case Index

## All Types Name Search Results

**2 Total Party matches for selection NANETTE, DESIREE for FOURTH CIRCUIT**

**Thu Jun 5 01:08:16 2008**

IRS DOCTOR MICHELLE SMITH-JEFFRIES, INDEPENDENT CONTRACTOR
HIRED BY NEAL LEE PRESANT, MD-FEDERAL OCCUPATIONAL
HEALTH SERVICES, BETHESDA, MARYLAND

### Civil Cases

| Name | Court | Case No. | Filed | NOS | Closed |
|------|-------|----------|-------|-----|--------|
| 1 NANETTE, DESIREE C. | mddce | 8:2003cv00925 | 03/31/2003 | 442 | 10/29/2004 |
| Nanette v. Snow | | | | | |

### Appellate Cases

| | | | | | |
|------|-------|----------|-------|-----|--------|
| 2 NANETTE, DESIREE C. | 04cae | 04-2541 | 12/20/2004 | 2442 | 09/22/2005 |
| NANETTE v. SNOW | | | | | |

| Desiree C. Nanette |
|---|
| Former IRS Employee |
| Reasonable Reassignment Denied |
| Civil No. 8:03CV00925 |
| FOURTH CIRCUIT APPEAL NO. 04-2541 |